**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08 CV 3787 |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) ) ) ) | Honorable Joan B. Gottschall Magistrate Judge Cole |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION OR,
ALTERNATIVELY, FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Nomanbhoy Family Limited Partnership ("NFLP"), by its attorneys, for its Memorandum of Law in Support of its Motion For Preliminary Injunction Or, Alternatively, For Temporary Restraining Order, states as follows.

**Introduction**

NFLP is a contract purchaser from McDonald's Corporation, McDonald's USA, LLC or their nominees ("McDonald's") of five parcels of real estate in Illinois, Wisconsin and Indiana (the "Five Subject Properties"). The contract for that purchase and sale is the Real Estate Sales Contract ("RESC") attached to the First Amended Complaint and the Affidavit of Shabbir T. Nomanbhoy in Support of Motion (the "Nomanbhoy Affidavit") as Exhibit A.

Under the RESC, NFLP was to purchase the Five Subject Properties, which are surplus McDonald's properties that were to be auctioned on Thursday, June 19, 2008 in Chicago. The RESC was an all-cash bulk sale in lieu of the auction. (Nomanbhoy Affid., ¶¶ 4, 5.)

Despite the RESC between NFLP and McDonald's, McDonald's and the other defendants auctioned the Five Subject Properties on June 19, 2008 to other buyers. (Nomanbhoy Affid., ¶ 26.) Under the terms of McDonald's standard sales contract for the Five Subject Properties, the sales are expected to close on Tuesday, August 5, 2008. (Exh. A, ¶ 6.) Unless enjoined, McDonald's is expected to conclude those sales then.

In the Injunction Motion, Nomanbhoy Affidavit and this Memorandum of Law, NFLP shows that it had an enforceable contract to purchase the Five Subject Properties from McDonald's or its nominees, and that NFLP satisfied the conditions of performance by making the required earnest money deposit. NFLP also shows that it satisfies all of the tests for a preliminary injunction or temporary restraining order, including showing (1) a strong likelihood of success on the merits, (2) irreparable harm if the injunction is not granted, (3) an inadequate remedy at law, (4) a balance of equities in its favor, and (5) no public injury if the injunction is granted. *St. John's United Church of Christ v. City of Chicago*, 502 F. 3d 616, 625 (7th Cir. 2007); *Eppers v. First National Bank of Lake Forest*, 151 Ill. App. 3d 902, 503 N.E. 2d 589 (2nd Dist. 1987) (injunction proper to preserve buyers' contract rights to purchase real estate). Finally, NFLP shows that NFLP should not be required to post additional security for the injunction because McDonald's, through its agent, is already holding NFLP's earnest money of $210,000.

### NFLP Is Likely To Succeed On The Merits

Substantially all the communications – email and verbal – that formed the RESC between NFLP and McDonald's occurred over a 12-hour period on June 18, 2008. The essential facts of those communications, and the emails and exhibits, are in or attached to the Nomanbhoy Affidavit. Illinois contract law applies to this case per the choice of law clause in the RESC. (RESC, ¶ 27.)

The Nomanbhoy Affidavit (¶¶ 6-20.) sets forth the step-by-step negotiations on June 18, 2008 leading to a meeting of the minds of the parties at about 7:00 p.m. Pacific Time ("PT").[1] Nomanbhoy's primary negotiations were with Ira Lauter ("Lauter"), an agent for Defendant Rick Levin & Associates, Inc. ("RLA") as well as the express agent for McDonald's in this transaction. (Nomanbhoy Affid., ¶¶ 2, 18, 20, Exhs. K, M.)  McDonald's has never contested that Lauter was McDonald's spokesman throughout this transaction.  Other significant communications were with Bruce Neumann ("Neumann"), Senior Counsel for McDonald's Corporation.

The Nomanbhoy Affidavit shows the following:

- Although McDonald's originally offered to the sell the Five Subject Properties for $2 million, on the morning of June 18, 2008, Neumann signed and emailed to Nomanbhoy and Lauter the RESC for the Five Subject Properties stating a purchase price of $1.4 million and other terms.  One of those terms was an initial money deposit of 15%, or $210,000, to be deposited "upon acceptance" by NFLP. (Nomanbhoy Affid., ¶¶ 6-7; Exh. A, ¶ 5.);

- Nomanbhoy and Lauter thereafter had additional negotiations regarding the price and a restrictive covenant limiting NFLP's post-sale use of the Five Subject Properties. As a result of those negotiations into the early afternoon on June 18, NFLP accepted a narrower version of the restrictive covenant, but the sale price was reduced to $1.2 million.  (Nomanbhoy Affid., ¶¶ 8-10.)  Nomanbhoy, acting for NFLP, then emailed Lauter "OK, Ira.  Deal!" (Nomanbhoy Affid., ¶ 11, Exh. F.)  Minor issues regarding surveys from McDonald's and interest on the earnest money deposit if the closing was delayed were further discussed and accepted by Lauter.  (Nomanbhoy Affid., ¶ 11, Exh. F.);

- NFLP needed clarification, however, as far as who would be the escrowee.  The RESC mentioned Chicago Title Insurance Company, but Lauter said that RLA would be the escrowee.  NFLP was agreeable to sending the earnest money to RLA if NFLP was assured that RLA was the correct escrowee.  (Nomanbhoy Affid., ¶¶ 11, 17, Exh.

---

[1] Because Nomanbhoy lives in California, all of the events in the Nomanbhoy Affidavit on June 18 refer to PT.  Events on June 19, the day of the auction in Chicago, are also based on PT, except in paragraphs 21, 22 and 26 of the Nomanbhoy Affidavit, which refer to the auction in Chicago and thus Central Time ("CT").  All times on the emails attached to the Nomanbhoy Affidavit refer to PT because they were received by Nomanbhoy in California.

F.);

- Despite the prior agreement to a purchase price of $1.2 million, 80 minutes later on June 18, Lauter said that "McDonald's has decided that they will not sell for less than a[sic] 1.4 million dollars." (Nomanbhoy Affid., ¶ 13, Exh. H.) Lauter/McDonald's remained insistent on that increased sale price, and at 5:40 p.m. PT, Lauter said that McDonald's will cancel the auction if NFLP paid the $1.4 million. (Nomanbhoy Affid., ¶ 14; Exh. I.) Forced by McDonald's bad-faith negotiations, and faced with time urgencies (the auction was to occur in 17 hours), at 6:02 p.m. PT on June 18 NFLP agreed to pay the $1.4 million for the Five Subject Properties. (Nomanbhoy Affid., ¶ 15; Exh. J.);

- To assure that there was a fully-signed contract, Lauter then suggested, and Nomanbhoy agreed, that NFLP sign and return the RESC that Neumann had sent to Nomanbhoy just that morning. On June 18, on behalf of NFLP, Nomanbhoy initialed the June 18 version of the RESC sent by Neumann. (Nomanbhoy Affid., ¶¶ 16, 19.) Nomanbhoy returned the initialed version to Neumann and Lauter on June 19. *(Id.* at ¶ 23.);

- At 7:17 p.m. PT on June 18, Nomanbhoy emailed Neumann and Lauter that "The contract is acceptable as I indicated to Ira [Lauter]." Nomanbhoy's email referred to the RESC that Neumann had emailed that morning. (Nomanbhoy Affid., ¶ 19; Exh. L.). Between Nomanbhoy's emails at 6:02 and 7:17 p.m. PT, NFLP had accepted McDonald's version of the RESC sent by Neumann 10 hours earlier on June 18;

- On the evening of June 18, NFLP received from McDonald's two confirmations that RLA represented McDonald's in the sale of the Five Subject Properties and that the earnest money should be sent to RLA. (Nomanbhoy Affid., ¶¶ 18, 20; Exhs. K, M.) One of those emails was from Neumann, to whom Nomanbhoy had just previously stated that the RESC sent by Neumann was acceptable. Neumann did not say there was no contract. To the contrary, he said that the earnest money must be received in order for the auction to be cancelled (*Id.* at ¶ 20.);

- Early on the morning of June 19, Lauter told Nomanbhoy that there were no changes in the agreement of June 18. Lauter also said that NFLP just needed to send the earnest money. (Nomanbhoy Affid., ¶ 21.);

- Shortly after that, Nomanbhoy wire transferred the $210,000 earnest money deposit to RLA. RLA's bank received the earnest money before 1:00 CT, and Lauter emailed Nomanbhoy that RLA was "preparing to tell the bidders that there is no auction."

(Nomanbhoy Affid., ¶¶ 21-22; Exh. O.);[2]

• Nonetheless, McDonald's and RLA held the scheduled auction on June 19, 2008. Plaintiff believes the five sales are scheduled to close by August 5, 2008. (Nomanbhoy Affid., ¶¶ 26, 28.);

• On June 19, before the auction occurred, Neumann sent to Nomanbhoy another contract for the Five Subject Properties which gave McDonald's the unilateral option to ignore the RESC and proceed with the auction. NFLP refused to sign that contract because McDonald's was – for a second time – trying to change the contract terms (Nomanbhoy Affid., ¶¶ 24-25.); and

• After the auction on June 19, 2008, Neumann told Nomanbhoy that NFLP did not have an agreement or contract with McDonald's, and that all prior offers had been revoked and invalidated. (Nomanbhoy Affid., ¶ 26, Ex. Q.)

Based upon the foregoing, there was offer and acceptance of all the terms of the RESC, and the parties had a meeting of the minds on June 18, 2008. *AGA Shareholders LLC v. CSK Auto, Inc.*, 467 F.Supp. 2d 834, 844 (N.D. Ill., 2006) (Gottschall, J.). Indeed, McDonald's multiple responses on June 18, and 19, 2008, after Nomanbhoy's 6:02 and 7:17 p.m. PT emails stating that "the contract is acceptable," can only be construed as a meeting of the minds. For example, Nomanbhoy made that statement to Neumann and referred to the RESC that Neumann had emailed to Nomanbhoy that morning. *Bourke v. Dun & Bradstreet Corp.*, 159 F. 3d 1032, 1038 (7th Cir. 1998) (separate written exchanges can create a contract). In response, Neumann emailed Nomanbhoy confirming that RLA was the escrow agent and stating that the earnest money must be received or the auction would go forward. Neumann said nothing refuting or challenging Nomanbhoy's acceptance of the RESC sent by Neumann that morning. Neumann's response instead indicated that Neumann agreed that there was a contract, and that NFLP only needed to pay the earnest money before 1:00 p.m. CT.

---

[2]NFLP had previously gotten cashier's checks to pay the $180,000 earnest money based on the $1.2 million agreement, but those were not sent because McDonald's upped the price. (Nomanbhoy Affid., ¶¶ 12, 16, Exh. G.)

(Nomanbhoy Affid., ¶ 20.)

In addition, early on the morning of June 19, Lauter, to whom Nomanbhoy had also indicated that the contract was acceptable, assured Nomanbhoy that the RESC was the operative contract. (Nomanbhoy Affid., ¶ 21.) Based upon Neumann's and Lauter's dual acknowledgments, Nomanbhoy timely paid the $210,000 earnest money to RLA. McDonald's has never claimed otherwise. (Nomanbhoy Affid., ¶ 21.) Thus, in addition to having a meeting of the minds, NFLP complied with the only condition – making a timely earnest money deposit to escrowee RLA. *AGA Shareholders, supra*, 467 F. Supp. at 846 (contract formed when performance follows signing by party to be charged).

Accordingly, NFLP has a strong likelihood of success on the key issue in the case – that NFLP had a purchase and sales contract for the Five Subject Properties with McDonald's or its nominees. *AGA Shareholders, supra*, 467 F. Supp. 2d at 845 (after proponent of contract makes prima facie showing, burden shifts to opponent). Neumann's post-auction claim that there was no agreement or contract is wrong and is contrary to Neumann's own acknowledgment of the contract the day before. *In re Carter*, 312 B.R. 356 (Bkrtcy N.D. Ill. 2004) (after offer is accepted, offer cannot be revoked). It is mere cover for McDonald's blatant and inequitable breach.

### NFLP Will Suffer Irreparable Harm If The Injunction Is Not Entered

Like any real estate, these Five Subject Properties are unique parcels for which NFLP has development plans. (Nomanbhoy Affid., ¶ 27.) *Eppers v. First National Bank, supra*, 151 Ill. App. 3d at 910. Although NFLP has recorded *lis pendens* notices for each of the Five Subject Properties, those do not prevent McDonald's from completing the sales to the other buyers. Once those sales

are completed, NFLP cannot assuredly recover the Five Subject Properties and implement its development plans.  In other words, the irreparable harm is not just losing the Five Subject Properties as they currently are; the irreparable harm also includes losing those unique parcels as they could be.  *Qantum Communications Corp. v. Star Broadcasting, Inc.*, 382 F. Supp. 2d 1362, 1366 (S.D. Fla. 2005) (irreparable harm if contract purchaser loses unique asset and business plans for it).

## NFLP Has No Adequate Remedy At Law

The sales of the Five Subject Properties to other buyers will substantially impair NFLP's short-term and long-term interests, including both ownership of the Five Subject Properties and ownership of any future developments on them.  *Eppers v. First National Bank, supra*, 151 Ill. App. 3d at 910.  Although NFLP has included a claim for damages in the First Amended Complaint, that alone does not mean there is an adequate remedy at law, particularly where, as here, it is difficult to precisely quantify those damages at this time.  *Cook, Inc. v. Boston Scientific Corp.*, 333 F. 3d 737, 743-744 (7th Cir. 2003).  Here, as in *Cook*, an injunction is justified where lost expected profits "cannot be estimated with reasonable certainty" because they are a function of events that are to occur in the future.  That is NFLP's development of the parcels.  Under such circumstances, there is no adequate remedy at law at this time.  In any event, NFLP has pleaded its damages claim as an alternative to the equitable relief of injunction and specific performance.

## On Balance, The Equities Strongly Weigh
## In NFLP's Favor

If an injunction is not entered, NFLP will likely be permanently deprived of the unique real estate and the opportunities to develop them.  On the other hand, if McDonald's is unable to convey the parcels now, it has not lost its opportunity to do that in the future.  At most, therefore,

McDonald's may only be inconvenienced by delays in those sales to the other buyers. *Qantum Communications, supra*, 382 F. Supp. 2d at 1367 (delay of defendant's sale to another outweighed by harm to buyer). Thus, the injunction merely maintains the status quo, with McDonald's holding title. Moreover, McDonald's bad-faith negotiations – including both increasing the sale price by $200,000 on June 18 shortly after it agreed to a $1.2 million sale price, and trying to change the contract terms again on June 19 – weigh strongly against McDonald's on this aspect of equitable relief. (See Nomanbhoy Affid., ¶¶ 11, 13-14, 24-25.)

### An Injunction Will Not Affect Or Impair Any Public Rights

The transaction here is solely between private parties. NFLP is not informed that any of the other buyers are public entities. In any event, since NFLP has development plans for the Five Subject Properties, the public will actually benefit from the sale to NFLP, as the parcels will be improved.

### No Additional Bond Should Be Required

McDonald's currently holds, through RLA, NFLP's earnest money deposit of $210,000. (Nomanbhoy Affid., ¶ 21.) NFLP submits that those funds are adequate security under Fed. R. Civ. P. 65(c) to cover any claims by McDonald's for costs and damages if the injunction is found to have been wrongfully granted. Moreover, if those other sales are frustrated by an injunction, and the individual sales prices of the Five Subject Properties are acceptable to NFLP, NFLP may acquire one or more. Thus, McDonald's would not be harmed. Finally, additional security should not be required where NFLP has made such a strong showing of the likelihood of success on the merits.

WHEREFORE, for the reasons stated above, the Nomanbhoy Family Limited Partnership requests that this Court enter a preliminary injunction, or, alternatively, a temporary restraining order, enjoining the McDonald's Defendants and their officers, agents, employees or nominees from selling, transferring, conveying, hypothecating, or in any way diluting title in and to, the Five Subject Properties, without additional Rule 65(c) security. In the event that the Court enters a temporary restraining order, the Nomanbhoy Family Limited Partnership additionally requests an order permitting expedited discovery and setting this matter for later hearing of a motion for preliminary injunction.

NOMANBHOY FAMILY LIMITED PARTNERSHIP, Plaintiff

By _____s/ Stuart M. Widman_____
            One Of Its Attorneys

Stuart M. Widman
Miller Shakman & Beem LLP
180 North LaSalle Street, Suite 3600
Chicago, Illinois   60601
312-263-3700
Attorney No. 3010104

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 08 CV 3787 |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) Honorable Joan B. Gottschall ) Magistrate Judge Cole ) ) ) |
| Defendants. | ) |

## AFFIDAVIT OF SHABBIR T. NOMANBHOY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION OR, ALTERNATIVELY, FOR TEMPORARY RESTRAINING ORDER

I, Shabbir T. Nomanbhoy, being duly sworn, state that I have personal knowledge of the matters stated below and if sworn as a witness would testify as follows:

1.      I am one of the limited partners of the Nomanbhoy Family Limited Partnership ("NFLP"), which was formed in January, 2008 under the laws of the State of California. The general partner of NFLP is Nomanbhoy Enterprises, LLC. The Nomanbhoy Family Revocable Trust dated June 5, 2000, as amended, is the sole member of Nomanbhoy Enterprises, LLC. I am also one of the Trustees of the Nomanbhoy Family Revocable Trust, dated June 5, 2000, as amended.

2.      This affidavit contains a true and accurate statement of the verbal and written communications that I had, on behalf of NFLP, with agents and representatives of McDonald's Corporation ("McDonald's Corp."), McDonald's USA, LLC ("McDonald's USA"), Rick Levin & Associates, Inc. ("RLA"), and Ira Lauter ("Lauter"). Throughout the communications set forth below, I was informed by McDonald's Corp., McDonald's USA, and RLA that Lauter was an agent

for those three businesses in connection with the contract negotiations for the sale of the five parcels of real estate involved here.  (For purposes of this Affidavit, McDonald's Corp. and McDonald's USA are collectively referred to as "McDonald's".)  The documents attached as Exhibits A through Q are true and correct copies.

3.     Throughout the communications set forth below, no legal counsel represented the NFLP or me.  At all those times, I communicated from California, where I live, by e-mail or by telephone.

4.     In June 2008, McDonald's, acting for itself and through RLA, advertised and promoted the sale by McDonald's of five parcels of real estate located in Illinois and elsewhere.  The five properties were located at 5057 Wentworth, Chicago, Illinois; 10245 Roosevelt Road, Westchester, Illinois; 130 South Virginia Street, Crystal Lake, Illinois; 6574 North 76th Street, Milwaukee, Wisconsin; and 5377 Broadway, Merrillville, Indiana (the "Five Subject Properties").  These Five Subject Properties are former locations of McDonald's restaurants and were listed as surplus properties for sale.  Originally, McDonald's intended to sell the Five Subject Properties via auction to be held on Thursday, June 19, 2008 in Chicago.  The auction was advertised on the RLA website, on signboards placed on the parcels, and otherwise.

5.     On or around June 12, 2008, I, acting for the NFLP, and McDonald's, acting for itself and through RLA, began negotiating the direct sale by McDonald's to NFLP of all Five Subject Properties, rather than via auction.  The negotiations, primarily via email and telephone, contemplated an all-cash bulk purchase of all Five Subject Properties.

6.     Initially, McDonald's offered to sell the Five Subject Properties for $2 million.  But as a result of negotiations into the week of June 16, 2008, at 8:20 a.m. Pacific Time ("PT") on June

2

18, Bruce Neumann ("Neumann"), Senior Counsel for McDonald's Corp., signed and emailed to me and Lauter a Real Estate Sales Contract (the "RESC"), containing typed inserts and Neumann's initialed changes, for the Five Subject Properties on behalf of McDonald's. That RESC, attached to the First Amended Complaint and hereto as Exhibit A, is the Real Estate Sales Contract which is the subject of this litigation.

7.    The RESC stated a purchase price of $1.4 million and other terms.  One of those terms was an initial earnest money deposit of fifteen percent (15%), or $210,000, to be deposited "upon acceptance." (Exh. A, ¶5.) Neumann's cover e-mail of 8:20 a.m. PT (Exhibit B attached) stated he was sending "the contract signed by McDonald's."

8.    Since McDonald's was selling property where it once had restaurants, McDonald's wanted a restrictive covenant in the RESC limiting the post-sale use of the Five Subject Properties. The RESC sent by Neumann contained a Restrictive Covenant (Exhibit B to the RESC), which was different than what had been negotiated earlier.

9.    The terms of the Restrictive Covenant were then negotiated by me and Lauter.  At 10:12 a.m. PT on June 18, Lauter proposed, via email, a modified and somewhat narrower restrictive covenant. (See Exhibit C attached.) Because the language of Lauter's proposal was still very broad, thereby limiting NFLP's later use of the Five Subject Properties, at 12:40 p.m. PT I accepted Lauter's revision of the covenant but offered to pay only $1 million for the Five Subject Properties. (See Exhibit D.)

10.    Price negotiations continued between me and Lauter over the next couple hours. Lauter offered $1.25 million, and I countered with $1.125 million. At 2:07 p.m. PT on June 18, Lauter said that "McDonald's will not accept less than $1,200,000 . . . ." Lauter also asked for

3

earnest money of $300,000 B 25%, not 15% per the RESC - by June 19, the day scheduled for the auction. (See Exhibit E.)

11.    Ten minutes later, at 2:17 p.m. PT, I emailed Lauter, saying "OK, Ira. Deal!" (See Exhibit F.) I and Lauter had also previously discussed that McDonald's would provide a new survey for each of the Five Subject Properties, and that McDonald's would pay two percent (2%) per month on the deposited earnest money if closing were delayed past July 31, the date set forth in the RESC sent by Neumann that morning. Lauter said that the survey and interest terms were acceptable. I also mentioned that in my 2:17 p.m. PT email. (Exhibit F.) Further, since Neumann's RESC said that the escrowee would be Chicago Title Insurance Company, and Lauter told me that RLA would be the escrowee, I asked for clarification of that. (Exhibit F.) I was agreeable to sending the earnest money to RLA if I was assured that RLA was the correct escrowee.

12.    By 3:27 p.m. PT on June 18, I obtained three cashier's checks, payable to NFLP but endorsed to RLA, totaling $180,000. $180,000, not $300,000, was 15% of $1.2 million, as I alerted Lauter earlier, and as he agreed. I emailed copies of the three checks to Lauter and Neumann. (Exhibit G.)

13.    Less than ten minutes later, at 3:36 p.m. PT, despite the prior agreement, Lauter emailed me a single sentence: "McDonald's has decided that they will not sell for less than a [sic] $1,400,000." (Exhibit H.) It was just 80 minutes before that Lauter offered and I accepted the $1.2 million price.

14.    During the next flurry of emails and telephone calls, I continued to press for the sale at the earlier agreed-upon $1.2 million. At 5:45 p.m. PT, Lauter stated that "McDonald's will only

4

sell the properties for a combined $1,400,000. If you will pay 1.4 MIL they will . . . cancel the Auction." (Exhibit I.)

15.     Less than 20 minutes later, at 6:02 p.m. PT on June 18, I emailed Lauter saying "OK. I will pay $1.4 mill for the 5 properties." (Exhibit J.)

16.     In a telephone conversation after that, I asked Lauter to send a fully revised contract containing all the terms we had discussed. He stated that Neumann was no longer available since it was after 8:00 p.m. Central Time ("CT"). Lauter then suggested, and I agreed, that we use the RESC in the form sent by Neumann that morning. The issues of survey and penalty interest were minor, and I wanted to have a signed contract before I sent the substantial earnest money to RLA. (Because of the price change, I had not previously been able to send the cashier's checks for $180,000 because the Federal Express deadline had passed, and Lauter stated that I could wire the funds the next day.)

17.     But I still needed clarification from McDonald's that RLA would be the escrow agent and that the $210,000 earnest money - 15% of $1.4 million - should be sent to RLA. I asked Lauter to get that clarification in writing from McDonald's.

18.     At 6:59 p.m. PT on June 18, I received from Mary G. Meyer ("Meyer"), the Regional Real Estate Manager of McDonald's USA, an e-mail and attached letter acknowledging that "Rick Levin & Associates, Inc. represents McDonald's USA, LLC in the sale of the 5 McDonald's excess properties," and that the earnest money should be sent to RLA. (Exhibit K.)

19.     At 7:17 p.m. PT, I emailed Neumann, Lauter and Meyer that "the contract is acceptable as I indicated to Ira [Lauter]." My e-mail referred to the RESC that Neumann had

emailed that morning. (Exhibit L.) On June 18, on behalf of NFLP, I initialed each page (except the legal descriptions) of the June 18 version of the RESC sent to me by Neumann.

20.     At 8:18 p.m. PT on June 18, in direct reply to my 7:17 p.m. PT e-mail, Neumann e-mailed me another confirmation that RLA was the escrow agent and stating that the initial earnest money "must be wired and received by Rick Levin or the auction will go forward." (Exhibit M.) I understood that to mean that the auction would be cancelled as long as the earnest money arrived before 1:00 p.m. CT, the time scheduled for the auction. Neumann said nothing about my 7:17 p.m. PT email (Exhibit L) accepting the terms of the RESC sent by Neumann that morning. I understood that to mean that Neumann concurred that the RESC he had sent that morning was binding, except for the clarification of the escrowee. I responded to Neumann and the others at 8:40 p.m. PT that the earnest money would be sent by 1:00 p.m. CT on June 19. (Exhibit N.)

21.     The next morning, June 19, I called Lauter at 6:45 a.m. PT to ensure that there were no changes from the way things were as of the prior evening. Lauter said "No, no, we are OK with the contract, and we are just waiting for the earnest money with the contract." Right after that, I caused the initial earnest money deposit of $210,000 to be wired to RLA from NFLP's account. Due to the time zone difference, RLA's bank received the wire transfer of funds on 12:12 p.m. CT on June 19, 2008. That was well before the auction was to start. At about 12:15 p.m. CT, my bank confirmed to me the completed wire transfer, and I called Lauter. He assured me that the auction would be cancelled after verifying that the earnest money had been received. McDonald's and RLA have never stated that the earnest money was not timely received. They still have it.

22.     At 12:52 p.m. CT on June 19, 2008, after RLA's bank received the earnest money, Lauter emailed me that RLA was "preparing to tell bidders that there is no auction." (Exhibit O.)

6

23.     On June 19, I returned my initialed version of the RESC to Neumann, Lauter and Meyer. This is the RESC attached as Exhibit A to this Affidavit and the First Amended Complaint.

24.     Also, on the morning of June 19, 2008, shortly after Lauter told me that the contract was fine, Neumann emailed to me a different version of a Real Estate Sales Contract which added a significant new provision that I and Lauter had not agreed to, that was not in any of the prior drafts, and was not in the version sent by Neumann and initialed by me on June 18. The addition stated: "In the event Seller has not received the Earnest Money before the commencement of the auction of the Properties on June 19, 2008, **or if the auction otherwise occurs**, this Contract shall be null and void and of no further force or effect." (See Exhibit P; emphasis added.)   McDonald's could then simply ignore NFLP's contract and hold the auction.

25.     I called Lauter and told him that I would not and did not accept the change proposed by Neumann earlier that morning because it was not part of the prior negotiations, had not previously been accepted by me, and was instead a unilateral change of terms by Neumann and McDonald's. Later that afternoon, I e-mailed my position to Lauter and Neumann.

26.     At about 1:00 p.m. CT on June 19, 2008, McDonald's and RLA held the scheduled auction and purportedly sold the Five Subject Properties. Lauter and Neumann separately told me that on June 19 – Lauter in a 4:00 p.m. CT telephone call and Neumann via e-mail at 5:53 p.m. CT. Neumann also stated that NFLP did not have a contract with McDonald's, and that all prior offers had been revoked and invalidated. (See Exhibit Q.)

27.    NFLP created a viable business plan to develop, build and operate or develop, build and sell shopping centers on each of the Five Subject Properties. NFLP has consulted with a builder/developer, and had incurred time and expense, to develop the plan. If NFLP is deprived of any or all of the Five Subject Properties, those developments will be permanently frustrated.

28.    McDonald's standard sales contract for these Five Subject Properties had a closing date of Tuesday, August 5, 2008 (Exhibit A, ¶6). Although my contract was changed to a July 31, 2008 closing date, I believe that the sales to the other buyers will be concluded by August 5, 2008.

SHABBIR T. NOMANBHOY

By _____
Shabbir T. Nomanbhoy

STATE OF CALIFORNIA,
COUNTY OF SANTA CLARA

SUBSCRIBED and SWORN to
before me this 25th day of

_____July_____, 2008.

_Proved to me on the basis of satisfactory evidence
to be the person who appeared before me._

_____
NOTARY PUBLIC

YI-YUEN CHEN
Commission # 1738855
Notary Public - California
Santa Clara County
My Comm. Expires Apr 14, 2011

Stuart M. Widman
Miller Shakman & Beem LLP
180 North LaSalle Street, Suite 3600
Chicago, Illinois  60601
312-263-3700
Attorney No. 3010104

8

# EXHIBIT A

### REAL ESTATE SALES CONTRACT  - VERSION 2
### WITH  EXHIBIT A & B-2

1. **Parties.**

   **Seller:**   McDonald's Corporation or its nominee
   One McDonald's Plaza
   Oak Brook, Illinois 60523
   Tel.: 630.636.4982
   Fax: 630.636.4804

   **Purchaser:**   NOMANBHOY FAMILY LIMITED PARTNERSHIP
   (OR TRUST, OR IRA ACCOUNTS OF NOMANBHOY FAMILY)
   11254  MT CREST PLACE
   CUPERTINO, CA 95014
   Tel 408 996-8786    call 408 507-7863
   Email SHABBIR. NOMANBHOY @ GMAIL.COM

2. **Purchase Price**
2.1. High Bid Price                          $
2.2. Buyer's Premium (3% of 2.1)    BULK SALE OFFER    $
2.3. Purchase Price (2.1 + 2.2)    FOR 5 PROPERTIES    $  1,400,000.00
2.4. Total Earnest Money Required (15% of 2.3)    15%    $  ~~210,000.00~~  $210,000.00
2.5. Initial Earnest Money Deposit                $ $210,000.00
2.6. Additional Earnest Money Required (2.4- 2.5)    $ -0-
2.7. Balance of Purchase Price Due at Closing (2.3- 2.4)    $  ~~1,260,000.00~~  $1,190,000.00

3.   **Agreement to Sell and Purchase.**  Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller, at the price and on the terms set forth herein, the real estate consisting of ~~that parcel~~ of land identified on ~~Rider 1~~ attached to this Contract (the "Property") and more particularly described on Exhibit "A" attached hereto.

4.   **All Cash Transaction.**  This is an all-cash sale and purchase; and is NOT contingent upon Purchaser obtaining financing even though Purchaser may apply to a lending institution of Purchaser's choice for a mortgage loan. Purchaser understands and agrees that neither their receipt of a commitment from such a lending institution, their acceptance of such a commitment, nor their satisfaction of any condition set forth in such a commitment shall in any way be conditions of Purchaser's obligations under this Contract. Seller makes no representation or warranty as to Purchaser's ability to obtain financing.

5.   **Earnest Money.**   Purchaser ~~has deposited the~~ WILL  UPON ACCEPTANCE Initial Earnest Money set forth in Paragraph 2.5 ~~and receipt is hereby acknowledged~~. The Additional Earnest Money Required set forth in Paragraph 2.6 shall be paid by cash or cashier's check, payable to the order of the Escrow Agent ~~(as set forth on Rider 1 attached to the Real Estate Sales Contract)~~ and received by Escrow Agent on or before noon on Thursday, June 26, 2008, at the offices of Escrow Agent. The Additional Earnest Money Required may be paid by personal check only if paid on the date of the auction at the time this Contract is executed. All earnest money shall be held by Escrow Agent for the benefit of the parties. Purchaser acknowledges that TIME IS OF THE ESSENCE with respect to the payment of any additional earnest money and the closing of this sale. Upon Seller's execution of this Contract, Rick Levin & Associates, Inc. or Rick Levin & Associates, Inc., in conjunction with Rick Levin, licensed Indiana auctioneer, as applicable ("Auctioneer") shall deposit the Earnest Money with the Escrow Agent for the mutual benefit of Purchaser and Seller.

Chicago Title Insurance Company

6.   **The "Closing"**  The purchase and sale of the Property shall be closed (the "**Closing**") on ~~Tuesday, August 5, 2008~~, Thursday, July 31, 2008 or on such other date as agreed to by the parties? Closing shall take place at an office of Chicago Title Company or such other title company as agreed to between Seller and Purchaser (the "**Title Company**") at such location as approved by Seller. Purchaser may use the proceeds of a money lender's escrow to pay the balance of the Purchase Price, provided that the terms of the money lender's escrow are not inconsistent with the terms of this Contract or the Escrow Agreement. Purchaser shall deposit, by certified funds, wire transfer or a bank cashiers check made payable to Title Company, all funds necessary to close the transaction contemplated by this Contract and shall promptly deliver and execute all required documents.

*If due to Seller's default hereunder, Seller fails to close on or before July 31, 2008, Seller shall pay to Purchaser a penalty of two (2%) percent per annum on the total earnest money deposit, prorated to the earlier of the actual closing date, or the termination of this contract.




7.  <u>Delivery of Deed.</u> On the Closing Date, Seller shall convey or cause to be conveyed to Purchaser by recordable Limited or Special Warranty or Trustee's Deed, title to the Property subject only to the following matters ("**Permitted Exceptions**"):

7.1.  general real estate taxes for the years 2007 and 2008 and subsequent years;

7.2.  covenants, conditions and restrictions of record (including without limitation such easements and restrictions as may be recorded after the date hereof which Seller determines are necessary or appropriate);

7.3.  certain mutually beneficial restrictions and obligations with respect to the proper use, conduct and maintenance of the Property and other property (Purchaser hereby authorizes Seller to record any such restrictions and obligations as covenants affecting the Property and other property)X *AFTER REVISW & AGREEMENT BY PURCHASER*

7.4.  private and/or public utility easements, roads and highways, if any, whether or not of record;

7.5.  all matters which a current, accurate survey of the Property would disclose;

7.6.  applicable zoning and building lines and ordinances;

7.7.  in the event Seller or any entity related to Seller is the owner of or otherwise has an interest in any adjacent property, a reservation to Seller or its nominee of the right and privilege of Seller, its leasees, franchisees, successors and assigns to use and enjoy the benefit of all existing private utilities, drainage areas and access ways of any kind, whatsoever, if any; *Purchaser agrees to accept in Seller's deed to Purchaser, the Restrictive Covenant set forth o* *Exhibit B.*

7.8.  ~~Purchaser agrees to accept in Seller's deed to Purchaser a restriction prohibiting the Property from being used for restaurant purposes for a period of 20 years from the date of the deed. Purchaser agrees that the restriction shall be a covenant running with the land and be binding upon Purchaser, its heirs, administrators, successors and assigns.~~ *SEE ATTACHED RESTRICTIVE COVENANT EXHIBIT B.~~2~~*

7.9.  acts done or suffered by Purchaser or by any party claiming by, through or under Purchaser;

7.10.  party wall rights, if any; and

7.11.  all installments of special assessments heretofore levied falling due after date of closing.

8.  <u>Title/Survey.</u>  At least five days [*business*] prior to Closing, Seller shall show to Purchaser or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance issued by the Title Company bearing date on or subsequent to the date of the acceptance of this Contract, in the amount of the Purchase Price subject to no other exceptions than those listed in Paragraph 7 and to general exceptions contained in said commitment. Every Commitment for Title Insurance furnished by Seller hereunder shall be conclusive evidence of title as therein shown. If evidence of title discloses other exceptions, Seller shall have thirty (30) days from Seller's receipt of evidence of title to cure such exceptions and notify Purchaser accordingly, and as to those exceptions which may be removed at closing by payment of money, Seller may have same removed at closing by using the proceeds of sale in payment thereof. Seller has a [*To the extent* *Seller has a c* *of such survey* *in its possess*] delivered a copy of any survey of the property in Seller's possession to Purchaser.  If Seller is unable to have such defects cured or waived within 30 days, Purchaser may, as its sole remedy, terminate this Contract within 10 days thereafter. In no event shall Seller have any obligation to commence litigation or to expend money to cure or remove any title objections. Seller and Purchaser acknowledge and agree that Seller shall not be obligated to provide any new or updated survey to Purchaser.

9.  <u>Payments at Closing.</u>  Purchaser shall pay all recording charges, all money lender's charges (including money lender's escrow fees), municipal transaction tax stamps, if applicable, escrow fees and any and all title insurance charges.

10.  <u>Possession.</u>  Purchaser shall be entitled to occupancy and possession of the Property from and after the Closing date provided final payment of the Purchase Price has been made and the Closing has been fully consummated. Prior to Closing, Seller shall have sole control and exclusive possession of the Property.

11.  <u>Prorations.</u>  At closing, Purchaser shall receive, to the extent that they have not been paid, a credit for real estate taxes for 2007 and 2008. In the event the actual amount of the tax bills is unknown, such credit shall be based on 105% of the most recent ascertainable general real estate tax bill for the Property. General real estate taxes shall be prorated to the date of closing.  If the real estate tax bill includes additional property owned by Seller, at Closing Purchaser shall give Seller a credit for taxes from the date of Closing through the remainder of the tax year and the parties shall complete a tax division on the Property such that it shall be separately assessed. Prior to such separate assessment, Seller and Purchaser shall each pay their pro rata share of the tax bill based upon the square footage of each parcel. All prorations are final.  All other items customarily prorated shall be prorated as of the date of closing.

12.  <u>Intentionally Deleted</u>

6/18

13.  Commission/Broker-Agency Disclosure.  Seller shall cause to be paid a broker's commission to Auctioneer at closing, as provided in the Exclusive Agreement For Auctioneering Services between the Seller and Auctioneer.  The provisions of this paragraph shall survive the closing.  ·Purchaser represents and warrants to Seller that no auctioneer or broker, other than Auctioneer and _____ NONE _____ ("Participating Broker") was involved in showing, submitting or selling the Property to Purchaser. Purchaser agrees to indemnify and hold Seller, Auctioneer and Participating Broker, if any, harmless and, defend them from any claim relating to Purchaser's purchase of the Property asserted against the Seller or Auctioneer by any broker other than as set forth in this Paragraph 13.  The provisions of this Paragraph shall survive the closing.  Purchaser acknowledges that Auctioneer and its licensed associates represent the Seller as Seller's agent in the sale of this Property.

14.  Irrevocable Offer.  Purchaser's execution and delivery of this Contract to Seller is an irrevocable offer to purchase the Property made to Seller and shall not be binding upon Seller until executed by Seller, or Seller's duly authorized agent.  Purchaser agrees that this offer shall remain irrevocable until 5:00 p.m. Chicago time on ~~Monday, June 23,~~ 2008.  Notification of Seller's acceptance may be given pursuant to the notice provision in this Contract or by telephone.  Seller's, or a duly authorized agent of Seller's, failure to notify Purchaser on a timely basis that Seller rejects Purchaser's offer shall not constitute acceptance or rejection of Purchaser's offer, but Purchaser's offer shall then become revocable by Purchaser.  If Seller rejects Purchaser's offer or Purchaser's offer is effectively revoked, all deposits made by Purchaser shall be promptly returned to Purchaser.

15.  Default.
      15.1.      Purchaser's Default.  At Seller's option, Purchaser shall be in default under the terms of this Contract if, in addition to any other default specified herein, Purchaser shall:

            15.1.1. fail to close pursuant to the terms hereof;
            15.1.2. fail to timely make any payment required of Purchaser hereunder;
            15.1.3. reserved;
            15.1.4. fail to appear at the time and place designated by Seller, as provided herein, to close the transaction; or
            15.1.5. fail to make Closing deposits at the times required thereunder.

            15.1.6. If Seller declares Purchaser in default pursuant to the terms herein, or if Purchaser fails or refuses to carry out any other obligation of Purchaser under the terms of this Contract and any supplemental agreements made a part hereof, or Purchaser defaults under any provision hereof, then, at Seller's option, this Contract is terminated, and, upon notice to Purchaser, the earnest money shall be forfeited. Seller may also elect to assert against Purchaser any other remedy available, at law or in equity.

16.  Demand For Earnest Money.  Purchaser and Seller hereby agree that if Seller makes a demand upon Auctioneer stating that Seller has thereby elected to forfeit Purchaser's earnest money, and demanding that Auctioneer remit to Seller any earnest money deposited by Purchaser with Auctioneer, pursuant to Paragraph 15.1.6, whereupon Auctioneer shall serve notice upon both parties as to same by certified mail, return receipt requested.  Purchaser shall have seven (7) days from the date Auctioneer deposits the notice in the U. S. mail with sufficient postage prepaid to (a) cure the default; or (b) object in writing to Auctioneer of the intended disposition of earnest money.  The mailing of a notice by certified mail, return receipt requested, shall be sufficient service when the notice is mailed.  If Purchaser fails to cure the default or Auctioneer does not receive Purchaser's written objection within said seven (7) day period, then Auctioneer is hereby authorized by Purchaser and Seller to remit same to Seller (reduced by any monies due Auctioneer from Seller, if any), and Purchaser's right under this Contract shall be forfeited, and the Contract shall be terminated without further action by either party or Auctioneer.  Seller is then free to sell the Property to any other party.

17.  Interpleader.  If either party objects to the intended disposition in writing within the aforementioned seven (7) day grace period, then the parties hereto agree that Auctioneer may deposit earnest money, less costs, with the Clerk of the Circuit Court of Cook County by filing an action in the nature of interpleader.  The parties agree that Auctioneer be reimbursed from the earnest money for all costs, including reasonable attorney's fees, relating to the filing of the interpleader and do hereby agree to indemnify, defend and hold Auctioneer harmless from any and all claims and demands, including the payment of reasonable attorney's fees, costs and expenses arising out of such default claims and demands.

18. Warranty And Disclaimer Of Warranties.  PURCHASER REPRESENTS THAT EITHER PURCHASER OR A DULY AUTHORIZED AGENT OF PURCHASER HAS INSPECTED, OR WAIVES THE RIGHT TO INSPECT, THE PROPERTY AND VERIFIED THE FACTS AND INFORMATION CONTAINED IN ANY MATERIALS PROVIDED TO PURCHASER PRIOR TO ~~EXECUTING THIS CONTRACT~~.  PURCHASER WARRANTS THAT PURCHASER IS PURCHASING THE PROPERTY, ALL IMPROVEMENTS, FIXTURE, EQUIPMENT AND PERSONAL PROPERTY, THEREOF ON AN "AS-IS, WHERE-IS" BASIS, WITH ALL FAULTS AND WITH NO WARRANTIES OF ANY KIND, EXPRESS OF IMPLIED, EITHER ORAL OR WRITTEN, EXCEPT AS EXPRESSLY STATED IN THIS CONTRACT, WHETHER OF HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, CONDITION OF IMPROVEMENTS, ENVIRONMENTAL CONDITION OR OTHERWISE MADE BY SELLER, AUCTIONEER OR ANY AGENT OF EITHER OF THEM, INCLUDING, BUT NOT LIMITED TO, INFORMATION CONTAINED IN THE SALES BROCHURE, ADVERTISING OR SUPPLEMENTAL BROCHURES. NEITHER SELLER, AUCTIONEER, NOR ANY OF THEIR AGENTS ASSUME ANY LIABILITY FOR INACCURACIES, ERRORS OR OMISSIONS CONTAINED IN ANY MATERIALS PROVIDED TO PURCHASER.

PURCHASER'S INITIALS:

By executing this Contract, Purchaser expressly represents and agrees that Purchaser is not relying upon any representative warranty or statement by Seller, Auctioneer or its or their sales representatives which differs from the disclosures made in this Contract. Purchaser acknowledges that Purchaser has not relied upon any sales plans, selling brochures, advertisements, representations, warranties, statements or estimates of any nature whatsoever, whether written or oral, made by Seller, Auctioneer or others, including, but not limited to, any relating to the description of physical condition of the Property, or the dimensions of the Property or any other physical dimensions thereof, the estimated real estate taxes of the Property, the right to any income tax deduction for any real estate taxes or mortgage interest paid by Purchaser, or any other data, except as may be specifically represented herein. Purchaser has relied on their own examination and investigation thereof. No person has been authorized to make any representation on behalf of Seller. Purchaser agrees (a) to purchase the Property without offset or any claim against, or liability to, Seller or its agents, whether or not any layout or dimension of the Property or any part thereof, is accurate or correct, and (b) that Purchaser shall not be relieved of any of Purchaser's obligations hereunder by reason of any minor inaccuracy or error. The provisions of this paragraph shall survive the Closing.

SELLER AGREES THAT NO MATERIAL DIFFERENCES EXIST FROM
RICK LEVIN WEBSITE INFORMATION.

PURCHASER'S INITIALS

19. Notices.  All notices herein required shall be in writing and signed by either party, and shall be served on the other party at the addresses set forth in Paragraph 1. The mailing of a notice by registered or certified mail, return receipt requested with sufficient postage prepaid, shall be sufficient service when the notice is mailed. Notices may also be served by a nationally recognized air courier, or personal delivery. Notices sent by air courier shall be deemed delivered on the date of receipt. Either party may change its address for notice purposes by giving notice to that effect in the manner set forth herein, provided such change of address shall not be deemed received until actual receipt thereof by the addressee. Any notices required herein may be sent by and to each party's respective attorney.

20. Attorney Review.  PURCHASER REPRESENTS THAT PURCHASER HAS BEEN ADVISED BY THE SELLER AND AUCTIONEER TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS CONTRACT. PURCHSER FURTHER ACKNOWLEDGES THAT HE HAS READ AND UNDERSTANDS EACH AND EVERY PART OF THIS CONTRACT.

21. Property Condition.  The parties hereto acknowledge that Auctioneer is not obligated to and has not made any independent investigation of the condition of the Property including, but not limited to, any environmental matters with respect thereto (collectively the "Physical Condition").  The parties hereto further acknowledge that all investigations, reports and information with respect to the Physical Condition, if any, have been prepared by or for the Seller and have been furnished by Auctioneer to Purchaser on behalf of Seller. Seller makes no representation as to the truth or accuracy of any such investigations, reports and/or information.

22. Statutory Compliance.  Purchaser and Seller hereby agree to make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended. Purchaser and Seller agree to make all certifications and do all things necessary to comply with Section 1445 of the Internal Revenue Code at or before the time of Closing.

23. Stamp Taxes.  Seller shall furnish a completed declaration signed by the Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by the Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax.

24. Use of Pronouns. Wherever appropriate, the singular includes the plural and the masculine includes the feminine or the neuter. The term "Purchaser" shall be interpreted as "Purchasers" if more than one person are purchasing the Property, and their obligations shall be joint and several.

25. No Assignment. Purchaser shall not directly or indirectly assign or transfer his rights under this Contract without prior written approval of Seller which may be granted or withheld in the sole and absolute discretion of Seller. Seller may assign this Contract without the consent of Purchaser, subject, however, to Purchaser's rights hereunder. Any attempted assignment or transfer by Purchaser without Seller's prior written consent shall be deemed null and void and shall be considered an event of default by Purchaser subject to the provisions of Paragraph 16.2 of this Contract.

26. Headings; Exhibits. The paragraph headings used herein are for the reader's convenience only and they shall not be used to interpret the meaning of the terms set forth herein. Exhibits attached hereto are incorporated as a part of this Contract.

27. Governing Law. The parties agree that any litigation or dispute concerning the enforcement of this Contract shall be brought in the State of Illinois, the jurisdiction shall be the county in which the Property is located, and that Illinois law shall govern its interpretation.

28. Complete Agreement; Severability. This Contract sets forth the entire understanding between the parties relating to the transactions described herein, there being no terms, conditions, warranties or representations other than those contained herein. This Contract may be amended only in an instrument signed by both parties hereto. The parties intend that faxed signatures and that a faxed Contract containing the signatures (original or faxed) of all parties is binding on the parties. At the request of either party, any faxed document subject to this paragraph shall be re-executed by both parties in an original form. Neither party shall raise the use of a facsimile machine as a defense to this Contract and shall forever waive such defense. If any provision of this Contract is invalid or unenforceable as against any party under certain circumstances, the remainder of this Contract and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Contract, except as otherwise herein provided shall be valid and enforced to the fullest extent permitted by law.

29. Invalidity. The invalidity of any covenant, grant, condition or provision of this Contract shall not impair or affect in any manner the validity, enforceability or effect of the remainder of the Contract.

30. Purchaser's Status. Purchaser represents and warrants there is nothing in Purchaser's status which could or might preclude or prevent Purchaser from consummating this transaction as herein set forth. Purchaser also agrees that he or she shall not cause any labor or material to be incorporated or delivered to the Property prior to Closing.

31. Binding Agreement. The terms and provisions of this contract shall be binding upon the parties hereto and their heirs, administrators, executors, successors, and permitted assigns.

32. Request for Escrow. At the request of Seller or Purchaser, evidenced by written notice to the other party at any time prior to the date for delivery of deed hereunder, this sale shall be closed through an escrow with the Title Company, in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then furnished and in use by said company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of purchase price and delivery of deed shall be made through the escrow and this Contract and the earnest money shall be deposited in the escrow and Auctioneer shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be paid by the party requesting it.

33. Other Documents. Seller agrees to furnish an affidavit of title subject only to those items set forth herein, and an ALTA statement if required by Purchaser's mortgagee, and transfer tax declarations.

34. Existing Mortgage. Seller shall have the right to pay off any existing mortgage(s) out of the proceeds of this sale.

35. Indemnity. Purchaser covenants to indemnify, defend and hold Seller harmless against any and all losses, claims, damages, liabilities, costs (including reasonable attorney's fees and court costs), and causes of action including, without limitation, those arising from mechanics liens, injuries to person or damage to property, including the Property, suffered or incurred by Seller directly or indirectly, as a result of, the entry onto the Property by Purchaser, Purchaser's agents, contractors, employees, and licensees.

Rx Date/Time     JUN-17-2008(TUE) 01:50          4089962786                    P.006
04/11/2008   05:07   4089962786           NOMANBHOYS                    PAGE   06

36. Anti-Terrorism Representation and Warranty. Seller and Purchase each represent and warrant that neither they nor the officers and directors controlling Purchaser are acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that they are not engaged in the transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation. Each party hereby agrees to defend, indemnify, and hold harmless the other party from and against any and all claims, damages, losses, risks, liabilities and expenses (including reasonable attorney's fees and costs) arising from or related to any breach of the foregoing representation and warranty.

| THIS SPACE INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS. |
| --- |

6/18

IN WITNESS WHEREOF, the parties have executed this Contract on the dates set forth below their signatures.

SELLER:

McDonald's Corporation

BY: _Bruce Neuman_
TITLE: _Senior Counsel_
DATE: _June 18, 2008_

PURCHASER: NOMANBHOY FAMILY LIMITED
                PARTNERSHIP

Signature _by its President_
              SHABBIR NOMANBHOY
Signature

DATE: _June 16, 08_

SELLER'S ATTORNEY:
Bruce Neumann
McDonald's Corporation
1 McDonald's Plaza, Dept 067
Oak Brook, Illinois 60523
Tel.: 630.623.7556
Fax: 630.623.8084

PURCHASER'S ATTORNEY:
To be determined

AUCTIONEER:
     Rick Levin & Associates, Inc. or Rick Levin &
     Associates, Inc., in conjunction with Rick Levin,
     licensed Indiana auctioneer
     1467 North Elston Avenue, 2nd Floor
     Chicago, IL 60622
     Telephone: 773.252.4500 x223
     Facsimile:  773.252.4520

EXHIBITS:

Exhibit A:  Legal Description

6/18

EXHIBIT A $-1$

LIST OF PROPERTIES    ~~Legal Description~~ — ALL FORMER McDONALDS RESTAURANTS

| # | ADDRESS | BRIEF DESCRIPTION FROM RICK LEVIN WEBSITE | Value of Property |
|---|---------|-------------------------------------------|-------------------|
| 1. | 5057 WENTWORTH CHICAGO, IL | VACANT LAND — 1.108 ACRES | |
| 2. | 10245 ROOSEVELT RD WESTCHESTER, IL | LAND — 29,951 SF BUILDING — 2,100 SF (UNOCCUPIED) | |
| 3. | 130 S. VIRGINIA ST CRYSTAL LAKE, IL | VACANT LAND — 26,000 SF | |
| 4. | 6574 N. 76th ST MILWAUKEE, WIS | VACANT LAND — 22,526 SF | |
| 5. | 5377 BROADWAY MERRILVILLE, IN | VACANT LAND — 1.55 ACRES (2 PARCELS) | |

6/18

5057 S. Wentworth, Chicago

LC 012-1061    FILE NO. 8591

THAT PART OF THE NORTHEAST 1/4 OF SECTION 9, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDAN, COMMENCING AT THE INTERSECTION OF THE EAST LINE OF WENTWORTH AVENUE AND THE NORTH LINE OF 51ST STREET IN SAID CITY, THE POINT OF BEGINNING; THENCE NORTH ALONG SAID EAST LINE OF WENTWORTH AVENUE, 220 FEET TO A POINT; THENCE EAST AT A RIGHT ANGLE TO THE LAST DESCRIBED COURSE, 220 FEET TO A POINT THENCE SOUTH AT A RIGHT ANGLE TO THE LAST DESCRIBED COURSE, 220 FEET TO A POINT OF INTERSECTION WITH THE NORTH LINE OF 51ST STREET; THENCE WEST ALONG SAID NORTH LINE OF 51st STREET, 220 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

Exhibit A-2

westchester

EXHIBIT A -2

LOTS 1, 2, 3, AND LOT 4 (EXCEPT THE WEST 2.20 FEET THEREOF) LOT 48 AND THE VACATED ALLEY ADJACENT THERETO AND LOTS 49 AND 50 ALL IN GEORGE F. NIXON AND COMPANY'S WESTCHESTER IN THE WEST HALF OT HE NORTH WEST QUARTER OF SECTION 21, TOWNSHIP 39 NORTH, RNAGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, IN THE VILLAGE OF WESTCHESTER, COOK COUNTY, ILLINOIS.

130 5. Virginia Street

EXHIBIT A -4

LEGAL DESCRIPTION

The Easterly 170.0 feet (as measured along the lot lines) of Lot 3, in Lakeacres, a subdivision of part of the North Half of Section 6, Township 43 North, Range 8, East of the Third Principal Meridian, according to Plat thereof recorded February 26, 1954, as Document #275689 in McHenry County, Illinois.

LESS AND EXCEPT:

That part of the Easterly 170 feet (as measured along the property lines) of Lot 3 in Lakeacres, a subdivision of part of the North Half of Section 6, Township 43 North, Range 8 East of the Third Principal Meridian, according to the Plat thereof recorded February 26, 1954 as Document No. 275689, in Book 11 of Plats, page 100, described as follows:

Beginning at the most northerly corner of Lot 3; thence on an assumed bearing of South 54 degrees 14 minutes 25 seconds West along the Northerly line of said Lot 3, a distance of 7.18 feet to a point; thence South 15 degrees 19 minutes 37 seconds East, a distance of 143.70 feet to a point on a 585.50 foot radius curve, the center of the circle bears North 74 degrees 40 minutes 23 seconds East from said point; thence Southeasterly along said curve 6.29 feet, central angle 00 degrees 36 minutes 57 seconds, to a point on the Southerly line of said Lot 3; thence North 54 degrees 14 minutes 25 seconds East, a distance of 6.90 feet to the Southwesterly line of Virginia Street; thence North 15 degrees 14 minutes 14 seconds West along said Westerly line, a distance of 150.10 feet to the point of beginning, in McHenry County, Illinois.

Parcel #19-06-204-036

Contract

EXHIBIT A - 4

6574 N. 76th Street, Milwaukee

Exhibit A-5

That part of Lots One (1), Two (2), Ten (10), and Eleven (11) in Block Seventy-three (73) in Menomonee River Hills East, being a Subdivision of a part of the South East One-quarter (1/4) of Section Twenty-two (22), Township Eight (8) North, Range Twenty-one (21) East, in the City of Milwaukee, Milwaukee County, Wisconsin, which is bounded and described as follows: Commencing at the Northwest corner of said Block 73; thence South 00° 23' 50" West 150.00 feet to a point; thence South 89° 36' 10" East 150.00 feet to a point; thence North 00° 23' 50" East 150.35 feet to a point on the South line of West Acacia Street; thence West 30.81 feet along the South line of West Acacia Street, being the arc of a curve whose center lies to the North whose radius is 1360.78 feet and whose chord bears South 89° 44' 55" West 30.81 feet to a point; thence North 89° 36' 10" West along the South line of West Acacia Street 119.19 feet to the point of beginning.

EXHIBIT A -5
L/C: 48-0035
Parcel Type: MS

5377 Broadway, memilville

Exhibit A-6

Part of the Northwest Quarter of Section 3, Township 35 North, Range 8
West of the 2nd P.M. in Lake County, Indiana, described as beginning at
a point on the West line of said Northwest Quarter of Section 3 which is
548.6 feet South of the Northwest corner of said Northwest Quarter of Section
3; thence South 89 degrees 21' East a distance of 50 feet to the point or
place of beginning of this legal description; thence continuing South 89
degrees 21' East a distance of 162 feet; thence South and parallel to the
West line of said Northwest Quarter of Section 3 a distance of 144.7 feet; thence
West a distance of 162 feet; thence North 144.7 feet to the point or place
of beginning.

PARCEL II

Part of the Northwest Quarter of Section 3, Township 35 North, Range 8 West
of the Second Principal Meridian, in Lake County, Indiana, being more
particularly described as follows:

Beginning at a point on the centerline of Broadway 373.60 feet South of
the Northwest corner of said Northwest quarter of Section 3; thence South
89 degrees 21 minutes East, 166 feet; thence South 175 feet; thence North
89 degrees 21 minutes West 166 feet to a point on the centerline of
Broadway; thence North along the centerline of Broadway 175 feet to the point
of beginning, subject to the rights of the public and the State of Indiana
in the Westerly 50 feet lying within the right of way of Broadway for road
purposes.

EXHIBIT A -6
L/C: 13-0013
Parcel Type: MS



## Exhibit B

**Restrictive Covenant:**

For a period of 20 years from the date of the deed, the Property may not be used for and Purchaser and any successor will not lease/sell to any tenant/buyer whose primary purpose is the sale of hamburgers, chicken and/or coffee.

In addition, the following restaurants operating under the listed trade names, or operating under any successor trade names, are prohibited:

| | |
|---|---|
| Apolo Burgers | Astro Burgers |
| Atlanta Burgers | A & W |
| Backyard Burgers | Burger Chef |
| Burger King | Burger Street |
| Carl's Jr. | Caribou Coffee |
| Checkers | Cheeburger, Cheeburger |
| Chick-Fil-A | Church's Chicken |
| Crown Burgers | Crystal Burgers |
| Culvers | Dunkin Donuts |
| Friendly's | Hardee's |
| Harold's Chicken | In N Out Burgers |
| Jack-in-the-Box | Jamba Juice |
| KFC | Popeye's Chicken |
| Rally's | Sonic |
| Starbuck's | Steak 'N' Shake |
| Tim Horton's | Whataburger |
| Wendy's | Whitecastle |

6|18

# EXHIBIT B



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

# Bulk-purchase all-cash offer for Five McDonalds properties

bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com>            Wed, Jun 18, 2008 at 8:20 AM
To: Ira lauter <ira@ricklevin.com>
Cc: mary.meyer@us.mcd.com, rick@ricklevin.com, keith.magnuson@us.mcd.com, tamara.flagg@us.mcd.com,
katherine.dunworth@us.mcd.com, doris.murray-norris@us.mcd.com, shabbir.nomanbhoy@gmail.com

Ira:

Attached is the contract signed by McDonald's.

We have made a few minor changes consistent with the discussions you had
with Mary Meyer.  The basic changes are:
the earnest money to 15%,
Closing by July 31, 2008
If we fail to close by this date, we will pay the buyer 2% on the earnest
money, prorated to the closing date or termination
The restrictive covenant has been slightly changed and attached as Exhibit
B
The legal descriptions are attached as Exhibit A-2 through A-6

If the contract is acceptable to the buyer, the changes need to be
initialed, the contract signed, the earnest money wired.

Please let us know if you have any questions.

Thanks
Bruce


(See attached file:
CORPLEGAL-#492761-v1-Real_Estate_Contract__-_Chicago_Auction_SItes.PDF)


*************************************************************
Bruce A. Neumann
Director - Senior Counsel
Corporate Strategy
Central Division
McDonald's Corporation
2915 Jorie Boulevard – Dept 282
Oak Brook, IL 60523
Email:  bruce.neumann@us.mcd.com
(630) 623-7556 Direct Dial
(630) 623-8064 Facsimile
*************************************************************

The information contained in this e-mail and any accompanying documents is
confidential, may be privileged, and is intended solely for the person and/or
entity to whom it is addressed (i.e. those identified in the "To" and "cc"

box). They are the property of McDonald's Corporation. Unauthorized review,use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

**CORPLEGAL-#492761-v1-Real_Estate_Contract__-_Chicago_Auction_SItes.PDF**
750K

# EXHIBIT C



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

# FW: URGENT: Action required: Auction Sale Terms - Restaurant Restriction.

**Ira lauter <ira@ricklevin.com>**                                    **Wed, Jun 18, 2008 at 10:12 AM**
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

Shabbir-

Please advise your thoughts of the following restriction.

Thank you,

Ira
(312) 925-0900


The restriction would read as follows:

For a period of 20 years from the date of the deed, the Property may not be used for and Purchaser will not lease/sell to any regional and/or national restaurant chain or user whose primary purpose is the sale of hamburgers, chicken and/or coffee.

In addition, the following restaurants operating under the listed trade names, or operating under any successor trade names, are prohibited:

| | |
|---|---|
| Apolo Burgers | Astro Burgers |
| Atlanta Burgers | A & W |
| Backyard Burgers | Burger Chef |
| Burger King | Burger Street |
| Carl's Jr. | Caribou Coffee |
| Checkers | Cheeburger, Cheeburger |
| Chick-Fil-A | Church's Chicken |
| Crown Burgers | Crystal Burgers |
| Culvers | Dunkin Donuts |
| Friendly's | Hardee's |
| Harold's Chicken | In N Out Burgers |
| Jack-in-the-Box | Jamba Juice |
| KFC | Popeye's Chicken |
| Rally's | Sonic |
| Starbuck's | Steak 'N' Shake |
| Tim Horton's | Whataburger |
| Wendy's | Whitecastle |


The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or

entity to whom it is addressed (i.e. those identified in the "To" and "cc"
box). They are the property of McDonald's Corporation. Unauthorized
review,use,
disclosure, or copying of this communication, or any part thereof, is
strictly
prohibited and may be unlawful. If you have received this e-mail in error,
please return the e-mail and attachments to the sender and delete the e-mail
and attachments and any copy from your system. McDonald's thanks you for
your
cooperation.

# EXHIBIT D



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

---

# FW: URGENT: Action required: Auction Sale Terms - Restaurant Restriction.

---

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**                    **Wed, Jun 18, 2008 at 12:40 PM**
To: Ira lauter <ira@ricklevin.com>

Hello Ira,

I am very disappointed with McDonalds refusal to meet with me to discuss the last minute changes they made to the contract, after agreeing on the language previously.

Nevertheless, I will give this my last shot: I am willing to accept the language shown below in the restrictive covenent, if the price is reduced to $1 million.

Let me know.

Shabbir


On 6/18/08, Ira lauter <ira@ricklevin.com> wrote:
> Shabbir-
>
> Please advise your thoughts of the following restriction.
>
> Thank you,
>
> Ira
> (312) 925-0900
>
>
>
> The restriction would read as follows:
>
> For a period of 20 years from the date of the deed, the Property may not be
> used for and Purchaser will not lease/sell to any regional and/or national
> restaurant chain or user whose primary purpose is the sale of hamburgers,
> chicken and/or coffee.
>
> In addition, the following restaurants operating under the listed trade
>                 names, or operating under any successor trade
>                 names, are prohibited:
>
>          Apolo Burgers     Astro Burgers
>          Atlanta Burgers   A & W
>          Backyard Burgers  Burger Chef
>          Burger King       Burger Street
>          Carl's Jr.        Caribou Coffee

```
>                    Checkers        Cheeburger, Cheeburger
>                    Chick-Fil-A     Church's Chicken
>                    Crown Burgers   Crystal Burgers
>                    Culvers         Dunkin Donuts
>                    Friendly's      Hardee's
>                    Harold's Chicken In N Out Burgers
>                    Jack-in-the-Box  Jamba Juice
>                    KFC             Popeye's Chicken
>                    Rally's         Sonic
>                    Starbuck's      Steak 'N' Shake
>                    Tim Horton's        Whataburger
>                    Wendy's         Whitecastle
>
>
> The information contained in this e-mail and any accompanying documents is
> confidential, may be privileged, and is intended solely for the person
> and/or
> entity to whom it is addressed (i.e. those identified in the "To" and "cc"
> box). They are the property of McDonald's Corporation. Unauthorized
> review,use,
> disclosure, or copying of this communication, or any part thereof, is
> strictly
> prohibited and may be unlawful. If you have received this e-mail in error,
> please return the e-mail and attachments to the sender and delete the e-mail
> and attachments and any copy from your system. McDonald's thanks you for
> your
> cooperation.
>
>
>
```

# EXHIBIT E

Loading "Gmail – FW: URGENT: Action required: Auction Sale Terms – Restaurant Restriction..."

Case 1:08-cv-03787   Document 14-2   Filed 07/28/2008   Page 34 of 68   07/25/2008 02:42 PM



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

# FW: URGENT: Action required: Auction Sale Terms - Restaurant Restriction.

**Ira lauter <ira@ricklevin.com>**                                          **Wed, Jun 18, 2008 at 2:07 PM**
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: Rick Levin <rick@ricklevin.com>

McDonald's will not accept less than $1,200,000 which is half way between
the $1,000,000 and the original $1,4000,000.

We will need a Cashier's Check for $300,000 made payable to the Rick Levin &
Associates, Inc. Escrow Account sent via Fed Ex with 8:30 am delivery
tomorrow.

Please revise the $1,400,000 contract to $1,200,000 and send back to me asap
and we will have it signed.

We are running out of time.

5:00pm CST is the latest we can get this executed.

Thank you,

Ira
(312) 925-0900

-----Original Message-----
From: Shabbir Nomanbhoy [mailto:shabbir.nomanbhoy@gmail.com]
Sent: Wednesday, June 18, 2008 3:26 PM
To: Ira lauter
Subject: Re: FW: URGENT: Action required: Auction Sale Terms - Restaurant
Restriction.

Ira,
Lets meet in the middle. $1,125,000.

We will need to figure out how to get the money over. Do you want me
to come, or do you want to make a trip to San Francisco?

Shabbir

On 6/18/08, Ira lauter <ira@ricklevin.com> wrote:
> Shabbir-
>
> While McDonald's understands your frustration, they would like to
consummate
> a transaction with you.
>
> McDonald's has authorized me to counter your offer at $1,250,000 with no
> further negotiations.

> Please advise.
>
>
> Thank you,
>
> Ira
> (312) 925-0900
>
>
> -----Original Message-----
> From: Shabbir Nomanbhoy [mailto:shabbir.nomanbhoy@gmail.com]
> Sent: Wednesday, June 18, 2008 2:40 PM
> To: Ira lauter
> Subject: Re: FW: URGENT: Action required: Auction Sale Terms - Restaurant
> Restriction.
>
>
> Hello Ira,
>
> I am very disappointed with McDonalds refusal to meet with me to
> discuss the last minute changes they made to the contract, after
> agreeing on the language previously.
>
> Nevertheless, I will give this my last shot: I am willing to accept
> the language shown below in the restrictive covenent, if the price is
> reduced to $1 million.
>
> Let me know.
>
> Shabbir
>
>
>
> On 6/18/08, Ira lauter <ira@ricklevin.com> wrote:
> > Shabbir-
> >
> > Please advise your thoughts of the following restriction.
> >
> > Thank you,
> >
> > Ira
> > (312) 925-0900
> >
> >
> >
> > The restriction would read as follows:
> >
> > For a period of 20 years from the date of the deed, the Property may
not
> be
> > used for and Purchaser will not lease/sell to any regional and/or
> national
> > restaurant chain or user whose primary purpose is the sale of
hamburgers,
> > chicken and/or coffee.
> >

# EXHIBIT F

Loading "Gmail – FW: URGENT: Action required: Auction Sale Terms – Restaurant Restricti... Filed 07/28/2008    Page 37 of 68    07/25/2008 02:42 PM

Case 1:08-cv-03787    Document 14-2



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

---

# FW: URGENT: Action required: Auction Sale Terms - Restaurant Restriction.

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**                    **Wed, Jun 18, 2008 at 2:17 PM**
To: Ira lauter <ira@ricklevin.com>

OK, Ira, Deal!

Remember that they will supply the survey, and the interest is 2% per month,if they delay closing.

Are you sure you want me to make changes? Will Mcdonalds accept my changes, or will they want the clean contract? Maybe its better to have them make changes, especially as the covenant is only on email. Email me the complete contract with all changes, and I will sign and send back right away. Meanwhile i am calling fedex for pickup.

The contract says checks should be made out to chicago title company as escrow agent, not Rick Levin and associates. Please clarify on contract.

I still need to speak with Bruce, as he is the signor on the contract. Please advise when I can call him. Also, please send me the signed contract from Mcdonalds authorizing Rick Levin as auctioneer/agent.

Thanks.

Shabbir


Shabbir


On 6/18/08, Ira lauter <ira@ricklevin.com> wrote:
> McDonald's will not accept less than $1,200,000 which is half way between
> the $1,000,000 and the original $1,4000,000.
>
> We will need a Cashier's Check for $300,000 made payable to the Rick Levin &
> Associates, Inc. Escrow Account sent via Fed Ex with 8:30 am delivery
> tomorrow.
>
> Please revise the $1,400,000 contract to $1,200,000 and send back to me asap
> and we will have it signed.
>
> We are running out of time.
>
> 5:00pm CST is the latest we can get this executed.
>
>

# EXHIBIT G



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

---

# Bulk-purchase all-cash offer for Five McDonalds properties

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**　　　　　　**Wed, Jun 18, 2008 at 3:27 PM**
To: Ira lauter <ira@ricklevin.com>
Cc: "bruce.neumann@us.mcd.com" <bruce.neumann@us.mcd.com>, mary.meyer@us.mcd.com, rick@ricklevin.com

Hello Bruce, Mary and Ira
Here are copies of the checks with endorsement to Rick Levin and
associates as escrow agents.
If you need to verify further, please call Fidelity, Palo Alto at
1800-544-5704X285 and ask for either Shelley croft who prepared the
checks for me today, or cheryl mcleod, her associate.
Shabbir

On 6/18/08, Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com> wrote:
> Ira,
>
> There are too many changes to contract language that was previously
> agreed. I had understood from your emails we were only negotiating on
> price and earnest money, after you conveyed to me yesterday that all
> language was acceptable as written to McDonalds.
>
> At this point, I believe that the best way to handle this is if I
> catch a flight this afternoon, and we have a meeting tomorrow morning
> at 8am at a location convenient to Bruce and Mary in Chicago. I will
> bring cashiers checks for the earnest money deposit.
>
> I am willing to work with McDonalds at arriving at language that is
> mutually acceptable, but given the last few days, I dont believe this
> can be done on the phone. I will come there at no obligation to
> McDonalds or yourself, and I hope we can work this out in the morning
> before the auction is scheduled to start. The only thing I ask is that
> McDonalds have all the right decision makers in the room!
>
> Please let me know if a meeting can be arranged. I am on my way to get
> the checks made at Fidelity in Palo Alto, but you can reach me on my
> cell at 408-507-7863.
>
> Sincerely,
>
>
> Shabbir Nomanbhoy
>
>
> On 6/18/08, bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com> wrote:
> >
> > Ira:
> >
> > Attached is the contract signed by McDonald's.
> >
> > We have made a few minor changes consistent with the discussions you had

> > with Mary Meyer.  The basic changes are:
> > the earnest money to 15%,
> > Closing by July 31, 2008
> > If we fail to close by this date, we will pay the buyer 2% on the earnest
> > money, prorated to the closing date or termination
> > The restrictive covenant has been slightly changed and attached as Exhibit
> > B
> > The legal descriptions are attached as Exhibit A-2 through A-6
> >
> > If the contract is acceptable to the buyer, the changes need to be
> > initialed, the contract signed, the earnest money wired.
> >
> > Please let us know if you have any questions.
> >
> > Thanks
> > Bruce
> >
> >
> > (See attached file:
> > CORPLEGAL-#492761-v1-Real_Estate_Contract__-_Chicago_Auction_SItes.PDF)
> >
> >
> > ****************************************************************
> > Bruce A. Neumann
> > Director - Senior Counsel
> > Corporate Strategy
> > Central Division
> > McDonald's Corporation
> > 2915 Jorie Boulevard – Dept 282
> > Oak Brook, IL 60523
> > Email:  bruce.neumann@us.mcd.com
> > (630) 623-7556 Direct Dial
> > (630) 623-8064 Facsimile
> > ****************************************************************
> >
> > The information contained in this e-mail and any accompanying documents is
> > confidential, may be privileged, and is intended solely for the person and/or
> > entity to whom it is addressed (i.e. those identified in the "To" and "cc"
> > box). They are the property of McDonald's Corporation. Unauthorized review,use,
> > disclosure, or copying of this communication, or any part thereof, is strictly
> > prohibited and may be unlawful. If you have received this e-mail in error,
> > please return the e-mail and attachments to the sender and delete the e-mail
> > and attachments and any copy from your system. McDonald's thanks you for your
> > cooperation.
> >
> >
> >

**mcDonalds checks.pdf**
2088K

BROKERAGE SERVICES LLC

PAY    _Thirty Thousand Dollars and 00 Cents_

June 18, 2008

**$30,000.00

TO THE ORDER OF

NOMANBHOY FAMILY LMT PRTNRSHP
A PARTNERSHIP
SHABBIR T NOMANBHOY
MUNIRA C NOMANBHOY
11254 MOUNT CREST PL
CUPERTINO  CA 95014-4750

Not valid after 90 days

National Financial Services LLC

Authorized Signatures

⑈016504351⑈ ⑆122204771⑆ 4759403090⑈

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO SEE THE MARK WHEN CHECKING THE ENDORSEMENTS.

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT.    CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

WELLS FARGO CENTRAL BANK
CALABASAS, CA

No. 016504349
90-477/1222

**FIDELITY**
BROKERAGE SERVICES LLC

June 18, 2008

PAY    _Seventy Five Thousand Dollars and 00 Cents_

**$75,000.00

TO THE ORDER OF

NOMANBHOY FAMILY LMT PRTNRSHP
A PARTNERSHIP
SHABBIR T NOMANBHOY
MUNIRA C NOMANBHOY
11254 MOUNT CREST PL
CUPERTINO  CA 95014-4750

Not valid after 90 days

National Financial Services LLC

Authorized Signatures

⑈016504349⑈ ⑆122204771⑆ 4759403090⑈

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO SEE THE MARK WHEN CHECKING THE ENDORSEMENTS.

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT.    CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

WELLS FARGO CENTRAL BANK
CALABASAS, CA

No. 016504348
90-477/1222

**FIDELITY**
BROKERAGE SERVICES LLC

June 18, 2008

PAY    _Seventy Five Thousand Dollars and 00 Cents_

**$75,000.00

TO THE ORDER OF

NOMANBHOY FAMILY LMT PRTNRSHP
A PARTNERSHIP
SHABBIR T NOMANBHOY
MUNIRA C NOMANBHOY
11254 MOUNT CREST PL
CUPERTINO  CA 95014-4750

Not valid after 90 days

National Financial Services LLC

Authorized Signatures

⑈016504348⑈ ⑆122204771⑆ 4759403090⑈

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO SEE THE MARK WHEN CHECKING THE ENDORSEMENTS.

**B**  0032265

ENDORSE CHECK HERE

Pay to the order of
Rick Levin & Assoc     as Escrow
Agents for Real Estate Contract for
5 Properties described re Donald's Grp
& Normandy Family Limited Partnership
[signature] 6/18/08

DO NOT WRITE, STAMP, OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

**B**  0032263

ENDORSE CHECK HERE

Pay to the order of Rick Levin & Assoc
as Escrow Agents for Real Estate
contract for 5 properties described herein
McDonald Corporation &
Normandy Family Limited
Partnership. [signature] 6/18/08

DO NOT WRITE, STAMP, OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

**B**  0032262

ENDORSE CHECK HERE

Pay to the order of Rick Levin &
As Escrow Agents for Real
Estate contract described
re Normandy Family Limited
[signature] 6/18/08

DO NOT WRITE, STAMP, OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

# EXHIBIT H



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

# McDonald's has Decided they will only Accept $1,400,000

**Ira lauter <ira@ricklevin.com>**
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

**Wed, Jun 18, 2008 at 3:36 PM**

Shabbir-

McDonald's has decided they will not sell for less than a $1,400,000.

Thank you,

Ira

# EXHIBIT I



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

# McDonald's has Decided they will only Accept $1,400,000

**Ira Lauter <ira@ricklevin.com>**
Reply-To: ira@ricklevin.com
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: Rick Levin <rick@ricklevin.com>

**Wed, Jun 18, 2008 at 5:45 PM**

Shabbir-

As we discussed, McDonald's will only sell the properties for a combined $1,400,000.

If you will pay 1.4 MIL they will sign the contract as agreed and cancel the Auction.

Please advise if you will pay 1.4 MIL?

Best regards,

Ira

Ira Lauter
Rick Levin & Associates, Inc.
1467 N Elston, 2nd Floor
Chicago, IL 60622
Office: 773-252-4500 Ext. 230
Cell: 312-890-3982
Fax: 773-252-4520


-----Original Message-----
From: "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>

Date: Wed, 18 Jun 2008 17:26:42
To:ira@ricklevin.com
Subject: Re: McDonald's has Decided they will only Accept $1,400,000


Ira,

Its too late to fly out there or do fedex, as we are past both deadlines.

I am willing to do the deal at 1.2 million as they agreed earlier. I would wire the money to the escrow account first thing tomorrow morning at 8am, and it would reach you before 1pm.

I would need the revised contract, signed, tonight. I also need on McDonalds letterhead that you are the escrow agent, and showing the escrow account info in that same letter.

Please advise.

Shabbir

On 6/18/08, Ira Lauter <ira@ricklevin.com> wrote:
> Shabbir-
>
> As we discussed, Mary will meet with you tomorrow in the morning if you will pay 1.4 MIL for all 5 properties.
>
> Please advise your decision.
>
> Best regards,
>
> Ira
>
>
> Ira Lauter
> Rick Levin & Associates, Inc.
> 1467 N Elston, 2nd Floor
> Chicago, IL 60622
> Office: 773-252-4500 Ext. 230
> Cell: 312-890-3982
> Fax: 773-252-4520
>
>
>
> -----Original Message-----
> From: "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>
>
> Date: Wed, 18 Jun 2008 16:15:13
> To:"Ira lauter" <ira@ricklevin.com>
> Subject: Re: McDonald's has Decided they will only Accept $1,400,000
>
>
> Hello Ira
> This is a moving target!
> I would appreciate your calling me to let me know what happened this time.
> There is still an opportunity to save the deal (at 1.2mil). I can fluy
> out there if you call me in forty five minutes. Or I can wire the
> money tomorrow morning, if I have the contract revised and signed
> tonight.
> Shabbir
>
> On 6/18/08, Ira lauter <ira@ricklevin.com> wrote:
> >
> >
> >
> >
> > Shabbir-
> >
> >
> >
> > McDonald's has decided they will not sell for less than a $1,400,000.
> >
> >
> >
> > Thank you,
> >

# EXHIBIT J



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

---

# McDonald's has Decided they will only Accept $1,400,000

---

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**
To: ira@ricklevin.com

**Wed, Jun 18, 2008 at 6:02 PM**

Ira,

OK. I will pay $1.4 mill for the 5 properties.

Please revise contract for interest rate, escrow agent, survey, and dates.

The most important thing I need is a cover letter on Mcdonalds letterhead, from either Bruce or Mary, saying you are the escrow agent and for me to wire the earnest money of $210,000 to your account# XYZ at bank ABC.

Thanks

Shabbir

On 6/18/08, Ira Lauter <ira@ricklevin.com> wrote:
> Shabbir-
>
> As we discussed, McDonald's will only sell the properties for a combined $1,400,000.
>
> If you will pay 1.4 MIL they will sign the contract as agreed and cancel the Auction.
>
> Please advise if you will pay 1.4 MIL?
>
>
> Best regards,
>
> Ira
>
> Ira Lauter
> Rick Levin & Associates, Inc.
> 1467 N Elston, 2nd Floor
> Chicago, IL 60622
> Office: 773-252-4500 Ext. 230
> Cell: 312-890-3982
> Fax: 773-252-4520
>
>
> -----Original Message-----
> From: "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>
>
>
> Date: Wed, 18 Jun 2008 17:26:42
> To:ira@ricklevin.com
> Subject: Re: McDonald's has Decided they will only Accept $1,400,000
>

# EXHIBIT K



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

---

# McDonald's has Decided they will only Accept $1,400,000

---

mary.meyer@us.mcd.com <mary.meyer@us.mcd.com>                                    **Wed, Jun 18, 2008 at 6:59 PM**
To: ira@ricklevin.com, shabbir.nomanbhoy@gmail.com
Cc: Rick Levin <rick@ricklevin.com>, bruce.neumann@us.mcd.com

Ira & Shabbir,

Attached is the letter acknowledging that Rick Levin & Associates, Inc. represents McDonald's in this transaction.
We will need the wire and contract very early tomorrow, or will have to go forward with the Auction.


Mary G. Meyer
Regional Real Estate Manager
Greater Chicago Region
McDonald's USA, LLC
4320 Winfield Road, Suite 400
Warrenville, IL  60555
Phone:  (630) 836-4951
Fax:  (630) 836-4804
e-mail:  mary.meyer@us.mcd.com


"Ira Lauter" <ira@ricklevin.com>

06/18/2008 08:46 PM

Please respond to
ira@ricklevin.com

To "Mary Meyer" <mary.meyer@us.mcd.com>
cc "Rick Levin" <rick@ricklevin.com>
Subject Fw: McDonald's has Decided they will only Accept $1,400,000


Mary-

Shabbir has asked that you copy him directly on the letter.

Thank you,

Ira

Ira Lauter
Rick Levin & Associates, Inc.
1467 N Elston, 2nd Floor
Chicago, IL 60622
Office: 773-252-4500 Ext. 230
Cell: 312-890-3982
Fax: 773-252-4520

---

Loading "Gmail – McDonald's has Decided they will only Accept $1,400,000" 14-2    Filed 07/28/2008    Page 52 of 68    07/25/2008 02:48 PM

Case 1:08-cv-03787    Document 14-2

```
-----Original Message-----
From: "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>

Date: Wed, 18 Jun 2008 18:02:30
To:ira@ricklevin.com
Subject: Re: McDonald's has Decided they will only Accept $1,400,000


Ira,

OK. I will pay $1.4 mill for the 5 properties.

Please revise contract for interest rate, escrow agent, survey, and dates.

The most important thing I need is a cover letter on Mcdonalds
letterhead, from either Bruce or Mary, saying you are the escrow agent
and for me to wire the earnest money of $210,000 to your account# XYZ
at bank ABC.

Thanks

Shabbir

On 6/18/08, Ira Lauter <ira@ricklevin.com> wrote:
> Shabbir-
>
> As we discussed, McDonald's will only sell the properties for a combined $1,400,000.
>
> If you will pay 1.4 MIL they will sign the contract as agreed and cancel the Auction.
>
> Please advise if you will pay 1.4 MIL?
>
>
> Best regards,
>
> Ira
>
> Ira Lauter
> Rick Levin & Associates, Inc.
> 1467 N Elston, 2nd Floor
> Chicago, IL 60622
> Office: 773-252-4500 Ext. 230
> Cell: 312-890-3982
> Fax: 773-252-4520
>
>
> -----Original Message-----
> From: "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>
>
>
> Date: Wed, 18 Jun 2008 17:26:42
> To:ira@ricklevin.com
> Subject: Re: McDonald's has Decided they will only Accept $1,400,000
>
>
> Ira,
>
> Its too late to fly out there or do fedex, as we are past both deadlines.
>
> I am willing to do the deal at 1.2 million as they agreed earlier. I
> would wire the money to  the escrow account first thing tomorrow
> morning at 8am, and it would reach you before 1pm.
>
> I would need the revised contract, signed, tonight. I also need on
> McDonalds letterhead that you are the escrow agent, and showing the
```

McDonald's USA, LLC – Chicago Region
4320 Winfield Road, Suite 400
Warrenville, IL 60555
Phone: 630-836-9090
Fax: 630-836-9191



June 18, 2008


Mr. Shabbir Nomanbhoy


RE:  Rick Levin & Associates, Inc.

Dear Shabbir:

Per your request, this letter hereby acknowledges that Ira Lauter and Rick Levin &
Associates, Inc. represent McDonald's USA, LLC in the sale of the 5 McDonald's excess
properties we have been negotiating the past several days.

Please wire earnest money funds as follows:  North Bank 501 N Clark St. Chicago, IL
60610 ; Rick Levin & Associates Inc  account # 411309500, aba # 071001368.

Regards,

Mary G. Meyer

Mary G. Meyer
Regional Real Estate Manager

cc:  Ira Lauter, Rick Levin & Associates, Inc.
     Rick Levin, Rick Levin & Associates, Inc.
     Bruce Neumann

# EXHIBIT L



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

# Bulk-purchase all-cash offer for Five McDonalds properties

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**     **Wed, Jun 18, 2008 at 7:17 PM**
To: "bruce.neumann@us.mcd.com" <bruce.neumann@us.mcd.com>
Cc: Ira lauter <ira@ricklevin.com>, mary.meyer@us.mcd.com, rick@ricklevin.com, keith.magnuson@us.mcd.com, tamara.flagg@us.mcd.com, katherine.dunworth@us.mcd.com, doris.murray-norris@us.mcd.com

Bruce, Mary, Ira

The contract is acceptable, as I indicated to Ira. I am waiting for
Mary to  clarify, on McDonalds letterhead, which escrow agent will be
used (I understand you want a change to Rick Levin Asociates, though
contract says Chicago Title.) and where I should send the earnest
money.
I am happy to accomodate your request to wire the earnest money
tomorrow morning, even though the contract mentions a date of june 26
for earnest money receipt. If you prefer, there is a Chicago Title Co
office near my house in Saratoga, CA, that we could use.


Sincerely,
Shabbir Nomanbhoy

On 6/18/08, bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com> wrote:
>
> Ira:
>
> Attached is the contract signed by McDonald's.
>
> We have made a few minor changes consistent with the discussions you had
> with Mary Meyer.  The basic changes are:
> the earnest money to 15%,
> Closing by July 31, 2008
> If we fail to close by this date, we will pay the buyer 2% on the earnest
> money, prorated to the closing date or termination
> The restrictive covenant has been slightly changed and attached as Exhibit
> B
> The legal descriptions are attached as Exhibit A-2 through A-6
>
> If the contract is acceptable to the buyer, the changes need to be
> initialed, the contract signed, the earnest money wired.
>
> Please let us know if you have any questions.
>
> Thanks
> Bruce
>
>
> (See attached file:
> CORPLEGAL-#492761-v1-Real_Estate_Contract__-_Chicago_Auction_SItes.PDF)
>

```
>
> ***************************************************************
> Bruce A. Neumann
> Director - Senior Counsel
> Corporate Strategy
> Central Division
> McDonald's Corporation
> 2915 Jorie Boulevard – Dept 282
> Oak Brook, IL 60523
> Email:  bruce.neumann@us.mcd.com
> (630) 623-7556 Direct Dial
> (630) 623-8064 Facsimile
> ***************************************************************
>
> The information contained in this e-mail and any accompanying documents is
> confidential, may be privileged, and is intended solely for the person and/or
> entity to whom it is addressed (i.e. those identified in the "To" and "cc"
> box). They are the property of McDonald's Corporation. Unauthorized review,use,
> disclosure, or copying of this communication, or any part thereof, is strictly
> prohibited and may be unlawful. If you have received this e-mail in error,
> please return the e-mail and attachments to the sender and delete the e-mail
> and attachments and any copy from your system. McDonald's thanks you for your
> cooperation.
>
>
```

# EXHIBIT M



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

# Bulk-purchase all-cash offer for Five McDonalds properties

bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com>          **Wed, Jun 18, 2008 at 8:18 PM**
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: Ira lauter <ira@ricklevin.com>, mary.meyer@us.mcd.com, rick <rick@ricklevin.com>, keith.magnuson@us.mcd.com,
tamara.flagg@us.mcd.com, katherine.dunworth@us.mcd.com, doris.murray-norris@us.mcd.com

Rick Levin will be the escrow agent.

As Mary stated in her e-mail, the earnest money must be wired and received by Rick Levin or the auction will go
forward.

You need to have your wire go out first thing in the morning and inform us of the wire confirmation number.

Bruce Neumann


----- Original Message -----
From: "Shabbir Nomanbhoy" [shabbir.nomanbhoy@gmail.com]
Sent: 06/18/2008 07:17 PM MST
To: Bruce Neumann
Cc: "Ira lauter" <ira@ricklevin.com>; Mary Meyer; rick@ricklevin.com; Keith Magnuson; Tamara Flagg; Katherine
Dunworth; Doris Murray-Norris
Subject: Re: FW: Fwd: Bulk-purchase all-cash offer for Five McDonalds properties


Bruce, Mary, Ira

The contract is acceptable, as I indicated to Ira. I am waiting for
Mary to clarify, on McDonalds letterhead, which escrow agent will be
used (I understand you want a change to Rick Levin Asociates, though
contract says Chicago Title.) and where I should send the earnest
money.
I am happy to accomodate your request to wire the earnest money
tomorrow morning, even though the contract mentions a date of june 26
for earnest money receipt. If you prefer, there is a Chicago Title Co
office near my house in Saratoga, CA, that we could use.


Sincerely,
Shabbir Nomanbhoy

On 6/18/08, bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com> wrote:
>
> Ira:
>
> Attached is the contract signed by McDonald's.
>

> We have made a few minor changes consistent with the discussions you had
> with Mary Meyer.  The basic changes are:
> the earnest money to 15%,
> Closing by July 31, 2008
> If we fail to close by this date, we will pay the buyer 2% on the earnest
> money, prorated to the closing date or termination
> The restrictive covenant has been slightly changed and attached as Exhibit
> B
> The legal descriptions are attached as Exhibit A-2 through A-6
>
> If the contract is acceptable to the buyer, the changes need to be
> initialed, the contract signed, the earnest money wired.
>
> Please let us know if you have any questions.
>
> Thanks
> Bruce
>
>
> (See attached file:
> CORPLEGAL-#492761-v1-Real_Estate_Contract__-_Chicago_Auction_SItes.PDF)
>
>
> ****************************************************************
> Bruce A. Neumann
> Director - Senior Counsel
> Corporate Strategy
> Central Division
> McDonald's Corporation
> 2915 Jorie Boulevard – Dept 282
> Oak Brook, IL 60523
> Email:  bruce.neumann@us.mcd.com
> (630) 623-7556 Direct Dial
> (630) 623-8064 Facsimile
> ****************************************************************
>
> The information contained in this e-mail and any accompanying documents is
> confidential, may be privileged, and is intended solely for the person and/or
> entity to whom it is addressed (i.e. those identified in the "To" and "cc"
> box). They are the property of McDonald's Corporation. Unauthorized review,use,
> disclosure, or copying of this communication, or any part thereof, is strictly
> prohibited and may be unlawful. If you have received this e-mail in error,
> please return the e-mail and attachments to the sender and delete the e-mail
> and attachments and any copy from your system. McDonald's thanks you for your
> cooperation.
>
>

The information contained in this e-mail and any accompanying documents is
confidential, may be privileged, and is intended solely for the person and/or
entity to whom it is addressed (i.e. those identified in the "To" and "cc"
box). They are the property of McDonald's Corporation. Unauthorized review,use,
disclosure, or copying of this communication, or any part thereof, is
strictly prohibited and may be unlawful. If you have received this e-mail in error,
please return the e-mail and attachments to the sender and delete the e-mail
and attachments and any copy from your system. McDonald's thanks you for your

# EXHIBIT N



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

---

# McDonald's has Decided they will only Accept $1,400,000

---

**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**            **Wed, Jun 18, 2008 at 8:40 PM**
To: "mary.meyer@us.mcd.com" <mary.meyer@us.mcd.com>
Cc: ira@ricklevin.com, Rick Levin <rick@ricklevin.com>, bruce.neumann@us.mcd.com

Thanks Mary. And Bruce, thanks for your email as well. Ira, thanks as well.

I have already faxed the wire instructions to Fidelity this evening,
and they should complete the wire first thing in the morning tomorrow.
I estimate they will have completed the wire by 9 or 9-30am my time,
and you should have the money by 1pm CST, latest. I will call you as
soon as I have a wire confirmation number from Fidelity.

As I said earlier, I am very happy to accomodate your request for a
wire tomorrow, even though the contract calls for earnest money
payment date of June 26.

Sincerely
Shabbir Nomanbhoy

On 6/18/08, mary.meyer@us.mcd.com <mary.meyer@us.mcd.com> wrote:
>
> Ira & Shabbir,
>
> Attached is the letter acknowledging that Rick Levin & Associates, Inc.
> represents McDonald's in this transaction.  We will need the wire and
> contract very early tomorrow, or will have to go forward with the Auction.
>
>
>
> Mary G. Meyer
> Regional Real Estate Manager
> Greater Chicago Region
> McDonald's USA, LLC
> 4320 Winfield Road, Suite 400
> Warrenville, IL  60555
> Phone:  (630) 836-4951
> Fax:  (630) 836-4804
> e-mail:  mary.meyer@us.mcd.com
>
>
>
>
>
> "Ira Lauter" <ira@ricklevin.com>
>
> 06/18/2008 08:46 PM
>
> Please respond to
> ira@ricklevin.com

# EXHIBIT O



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

# Fw: Revised Contract

**Ira Lauter <ira@ricklevin.com>**                                      **Thu, Jun 19, 2008 at 10:52 AM**
Reply-To: ira@ricklevin.com
To: Bruce Neumann <bruce.neumann@us.mcd.com>, Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: Mary Meyer <mary.meyer@us.mcd.com>, doris.murray-norris@us.mcd.com, Rick Levin <rick@ricklevin.com>

Shabbir-

Rick is contacting the bank to confirm the wire.

Rick is also preparing to tell bidders that there is no auction.

I am going down to a lower level in a hotel next to O'hare Airport where we were to conduct the auction.

Please send the contract to all parties on this e-mail ASAP.

I look forward to us receiving your contract to get this all wrapped up.

Thank you,

Ira

Ira Lauter
Rick Levin & Associates, Inc.
1467 N Elston, 2nd Floor
Chicago, IL 60622
Office: 773-252-4500 Ext. 230
Cell: 312-890-3982
Fax: 773-252-4520


-----Original Message-----
From: "Ira Lauter" <ira@ricklevin.com>

Date: Thu, 19 Jun 2008 17:04:39
To:"Bruce Neumann" <bruce.neumann@us.mcd.com>,"Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com>
Cc:"Mary Meyer" <mary.meyer@us.mcd.com>,doris.murray-norris@us.mcd.com,"Rick Levin" <rick@ricklevin.com>
Subject: Re: Revised Contract


Shabbir-

As of 12:05 we have not received the contract or wire.

Please advise.

Thank you,

Ira

# EXHIBIT P



Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>

---

# Fw: Revised Contract

**bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com>**
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: ira@ricklevin.com

Thu, Jun 19, 2008 at 7:09 AM

---

| | |
|---|---|
| Bruce Neumann/mcd/us | |
| 06/19/2008 09:03 AM | **To** "Ira lauter" <ira@ricklevin.com>, shabbir.namanbhoy@gmail.com |
| | **cc** Mary Meyer/mcd/us@MCDUS, Doris Murray-Norris/mcd/us@MCDUS |
| | **Subject** Revised Contract |

Attached is the revised contract.

The purchase price is $1.4 Mil
Penalty if we do not close is 2% per month of the earnest money
We provide surveys.
If we do not have the earnest money prior to the auction (or if the auction otherwise occurs), the contract is null and void. (I have inserted this language to make if clear that we must have the $ prior to the auction and if the $ comes in so late such that we do not know that the $ has arrived and the action occurs, the contract is void.) I can not be in a situation where I have sold a site to two parties.

Shabbir:
Please initial on each page next to each of my (BAN) initials (including the bottom corner of each page),
send the contract back to us
wire the earnest money and inform us of the confirmation number.

Thanks
Bruce

(See attached file:

CORPLEGAL-#493297-v1-Real_Estate_Contract_-_Chicago_Auction_-_June_19__2008.PDF)

************************************************************
Bruce A. Neumann
Director - Senior Counsel
Corporate Strategy
Central Division
McDonald's Corporation
2915 Jorie Boulevard – Dept 282
Oak Brook, IL 60523
Email:  bruce.neumann@us.mcd.com
(630) 623-7556 Direct Dial
(630) 623-8064 Facsimile
************************************************************

The information contained in this e-mail and any accompanying documents is
confidential, may be privileged, and is intended solely for the person and/or
entity to whom it is addressed (i.e. those identified in the "To" and "cc"
box). They are the property of McDonald's Corporation. Unauthorized review,use,
disclosure, or copying of this communication, or any part thereof, is strictly
prohibited and may be unlawful. If you have received this e-mail in error,
please return the e-mail and attachments to the sender and delete the e-mail
and attachments and any copy from your system. McDonald's thanks you for your
cooperation.

**CORPLEGAL-#493297-v1-Real_Estate_Contract_-_Chicago_Auction_-_June_19__2008.PDF**
759K

# EXHIBIT Q



**Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>**

---

# McDonald's Properties

---

bruce.neumann@us.mcd.com <bruce.neumann@us.mcd.com>                    Thu, Jun 19, 2008 at 3:53 PM
To: Shabbir Nomanbhoy <shabbir.nomanbhoy@gmail.com>
Cc: Ira lauter <ira@ricklevin.com>, mary.meyer@us.mcd.com, rick@ricklevin.com, keith.magnuson@us.mcd.com,
doris.murray-norris@us.mcd.com

Shabbir:

You do not have an agreement or contract with McDonald's.

Our offer that was proposed yesterday was rejected by you.   The e-mail
immediately below is one example of your rejection of the offer.

The revised offer that we proposed this morning was also rejected by you.
In the telephone discussion between you and Ira Lauter at approximately
10:35 a.m. central time this morning you rejected the new proposal.

In my 11:30 a.m. e-mail to you, I clearly stated that all prior offers were
not valid, had been revoked, and that the only available offer was that
which had previously been sent to you at 9:03 and 9:09 a.m.  This offer
provided that if the auction occurred, the offer and contract was null and
void.

As you mentioned in your 4:30 p.m. e-mail, the auction proceeded as
scheduled.

You do not have a contract or any other agreement with McDonald's.

I have communicated your current offer (proposing yesterday's rejected
offer back to us) to the proper parties.

Your offer has not been accepted.

When a decision is made whether to accept or reject your offer, it will be
communicated to you.


*************************************************************
Bruce A. Neumann
Director - Senior Counsel
Corporate Strategy
Central Division
McDonald's Corporation
2915 Jorie Boulevard – Dept 282
Oak Brook, IL 60523
Email:  bruce.neumann@us.mcd.com
(630) 623-7556 Direct Dial
(630) 623-8064 Facsimile
*************************************************************