IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 3787 |
| v. | ) ) | Hon. Joan B. Gotschall Mag. Judge Jeffrey Cole |
| McDONALD'S CORPORATION, McDONALD's USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) ) ) | |
| Defendants. | ) | |

**McDONALD'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
<u>SPECIFIC PERFORMANCE, INJUNCTION AND DAMAGES</u>**

Defendants McDonald's Corporation and McDonald's USA, LLC (collectively "McDonald's"), by their attorneys, Karina H. DeHayes and Brian C. Haussmann of Tabet DiVito & Rothstein LLC, answer plaintiff's First Amended Complaint for Specific Performance, Injunction and Damages as follows:

1.      This is a claim for specific performance, injunction and damages arising out of Defendants' breach of contract and interference with contract.  The contract at issue is the June 18, 2008 Real Estate Sales Contract between the Nomanbhoy Family Limited Partnership and McDonald's Corporation under which McDonald's Corporation or McDonald's USA, LLC, agreed to sell and the Nomanbhoy Family Limited Partnership agreed to buy five parcels of real estate located in Illinois, Wisconsin and Indiana.

**ANSWER**:    McDonald's admits that plaintiff purports to bring this action for specific

performance, injunction and damages.  McDonald's denies that it agreed to sell to the plaintiff

the five parcels of real estate referenced in this lawsuit, denies that a contract was ever formed

between plaintiff and McDonald's, and denies the remaining allegations in paragraph 1.

2.    The Nomanbhoy Family Limited Partnership ("NFLP") is a limited partnership formed in January, 2008 under the laws of the state of California. The general partner of NFLP is Nomanbhoy Enterprises, LLC, and the limited partners are Shabbir T. Nomanbhoy and Munira Nomanbhoy, as Trustees of the Nomanbhoy Family Revocable Trust dated June 5, 2000, as amended. Nomanbhoy Enterprises, LLC is a limited liability corporation organized in 2008 under the laws of the state of California. Nomanbhoy Enterprises, LLC has its principal place of business in Cupertino, California. Shabbir T. Nomanbhoy ("Nomanbhoy") and Munira Nomanbhoy are both citizens of Cupertino, California. The principal place of business NFLP is also Cupertino, California.

**ANSWER**:   McDonald's is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, and therefore denies them.

3.    McDonald's Corporation ("McDonald's Corp.") is a corporation formed under the laws of the state of Delaware. It maintains its principal place of business in Oak Brook, Illinois. McDonald's Corp. is in the primary business of selling fast foods.

**ANSWER**:   McDonald's admits the allegations in paragraph 3.

4.    McDonald's USA, LLC ("McDonald's USA") is a limited liability company formed under the laws of the state of Delaware. It maintains its principal place of business in Warrenville, Illinois. On information and belief, McDonald's USA is a subsidiary or affiliate of McDonald's Corp. and owned the five parcels of real estate at issue her [sic]. (McDonald's Corp. and McDonald's USA are hereafter collectively referred to as "McDonald's").

**ANSWER**:   McDonald's admits that McDonald's USA, LLC is a limited liability company formed under the laws of the state of Delaware. McDonald's denies that McDonald's USA, LLC has its principal place of business in Warrenville, Illinois, but rather that it is in Oak Brook, Illinois. McDonald's admits that McDonald's USA, LLC is a subsidiary of McDonald's Corporation, admits that either McDonald's Corporation or its nominee owned the five parcels of real estate referenced in this litigation, and denies the remaining allegations set forth in the third sentence of paragraph 4.

5.    Rick Levin & Associates, Inc. ("RLA") is a corporation formed under the laws of the state of Illinois, and maintains its principal place of business at 1467 North Elston Avenue, Chicago, Illinois. RLA is in the business of auctioneering. At all times relevant, RLA and McDonald's were represented by Ira Lauter ("Lauter").

**ANSWER**:    McDonald's admits that Rick Levin & Associates, Inc. ("RLA") is in the business of auctioneering.  McDonald's is without knowledge or information sufficient to ascertain what plaintiff means by the term "represented" and what plaintiff means by the timeframe "all times relevant" and is therefore without knowledge or information sufficient to form a belief as to whether Ira Lauter "represented" RLA and McDonald's "at all times relevant."  McDonald's admits that Ira Lauter is associated with RLA and that RLA was engaged to perform certain services on McDonald's behalf related to the sale of the five parcels referenced in this lawsuit.  McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5, and therefore denies them.

6.    Rick Levin ("Levin") is, on information and belief, a citizen of the state of Illinois.  Levin is a principal of RLA and is, on information and belief, a licensed auctioneer.

**ANSWER**:    McDonald's admits that Rick Levin is a citizen of the state of Illinois and is a licensed auctioneer.  McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6, and therefore denies them.

7.    This Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**ANSWER**:    The allegations in paragraph 7 contain a legal conclusion to which no answer is required.  To the extent an answer is required, McDonald's admits that this action is between citizens of different states, admits that plaintiff alleges that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, denies that plaintiff is entitled to any damages, and denies the remaining allegations in paragraph 7.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) and (2), in that all defendants reside in this judicial district and a substantial part of the events giving rise to the claim occurred, or a substantial part of the property that is the subject of the action, is situated in this judicial district.  Venue is also proper under the terms of the subject Real Estate Sales Contract.

**ANSWER**:    The allegations in paragraph 8 contain a legal conclusion to which no answer is required.  To the extent an answer is required, McDonald's admits that it does business in this judicial district and that certain events pre-dating this lawsuit took place in this judicial district.  McDonald's further admits that three of the five properties relevant to this lawsuit are located within this judicial district.  McDonald's denies that a Real Estate Sales Contract or any contract was formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 8.

9.     In June 2008, McDonald's, acting individually and through RLA, advertised and promoted the sale by McDonald's of five parcels of real estate located in Illinois and elsewhere. Originally, McDonald's intended to sell the properties via auction to be held on Thursday, June 19, 2008 in Chicago.  The five properties which are the subject of this dispute are the properties that McDonald's originally intended to auction.

**ANSWER**:    McDonald's admits that it, individually and through RLA, advertised and promoted the sale of five parcels of real estate located in Illinois, Indiana, and Wisconsin. McDonald's further admits that at various times it intended to sell those properties via auction, and that an auction was scheduled to – and did – take place on June 19, 2008.  McDonald's denies the remaining allegations in paragraph 9.

10.     On or around June 12, 2008, Nomanbhoy, acting for the NFLP, and McDonald's, acting for itself and through RLA, began negotiating the sale by McDonald's and purchase by NFLP of the five parcels directly rather than via auction.  The negotiations, primarily via e-mail and telephone, contemplated an all-cash bulk purchase for the five properties located at 5057 Wentworth, Chicago, Illinois; 10245 Roosevelt Road, Westchester, Illinois; 130 South Virgin [sic] Street, Crystal Lake, Illinois; 6574 North 76th Street, Milwaukee, Wisconsin; and 5377 Broadway, Merrillville, Indiana (the "Five Subject Properties").

**ANSWER**:    McDonald's admits that at various times in June 2008 it sought to negotiate a contract with Nomanbhoy with the assistance of RLA, whereby plaintiff would purchase five parcels of real estate from McDonald's directly, rather than via auction, and that those five parcels are located at the addresses referred to in Paragraph 10, with the exception that the Crystal Lake property is located at 130 South Virginia Street.  McDonald's further admits

- 4 -

that it communicated with Nomanbhoy via telephone and e-mail with respect to those negotiations and that RLA also communicated with Nomanbhoy via telephone and e-mail. McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 10.

11.    Initially, McDonald's offered to sell the subject properties for $2 million.  As negotiations continued into the week of June 16, 2008, McDonald's agent Lauter told Nomanbhoy on June 18 at around 2:00 p.m. Pacific Time ("PT") that McDonald's would not accept less than $1.2 million.  However, 90 minutes later, McDonald's acting through Lauter and RLA, e-mailed Nomanbhoy that McDonald's would now only accept $1.4 million.  Two hours later, at about 5:45 p.m. PT but still on June 18, 2008, Lauter again e-mailed [sic] Nomanbhoy that if NFLP "will pay $1.4 MIL they [McDonald's] will sign the contract as agreed and cancel the Auction."

**ANSWER**:    McDonald's admits that plaintiff offered to purchase the subject properties for $2 million and proposed various terms that McDonald's rejected.  McDonald's further admits that, with the assistance of RLA, it engaged in negotiations with Nomanbhoy and that negotiations with Nomanbhoy continued during the period of June 16 through June 19, 2008. McDonald's further admits that Ira Lauter of RLA exchanged e-mails with Nomanbhoy on the late afternoon and evening of June 18, 2008 CST with respect to negotiating many terms – including price terms that included $1.4 million and $1.2 million – related to various counteroffers for the five parcels of real estate referenced in this lawsuit.  McDonald's answers further that the documents described in this paragraph speak for themselves and denies that they are accurately and fully characterized in paragraph 11, but admits that in the email referenced in the final sentence of paragraph 11, Lauter indicated that McDonald's "will sign" a revised contract containing agreed-to terms.  McDonald's denies that the communications described in this paragraph constitute or evidence a contract and denies that a valid and binding contract was formed between plaintiff and McDonald's.    Answering further, McDonald's is without

knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 11, and therefore denies them.

12.    Less than 20 minutes later, at about 6:00 p.m. PT on June 18, Nomanbhoy e-mailed Lauter, accepting McDonald's revised offer of $1.4 million. Nomanbhoy's e-mail stated: "Okay. I will pay $1.4 mill for the five properties."

**ANSWER**:    McDonald's admits that Ira Lauter of RLA exchanged e-mails with Nomanbhoy in the late evening of June 18, 2008 CST with respect to negotiating terms – including price terms – related to various counteroffers for the five parcels of real estate referenced in this lawsuit. McDonald's answers further that the e-mail described in paragraph 12 speaks for itself, and that the e-mail indicates that Nomanbhoy requested, among other items, that Lauter "[p]lease revise contract for interest rate, escrow agent, survey, and dates." Accordingly, McDonald's denies that the e-mail is accurately and fully characterized in paragraph 12. McDonald's denies that the communications described in paragraph 12 constitute or evidence a contract or that a valid and binding contract was formed between plaintiff and McDonald's. Answering further, McDonald's is without knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 12, and therefore denies them.

13.    As of the time of RLA's and McDonald's renewed offer and Nomanbhoy's acceptance on June 18, Bruce Neumann ("Neumann"), Senior Counsel for McDonald's Corporation, had already signed and sent to Nomanbhoy and Lauter the Real Estate Sales Contract (the "RESC") on behalf of McDonald's. That was the last version of the contract before the June 18 offer and acceptance stated above. The parties had continued to negotiate after that version was sent, including over price. That contract, attached hereto as Exhibit A, is the Real Estate Sales Contract agreed to by Lauter and Nomanbhoy on June 18, and contains the terms and conditions governing this transaction, including the $1.4 million purchase price and $210,000 initial earnest money deposit due from NFLP.

**ANSWER**:    McDonald's admits that, prior to the June 18, 2008 negotiations referenced in paragraphs 11 and 12, and on the morning of June 18, 2008, at approximately 9:47 a.m. CST, Bruce Neumann, Senior Counsel for McDonald's Corporation, signed and sent to Nomanbhoy and Ira Lauter a document entitled Real Estate Sales Contract – Version 2 (referred

to in this Answer as the "June **18** a.m. Proposal"). The June **18** a.m. Proposal is not the same

document attached as Exhibit A to plaintiff's First Amended Complaint. McDonald's further

admits, as alleged by plaintiff in paragraph 13, that the "parties had continued to negotiate after

that version was sent, including over price," and that plaintiff thereby rejected the June **18** a.m.

Proposal that Neumann signed and sent. McDonald's denies that after plaintiff rejected the June

**18** a.m. Proposal, Lauter or McDonald's made an offer, counteroffer or "renewed offer"

regarding the June **18** a.m. Proposal, denies that Nomanbhoy accepted any valid offer,

counteroffer or "renewed offer," and denies that Lauter "agreed to" the document attached as

Exhibit A to plaintiff's First Amended Complaint. Answering further, McDonald's denies that

Exhibit A contains or evidences the terms and conditions governing any "transaction" or

constitutes a valid and binding contract between plaintiff and McDonald's, denies that the

communications referenced in paragraph 13 constitute or evidence a contract between plaintiff

and McDonald's, denies that a binding contract was formed between plaintiff and McDonald's,

and denies the remaining allegations in paragraph 13.

14.    Shortly after 7:00 p.m. PT, Nomanbhoy e-mailed Neumann, Lauter and Mary
Meyer ("Meyer"), McDonald's USA's Regional Real Estate Manager, that "the contract is
acceptable as I indicated to Ira [Lauter]." Nomanbhoy's e-mail was referring to and attached the
RESC that Neumann had sent earlier that day, as stated above. Nomanbhoy only requested
confirmation that RLA was to be the escrow agent, as the contract referred to Chicago Title
Insurance Company.

**ANSWER**:    McDonald's admits that after plaintiff rejected the June **18** a.m. Proposal

as alleged by plaintiff in paragraph 13, Bruce Neumann received an e-mail from Nomanbhoy in

the late evening of June 18, 2008, on or around 9:17 p.m. CST, and that Mary Meyer,

McDonald's USA, LLC's Regional Real Estate Manager, received from Nomanbhoy an e-mail

that she reviewed on June 19, 2008. McDonald's further admits that the e-mail described in

paragraph 14 attaches the June **18** a.m. Proposal that plaintiff rejected (as alleged in paragraph

13) and that the e-mail speaks for itself. In his e-mail, Nomanbhoy attempts to accept the June **18** a.m. Proposal he previously rejected, while at the same time acknowledging that the terms in the June **18** a.m. Proposal were subject to further negotiation. Nomanbhoy states "I understand you want a change to Rick Levin Asociates [sic], though the contract says [the escrow agent is] Chicago Title" and then requests that McDonald's provide the name of the escrow agent and the location of where to send the earnest money. Accordingly, McDonald's denies that the e-mail is accurately and fully characterized in paragraph 14. Answering further, McDonald's denies that the communications referenced herein evidence a binding contract or that a binding contract was formed between McDonald's and plaintiff, and denies the remaining allegations paragraph 14.

15.    Within about two hours of Nomanbhoy's acceptance of McDonald's offer, McDonald's sent to Nomanbhoy e-mails and a letter confirming that RLA represented McDonald's in the sale of the Five Subject Properties, stating that RLA was the escrow agent, and directing Nomanbhoy to wire the initial earnest money deposit to an RLA bank account in Chicago. One of those e-mails came from Neumann, who had signed and sent the RESC on behalf of McDonald's earlier that day. Neumann told Nomanbhoy that the initial earnest money "must be wired and received by Rick Levin or the auction will go forward." In other words, the auction would be cancelled if the earnest money arrived before 1:00 p.m. Central Time ("CT"). The other e-mail, from Meyer, referred to the "contract." These communications from McDonald's to Nomanbhoy were clear acknowledgments by McDonald's that it and NFLP had a contract with respect to the Five Subject Properties.

**ANSWER**:    McDonald's denies that plaintiff or Nomanbhoy at any time accepted an offer, counteroffer or renewed offer from McDonald's as set forth in paragraph 15. McDonald's admits that Bruce Neumann and Mary Meyer exchanged e-mails with Nomanbhoy during the late evening of June 18, 2008, and that the documents described in this paragraph speak for themselves, but denies that they are accurately and fully characterized in paragraph 15. McDonald's denies that the auction scheduled for 1:00 p.m. CST would be cancelled if the plaintiff's earnest money arrived before 1:00 p.m. CST because the parties also intended that a new, revised contract would be sent and exchanged between the parties that required execution. McDonald's further denies that the communications described in paragraph 15 constitute or

evidence a contract or that a valid and binding contract was formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 15.

16. Nomanbhoy, acting for NFLP, caused the initial earnest money deposit of $210,000 to be wired to RLA early the next morning, June 19, from NFLP's California bank, Fidelity Investments. Due to the time zone difference, RLA's bank received the wire transfer of funds on 12:12 p.m. CT on June 19, 2008. That was well before the auction was to start.

**ANSWER**:    McDonald's is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, and therefore denies them.

17. At 12:52 p.m. CT on June 19, 2008, after RLA's bank received the earnest money, Lauter e-mailed Nomanbhoy that RLA was "preparing to tell bidders that there is no auction."

**ANSWER**:    McDonald's admits that Ira Lauter of RLA exchanged e-mails with Nomanbhoy on June 19, 2008. McDonald's answers further that the e-mail described in paragraph 17 speaks for itself, and denies that it is accurately and fully characterized in paragraph 17. Answering further, Bruce Neumann of McDonald's, as well as other McDonald's employees, received an e-mail from Ira Lauter on June 19, 2008, at 12:52 p.m. which also: (a) demanded that Nomanbhoy "send the contract to all parties on this e-mail ASAP," and (b) attached an email chain that Bruce Neumann of McDonald's sent to Nomanbhoy on June 19, 2008, at 9:09 a.m. stating "attached is the revised contract." McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17, and therefore denies them.

18. On the morning of June 19, 2008, Neumann sent to Nomanbhoy a different version of a Real Estate Sales Contract which added a significant new provision that Nomanbhoy had not agreed to, that was not in any of the prior drafts, and was not in the version sent by Neumann and accepted by Nomanbhoy on June 18. The addition stated: "In the event Seller has not received the Earnest Money before the commencement of the auction of the Properties on June 19, 2008, **or if the auction otherwise occurs,** this Contract shall be null and void and of no further force or effect." (Emphasis added.) Neumann provided no explanation for this unilaterally inserted term. This new term effectively gave McDonald's the option of proceeding with the auction despite the valid and binding contract between NFLP and McDonald's.

**ANSWER**:    McDonald's admits that at or around 9:09 a.m. on June 19, 2008, Bruce Neumann of McDonald's sent Nomanbhoy a version of a document titled "Real Estate Sales Contract – Version 2," (referred to in this Answer as the June **19** a.m. Proposal") and further admits that this document contained terms different than those contained in the June **18** a.m. Proposal.  McDonald's further answers that the document described in this paragraph speaks for itself, and denies that it is accurately and fully characterized in paragraph 18.  McDonald's denies that Neumann did not provide any explanation for the alleged "unilaterally inserted term." McDonald's denies that Nomanbhoy accepted any "version of a Real Estate Sales Contract" or other contract, denies that a valid and binding contract was ever formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 18.

19.    On June 18, Nomanbhoy, on behalf of NFLP, initialed each page (except the legal descriptions) of the June 18 version of the RESC sent to him by Neumann.  Nomanbhoy also returned that version of the RESC to Neumann, Lauter and Meyer on June 19.  On the morning of June 19, Nomanbhoy told Lauter that Nomanbhoy would not and did not accept the change proposed by Neumann earlier that morning because, as stated, it was not part of the prior negotiations, had not previously been accepted by Nomanbhoy, and was instead a unilateral change of terms by Neumann and McDonald's.

**ANSWER**:    McDonald's admits that on June 19, 2008, Nomanbhoy: (a) indicated that he would not accept the terms of the June **19** a.m. Proposal, the only proposal available for plaintiff to accept; (b) requested that Bruce Neumann "delete" a clause from the June **19** a.m. Proposal and "resend [to Nomanbhoy] the contract"; and (c) thereby rejected the June **19** a.m. Proposal.  McDonald's further admits that on or about 4:30 p.m. CST on June 19, 2008, a few hours after the auction, it received from Nomanbhoy for the first time the document attached as Exhibit A to plaintiff's First Amended Complaint.  Exhibit A was a version of the June **18** a.m. Proposal that Nomanbhoy previously rejected (which proposal was no longer valid) and which never was re-offered by McDonald's or Ira Lauter, but which now contained Nomanbhoy's initials on each page.  McDonald's denies that plaintiff accepted an offer or counteroffer from

McDonald's by sending Exhibit A to McDonald's and denies that a contract was formed between plaintiff and McDonald's. McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19, and therefore denies them.

20.    Notwithstanding the existence and validity of the Real Estate Sales Contract accepted by Nomanbhoy on June 18, 2008, NFLP's payment and RLA's receipt and acceptance of the earnest money, and Neumann's and RLA's indication to Nomanbhoy that McDonald's and RLA would not proceed with the auction, at about 1:00 p.m. on June 19, 2008, McDonald's and RLA held the auction and purportedly sold the Five Subject Properties. NFLP and Nomanbhoy do not currently know who purchased or the total auction price of the Five Subject Properties, but believe that the sale price exceeded the $1.4 million sum in the NFLP sales contract.

**ANSWER**:    McDonald's denies that a valid and binding contract exists or existed between plaintiff and McDonald's and denies that Bruce Neumann indicated to Nomanbhoy that McDonald's and RLA would not proceed with the auction. McDonald's admits that on June 19, 2008, at or around 1:00 p.m. CST, RLA held an auction for the sale of the five parcels of real estate referenced in this litigation, at which auction a McDonald's representative was present. McDonald's further admits that it received bids for each of the five properties, that the bids were subsequently accepted, and that McDonald's entered into contracts for the sale of each of the five parcels. McDonald's denies that the total auction price or the sale price for the five parcels exceeded $1.4 million. McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20, and therefore denies them.

21.    Later in the afternoon of June 19, 2008, after the auction occurred, Neumann e-mailed Nomanbhoy and stated that NFLP did not have an agreement or contract with McDonald's. Neumann instead stated that all prior offers had been revoked and invalidated. However, Neumann could not retract or revoke the offer and acceptance made between Lauter, acting for McDonald's, and Nomanbhoy, acting for NFLP, the day before on June 18. Neumann's position was also contrary to the numerous confirmations – including his own – of the RESC made by McDonald's with NFLP on June 18.

**ANSWER**:    McDonald's admits that on June 19, 2008, after the auction occurred, and at approximately 5:53 p.m. CST, Bruce Neumann of McDonald's sent an e-mail to Nomanbhoy indicating that plaintiff did not have an agreement or contract with McDonald's, that plaintiff

rejected the June **18** a.m. Proposal that Bruce Neumann sent to Nomanbhoy, that plaintiff rejected the June **19** a.m. Proposal that Bruce Neumann sent to Nomanbhoy, and that all prior offers were not valid and had been revoked.  McDonald's further answers that the e-mail described in this paragraph speaks for itself, and denies that it is accurately and fully described in paragraph 21.  McDonald's further denies that there was any offer and acceptance made between Lauter and Nomanbhoy on June 18, 2008 that constituted or evidenced a valid and binding contract between plaintiff and McDonald's.  McDonald's denies that it, Bruce Neumann or anyone acting on its behalf ever confirmed the existence of any valid and binding contract between plaintiff and McDonald's.  McDonald's is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21, and therefore denies them.

22.    On information and belief, Levin and RLA were the auctioneers at the auction of the Five Subject Properties.

**ANSWER**:    McDonald's admits that Levin and RLA were the auctioneers at the June 19, 2008 auction of the five parcels of real estate referenced in the litigation.

23.    At the time of the auction, Levin and RLA knew that NFLP had a valid and enforceable Real Estate Sales Contract with McDonald's for the Five Subject Properties.

**ANSWER**:    McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's and denies the remaining allegations in paragraph 23.

24.    Levin's and RLA's auctioning of the Five Subject Properties on behalf of McDonald's interfered with NFLP's contract with McDonald's.

**ANSWER**:    McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 24.

## Count I
### (Specific Performance)

25.    NFLP restates and realleges Paragraphs 1 – 24 above as and for this Paragraph 25.

**ANSWER**:     McDonald's restates and incorporates its answers to the allegations in paragraphs 1-24, above, as if fully set forth herein, as its answer to paragraph 25.

26.     On June 18, 2008, NFLP and McDonald's entered into the Real Estate Sales Contract pursuant to which NFLP agreed to purchase and McDonald's agreed to sell the Five Subject Properties for the sum of $1.4 million.

**ANSWER**:     McDonald's denies the allegations in paragraph 26.

27.     NFLP performed all conditions of the Real Estate Sales Contract to be performed by it, including the timely tender to RLA as agent for McDonald's the sum of $210,000 as initial earnest money.

**ANSWER**:     McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's and denies the allegations in paragraph 27.

28.     NFLP is, and at all times has been, ready, willing and able to perform and meet its obligations under the Real Estate Sales Contract, including to pay McDonald's the balance due for the Five Subject Properties.

**ANSWER**:     McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's and denies the allegations in paragraph 28.

29.     McDonald's has failed and refused to perform its obligations under the Real Estate Sales Contract and has indicated that it will not sell the Five Subject Properties to NFLP.

**ANSWER**:     McDonald's admits that it indicated that it will not sell to plaintiff the five parcels of real estate referenced in this litigation, denies that a valid and binding contract was formed between plaintiff and McDonald's, and denies the remaining allegations in paragraph 29.

30.     NFLP has no adequate remedy at law because the Five Subject Properties are unique.

**ANSWER**:     McDonald's denies the allegations in paragraph 30 and denies that plaintiff is entitled to any relief against McDonald's.

**Count II**
**(Injunction)**

31.     NFLP restates and realleges Paragraphs 1 – 24 and 26 – 29 above as and for this Paragraph 31.

**ANSWER**:    McDonald's restates and incorporates its answers to the allegations in paragraphs 1-24 and 26-29, above, as if fully set forth herein, as its answer to paragraph 31.

32.    NFLP has no adequate remedy at law because the Five Subject Properties are unique.

**ANSWER**:    McDonald's denies the allegations in paragraph 32.

33.    NFLP will be irreparably harmed if the Five Subject Properties are instead sold by McDonald's to purchasers other than NFLP.

**ANSWER**:    McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's and denies the remaining allegations in paragraph 33.

34.    Despite demand upon McDonald's, it intends to proceed with the auctioned sales of the Five Subject Properties to purchasers other than Nomanbhoy Family Limited Partnership.

**ANSWER**:    McDonald's is without knowledge or information sufficient to ascertain what plaintiff means by the term "demand," and is therefore without knowledge or information sufficient to form a belief as to whether plaintiff has made any "demand" on McDonald's. McDonald's admits that it intends to proceed with the sale of the five properties owned by McDonald's, but denies that a contract was formed between plaintiff and McDonald's, and denies that plaintiff is entitled to any relief against McDonald's.

### Count III
### (Breach of Contract)

35.    NFLP restates and realleges Paragraphs 1 – 24 and 26 – 29 above as and for this Paragraph 35.

**ANSWER**:    McDonald's restates and incorporates its answers to the allegations in paragraphs 1-24 and 26-29, above, as if fully set forth herein, as its answer to paragraph 35.

36.    This Count III is pled in the alternative to Counts I and II above.

**ANSWER**:    McDonald's states that the allegations in this paragraph require no answer. To the extent an answer is required, McDonald's admits that plaintiff purports to plead Count III

in the alternative to Counts I and II, but denies that plaintiff is entitled to relief against

McDonald's on any Count.

37.     NFLP had a viable business plan to develop and operate or develop and resell each of the Five Subject Properties.  The plan was to build shopping centers on each of the Five Subject Properties.  NFLP had consulted with a builder/developer, and had incurred time and expense, to develop the plan.  The plan was similar to many successful plans for the same types of property in the same circumstances.

**ANSWER**:     McDonald's is without information knowledge or sufficient to form a

belief as to the truth of the allegations in paragraph 37, and therefore denies them.

38.     NFLP's development plan reasonably calculated the profits to be between $5-$10 million.

**ANSWER**:     McDonald's denies that plaintiff is entitled to any "profits" for the sale of

the five properties owned by McDonald's, or any relief whatsoever from McDonald's, and

denies the remaining allegations in paragraph 38.

39.     McDonald's Corporation and McDonald's USA, LLC have breached the Real Estate Sales Contract, and such breach has caused substantial damages to NFLP.

**ANSWER**:     McDonald's denies that a valid and binding contract was formed between

plaintiff and McDonald's and denies the remaining allegations in paragraph 39.

40.     As an alternative to the equitable relief sought above, NFLP is entitled to its damages, including the lost profits of its development and resales of the Five Subject Properties.

**ANSWER**:     McDonald's denies the allegations in paragraph 40.

**Count IV**
**(Interference With Contract)**

41.     NFLP restates and realleges Paragraphs 1 – 24, 26 – 29, and 37 – 38 as and for its allegations for this Paragraph 41.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is

required.  To the extent an answer is required, McDonald's restates and incorporates its answers

to the allegations in paragraphs 1-24, 26-29 and 37-38, above, as if fully set forth herein, as its answer to paragraph 41.

42.     This Count IV is pled in the alternative to Counts I and II above.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is required.  To the extent an answer is required, McDonald's states that the allegations in this paragraph require no answer, and to the extent an answer is required, McDonald's admits that plaintiff purports to plead Count IV in the alternative to Counts I and II, but denies that plaintiff is entitled to relief against McDonald's on any Count.

43.     At the time of the auction on June 19, 2008, a valid and enforceable contract existed between the NFLP and McDonald's.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is required.  To the extent an answer is required, McDonald's denies the allegations in paragraph 43.

44.     RLA and Levin, auctioneers of the Five Subject Properties, knew that there was a valid and enforceable contract, and knew that selling the Five Subject Properties by auction would interfere with the Real Estate Sales Contract.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is required.  To the extent an answer is required, McDonald's denies that a contract was ever formed between plaintiff and McDonald's, and denies the allegations in paragraph 44.

45.     RLA's and Levin's auctions of the Five Subject Properties were an intentional and unjustified interference with NFLP's Real Estate Sales Contract with McDonald's.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is required.  To the extent an answer is required, McDonald's denies that a valid and binding contract ever was formed between plaintiff and McDonald's, and denies the allegations in paragraph 45.

46.     Such interference caused McDonald's to breach the RESC with NFLP, prevented and deprived NFLP from acquiring the Five Subject Properties and developing them, and caused NFLP to lose significant profits on the real estate purchase.

**ANSWER**:     This Count is not directed against McDonald's, and as such no answer is required.  To the extent an answer is required, McDonald's denies that a valid and binding contract was formed between plaintiff and McDonald's, denies the remaining allegations in paragraph 46, and denies that the plaintiff is entitled to any relief against McDonald's on any Count.

<u>McDONALD'S AFFIRMATIVE DEFENSES</u>

Defendants McDonald's Corporation and McDonald's USA, LLC, (collectively, "McDonald's") by and through their attorneys, Karina H. DeHayes and Brian C. Haussmann of Tabet DiVito & Rothstein LLC, assert the following Affirmative Defenses in response to the First Amended Complaint filed by plaintiff.

**First Affirmative Defense**
**(Statute of Frauds)**

1.     Plaintiff's claims are barred by the Illinois Statute of Frauds, 740 ILCS 80/1 *et seq.*  The Illinois Statute of Frauds requires that contracts for the sale of land be in writing, contain all of the essential and agreed terms and conditions of the sale, and be executed by the party to be charged with it.  740 ILCS 80/2.  Plaintiff admits and alleges in paragraph 13 of the First Amended Complaint that the June **18** a.m. Proposal that Bruce Neumann of McDonald's sent and executed, continued to be negotiated, and plaintiff thereby rejected it.  Thereafter, the parties entered into negotiations with respect to a proposed counteroffer involving terms other than those set forth in the June **18** a.m. Proposal.  There are no memoranda signed by McDonald's or its duly authorized agent that follow the plaintiff's rejection of the June **18** a.m.

Proposal that memorialize or evidence the essential terms of any contract between plaintiff and McDonald's and, therefore, there is no writing sufficient to satisfy the Illinois Statute of Frauds.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

### Second Affirmative Defense
### (Waiver)

2.      Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

3.      Plaintiff admits and alleges in paragraph 13 of its First Amended Complaint that even after the alleged contract it apparently seeks to enforce, Exhibit A of the First Amended Complaint, was allegedly formed, the parties "continued to negotiate . . ., including over price." Plaintiff's continued negotiations, including over the key term of the price for the properties, and its failure to assert in a timely manner that a contract had been formed or to indicate the alleged impropriety of further negotiations, evidence plaintiff's intentional relinquishment of the rights it now claims.  Plaintiff's conduct, through its agent Nomanbhoy, is inconsistent with any reliance upon the contract or rights it now claims.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

### Third Affirmative Defense
### (Laches)

4.      To the extent plaintiff seeks relief on equitable grounds, plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

5.    McDonald's repeats and realleges paragraph 3 of its Second Affirmative Defense, as though it were fully stated herein.

6.    Plaintiff has long been aware of the facts upon which it relies in its First Amended Complaint, yet plaintiff by its own admission continued to negotiate with McDonald's and, when the negotiation did not end in a favorable agreement, as plaintiff had planned, plaintiff waited until long after the June 19, 2008 auction and sale to assert its rights.  Plaintiff has continued since the inception of this lawsuit to delay in asserting its rights, and did not file its original complaint until July 2, 2008.  Plaintiff's delay has prejudiced McDonald's.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

### Fourth Affirmative Defense
### (Unclean Hands)

7.    To the extent plaintiff seeks relief on equitable grounds, plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

8.    McDonald's repeats and realleges paragraph 3 of its Second Affirmative Defense and paragraph 6 of its Third Affirmative Defense, as though they were fully stated herein.

9.    Plaintiff by its own admission continued to negotiate with McDonald's after the contract which it now alleges was allegedly formed.  When the negotiation did not end in a favorable agreement, as plaintiff had planned, plaintiff sought in bad faith to accept the terms of an offer that was no longer open to it, and to enforce the terms of that alleged "agreement" against McDonald's.  Plaintiff's bad faith precludes it from seeking relief against McDonald's on equitable grounds.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

**Fifth Affirmative Defense**
**(Failure to Mitigate Damages)**

10.     Plaintiff's claims for money damages are barred, in whole or in part, by its failure to mitigate damages.

11.     Plaintiff seeks money damages for its alleged lost profits, as well as other damages.

12.     Upon information and belief, plaintiff seeks to recover damages it could have prevented by exercising ordinary care and diligence when it learned or should have learned of the alleged breach of contract.  Even if plaintiff is entitled to relief, which McDonald's expressly denies, plaintiff is barred by its own failure to mitigate damages from recovering any such damages.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

**Sixth Affirmative Defense**
**(Failure to State a Claim)**

13.    Plaintiff's claims fail to state a claim for which relief can be granted.

WHEREFORE, McDonald's denies that plaintiff is entitled to any relief and respectfully requests that plaintiff's First Amended Complaint be dismissed and denied, and that this Court award any additional relief deemed just and proper.

Dated: July 29, 2008                    Respectfully submitted,

                                                        McDONALD'S CORPORATION and
                                                        McDONALD'S USA, LLC


                                                        By:    s/ Karina H. DeHayes
                                                               One of Their Attorneys


Karina H. DeHayes
Brian C. Haussmann
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
Tel:  (312) 762-9450
Fax:  (312) 762-9451