IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 08 CV 3787 |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) ) ) ) ) | Honorable Joan B. Gottschall Magistrate Judge Cole |
| Defendants. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
PRELIMINARY INJUNCTION OR, ALTERNATIVELY, EXTENSION
OF TEMPORARY RESTRAINING ORDER ON INDIANA PROPERTY**

Plaintiff, Nomanbhoy Family Limited Partnership ("NFLP"), by its attorneys, for its Reply Memorandum of Law in support of preliminary injunction or, alternatively, an extension of the Temporary Restraining Order on the Indiana property, states as follows.

A preliminary injunction or extension of the TRO is legally and factual warranted because Plaintiff has still met all of the tests for such interlocutory relief. A preliminary injunction is the preferred course so that the Court and parties need not revisit these issues in another two weeks.

As set forth below, the Statute of Frauds does not bar Plaintiff's request; the subject contract has and had all of the essential elements to convey real estate; and Plaintiff still meets the other tests for injunctive relief. Plaintiff also incorporates its arguments in its original Memorandum of Law upon which this Court entered the TRO on August 4, 2008.

**The Statute Of Frauds Has Been Satisfied
In Multiple Ways**

The McDonald's Defendants' Affirmative Defense of the Statute of Frauds (Ans., p. 17; Opposition, pp. 11-12.) is not a winner for multiple reasons:

- there is a written contract signed by McDonald's and NFLP;

- the exchanged emails between Shabbir Nomanbhoy ("Nomanbhoy") and Ira Lauter ("Lauter") satisfy any writing requirement of the Statute of Frauds;

- there is ample other written evidence of the parties' contract; and

- McDonald's unclean hands bars the defense.

The Statute of Frauds is the McDonald's Defendants' primary defense. But as an affirmative defense, the McDonald's Defendants have the burden of proof. *Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E. 2d 460 (1944). The McDonald's Defendants have not met that burden. Fundamental to this analysis, and the flaw in McDonald's approach, is that the operative contract is the agreed-upon June 18, 2008 version, not any other proposal.

There Is A Written Contract Signed By Both Sides

As the McDonald's Defendants state in their First Affirmative Defense, the Illinois Statute of Frauds requires that contracts for sale of land be in writing, contain the "essential" and agreed terms and conditions of sale, and be executed by the party to be charged with it. (Ans., p. 17.)

Here, McDonald's admits that "On the morning of June 18, 2008, at approximately 9:47 a.m. CST, Bruce Neumann, Senior Counsel for McDonald's Corporation, signed and sent to Nomanbhoy and Ira Lauter a document entitled Real Estate Sales Contract – Version 2 . . . ." (Ans., ¶ 13, p. 6.) It is that written June 18 Real Estate Sales Contract (the "RESC") that Nomanbhoy accepted as the contract 12 hours later. Indeed, McDonald's also admits that "Neumann received an email from

Nomanbhoy in the late evening of June 18, 2008, on or around 9:17 p.m. CST, and that Mary Meyer, McDonald's USA, LLC's Regional Real Estate Manager . . . reviewed [the same email] on June 19, 2008." (Ans., ¶ 14, p. 7.) That was Nomanbhoy's email which stated "the contract is acceptable." McDonald's further admits that Nomanbhoy's email attached the June 18 RESC that Neumann had sent to Nomanbhoy on the morning of June 18. *Id*. Thus, there is a writing signed by McDonald's.

Moreover, it is: (1) undisputed that on June 18 Nomanbhoy initialed Neumann's version of the June 18 RESC (Nomanbhoy Affid., ¶ 19.), and (2) admitted that McDonald's received that initialed version on June 19. (Ans., ¶ 19.) Thus, there was also delivery to McDonald's of the fully-signed written contract at issue here. The RESC signed by Neumann and initialed and returned by Nomanbhoy contains all of the essential terms of sale between the parties. As a matter of law, therefore, the June 18 RESC satisfies the Illinois Statute of Frauds. *Callaghan v. Miller,* 17 Ill. 2d 595, 599, 162 N.E. 2d 422, 424 (1959); *Crawley v. Hathaway*, 309 Ill. App. 3d 486, 721 N.E. 2d 1208, 1210 (4th Dist. 1999). This situation – where a single signed contract exists and was exchanged – is markedly clearer, and thus distinguishable from, the two cases cited by McDonald's where there were not complete signed agreements. (Opposition, p. 11.)

There is no merit to McDonald's arguments that (1) McDonald's had to get the RESC from Nomanbhoy before the auction, or (2) McDonald's had to re-sign the RESC pursuant to paragraph 14 of the RESC. (See Opposition, pp. 3, 5, 13.) As to the pre-auction delivery of the RESC, even Neumann's June 19 version stated that NFLP could return it by "2:00 p.m. Chicago time on Thursday, June 19th, 2008" – *i.e., after* the 1:00 auction. (Opposition, Exh. 12, ¶ 14; Meyer Affid., ¶ 31.) Clearly, McDonald's did not require the pre-auction delivery of the signed RESC, and the McDonald's Opposition and affidavits make an argument that is undermined by its own document.

(Neumann Affid., ¶¶ 23, 30-31; Meyer Affid., ¶ 34.) Also, McDonald's clearly waived any deadline of delivery stated in the June 18 RESC because Lauter, Neumann and Meyer continued to dialogue with Nomanbhoy long after any cutoff stated there. (See Answer, ¶ 12: ". . . Lauter of RLA exchanged emails with Nomanbhoy in the late evening of June 18, 2008 CST with respect to negotiating terms . . . for the five parcels of real estate . . . .")

It is also folly for McDonald's to suggest that Neumann or some other McDonald's representative had to re-sign the RESC initialed and returned by Nomanbhoy. Paragraph 14 of the RESC says the contract "shall not be binding on Seller until executed by Seller or Seller's duly authorized agent." Neumann's signature and initialing of the June 18 RESC satisfied that condition. No further sign-off by McDonald's was required. Indeed, McDonald's refers to its June 18 RESC as a "counter-offer." (Lauter Affid., ¶ 14; Meyer Affid., ¶ 14.) As such, Nomanbhoy could simply accept it, as offeree, as he did.[1]

Moreover, Neumann's Affidavit implicitly shows that there was a contract between the parties. He states: "If McDonald's had received from plaintiff the signed [contract] and the wired money prior to the auction scheduled on June 19, 2008, at 1:00 p.m., *McDonald's would have reached an agreement*." (Neumann Affid., ¶ 31; emphasis added.) But since the pre-auction receipt

---

[1]McDonald's also argues that the parties contemplated a new fully-revised signed contract separate from the June 18 RESC. (Opposition, pp. 5, 9.) But the law and facts supporting that contention are both flawed. First, there is no writing here suggesting that the Nomanbhoy/Lauter discussions were "subject to" a more formal agreement. (See Opposition, p. 5.) Those words nowhere exist in the emails. Thus, the cases cited by McDonald's that are based on such language do not apply. (Opposition, p. 9.) *Whitelaw*, where the proposal was incomplete and buyer unilaterally inserted a new term, and *Midwest Manufacturing*, where essential terms of price and property description were absent, are not this case. Moreover, to the extent that the McDonald's affidavits purport to state what was in Nomanbhoy's mind or what he contemplated (Meyer Affid., ¶¶ 28, 29, 42; Neumann Affid., ¶¶ 27, 36.), such statements should be stricken or ignored under Fed. R. Civ. P. 56 as speculative and conclusory.

of the contract was not required by the very terms of that version, McDonald's is admitting that only the pre-auction receipt of the earnest money was essential to make the deal. And McDonald's does not dispute that NFLP sent and RLA received the $210,000 before the auction. (Nomanbhoy Affid., ¶ 22.) McDonald's did reach an agreement.

Accordingly, NFLP has satisfied the Statute of Frauds with just the signed and exchanged June 18 RESC.

The Emails Exchanged Between Nomanbhoy
And Lauter Also Satisfy Any Statute Of
Frauds Writing Requirement

Emails containing the sender's name satisfy the signature requirement of the Illinois Statute of Frauds. *Cloud Corporation v. Hasbro, Inc.,* 314 F. 3d 289, 295-296 (7th Cir. 2002). Although the Seventh Circuit made that conclusion based upon common law, the Seventh Circuit also concluded that emails sent in interstate commerce after 2000 (which is the case here) would conclusively be deemed signed writings under the Electronic Signatures in Global And National Commerce Act, 15 U.S.C. § 7001. *Id*. Consistent with that holding, the Seventh Circuit has also reiterated established Illinois law that several written documents can satisfy the Statute of Frauds as long as they, taken together, contain the required information on their face or by reference to other writings. *Cohen Development Company v. J.M.J. Properties, Inc.*, 317 F. 3d 729, 737 (7th Cir. 2003); *Crawley v. Hathaway*, *supra*, 721 N.E. 2d at 1211. McDonald's does not suggest otherwise (Opposition, p. 12.), and its own authority agrees. *Do It Best Corp. v. Passport Software, Inc.*, 2005 WL 743083 at *10 (N.D. Ill. 2005).

In addition, agents who have written authority to negotiate can bind the principal to a contract. *Leach v. Hazel*, 398 Ill. 33, 38-39, 74 N.E. 2d 797 (1947); *Prodromos v. Poulos*, 202 Ill.

5

App. 3d 1024, 560 N.E. 2d 942, 946 (1st Dist. 1990). See also *World Championship Wrestling, Inc. v. GJS International, Inc.*, 13 F. Supp. 2d 725, 728, 737 (N.D. Ill. 1998), holding that plaintiff's licensing agent and the employee working for that licensing agent had authority to negotiate the deal memo and to exchange correspondence with the defendant, and both the deal memo and correspondence satisfied the Statute of Frauds because they contained the agreement's essential terms.

In addition, it is adequate for purposes of the Statute of Frauds that the agent's written communications just loosely confirm negotiations and generally indicate the intentions of the parties to establish a contract. *Barton Chemical Corporation v. Pennwalt Corp.*, 79 Ill. App. 3d 829, 399 N.E. 2d 288, 290-291 (1st Dist. 1979) (agent's letter confirms the newly-agreed upon contract modifications). Indeed, informal communications between non-lawyers acting for the parties – *i.e.*, both Nomanbhoy and Lauter – can give rise to binding contractual obligations. *Cloud Corp. v. Hasbro, supra*, 314 F. 3d at 298 ("failure to insist that every 'i' be dotted and 't' be crossed" does not prevent a contract from being formed).

Here, Lauter and Rick Levin & Associates, Inc. ("RLA"), for whom Lauter worked, were authorized by McDonald's in writing to represent the McDonald's Defendants in the negotiations of the RESC. In their Answer, McDonald's "admits that Ira Lauter is associated with RLA and that RLA was engaged to perform certain services on McDonald's behalf related to the sale of the five parcels referenced in this lawsuit"; "admits that, with the assistance of RLA, it engaged in negotiations with Nomanbhoy and that negotiations with Nomanbhoy continued during the period of June 16 through June 19, 2008"; and "admits that Bruce Neumann and Mary Meyer exchanged emails with Nomanbhoy during the late evening of June 18, 2008, and that the documents described

in this paragraph [15 of the First Amended Complaint] speak for themselves . . . ." (Ans., ¶¶ 5, 10, 11, 15.) That email and attached letter from Meyer expressly stated that "Rick Levin & Associates, Inc., represents McDonald's in this transaction," and that "Ira Lauter and Rick Levin & Associates, Inc., represent McDonald's USA, LLC in the sale of the 5 McDonald's excess properties we have been negotiating the past several days."[2] There can be no doubt that Lauter, acting for RLA and McDonald's, was authorized in writing to communicate and negotiate – including exchanging emails – with Nomanbhoy.[3]

Accordingly, the June 18 exchanged emails between Lauter and Nomanbhoy similarly satisfy the Statute of Frauds. They collectively and clearly covered the RESC, and they are connected temporally so that it is clear that they related to the same subject matter. *Crawley v. Hathaway, supra*, 721 N.E. 2d at 1211. The exchanged emails progressively narrowed their focus to the few remaining details of the contract negotiations, culminating with Nomanbhoy's email to Lauter at 6:02 p.m. PT on June 18 saying "OK. I will pay 1.4 mill dollars for the 5 properties." (Nomanbhoy Affid., Exh. J.), and at 7:17 p.m. PT on June 18 to Lauter, Neumann and Meyer that "the contract [*i.e.*, the June 18 RESC sent by Neumann earlier] is acceptable as I indicated to Ira [Lauter]." (Nomanbhoy Affid., ¶ 19, Exh. L.)

---

[2]Despite this clear and broad statement of Lauter's authority, McDonald's apparently now backtracks, suggesting that Lauter did not have such authority. (Neumann Affid., ¶ 20.) But no limits on Lauter's authority were told to Nomanbhoy, by Meyer, Neumann or Lauter. Under Meyer's letter and email, Lauter had actual authority; but if not actual, it was certainly apparent authority. McDonald's does not even try to reconcile Meyer's broad statement of authority with its position now. Rather, McDonald's again pitches an argument that is belied by its own documents.

[3]Notably, McDonald's nowhere disputes that Lauter and Nomanbhoy reached a deal for $1.2 million on June 18 at 2:127 PT. (Nomanbhoy Affid., ¶¶ 10-11.) McDonald's wholly ignores that. If Lauter could make that deal via emails, then Lauter was able to make the deal 80 minutes later at $1.4 million. (Nomanbhoy Affid., ¶ 12.)

7

The only challenge that McDonald's makes to the emails is that they are not connected to the same contract – the June 18 RESC. (Opposition, p. 12.) That argument simply does not pass the straight-face test. What else besides the June 18 RESC could they possibly relate to? There was no other version in play on June 18. McDonald's concedes that there were only four RESC issues left to resolve as of the morning of June 18 – the restrictive covenant, escrowee, penalty interest, and earnest money amount. (Opposition, p. 3.) Clearly, Lauter and Nomanbhoy both knew that their negotiations were rooted in the June 18 RESC.

Nor is there merit to McDonald's argument that earlier on June 18 Nomanbhoy rejected the RESC and thus it was a dead proposal that could not later be accepted by Nomanbhoy. McDonald's argument misses or ignores the fact that Lauter's many emails on June 18 consistently revived or kept alive Neumann's June 18 version of the RESC, subject only to the minor modifications covered by the emails between Lauter and Nomanbhoy. It is abundantly clear that, in their communications on June 18, Lauter and Nomanbhoy were basing their exchanges on the June 18 RESC even as they further negotiated the restrictive covenant, price, and other non-essential details.

McDonald's cannot credibly suggest that Lauter, with every email, had to specifically state that the June 18 RESC was the underlying contract that he had in mind. Negotiations simply do not work that way. Negotiating parties understand that the later-discussed details all relate back to the existing proposed agreement. As non-lawyers, Lauter and Nomanbhoy negotiated final terms without repeatedly referencing Neumann's June 18 version of the RESC. *Cloud Corporation, supra*, 314 F. 3d at 298. The context of the time urgencies and day-and-night exchanges over a handful of hours means that the emails unquestionably related to the June 18 RESC.

There are many similarities between this case and *World Championship Wrestling, Inc.*, 13

F. Supp. 2d 725, which held that a written memorandum as well as correspondence between the parties satisfied the Statute of Frauds. For example, in *World Championship Wrestling*, the plaintiff's agent sent a facsimile to defendant's principal giving the latter assurances of what "will remain as part of the deal" and that defendant "may proceed." Acting on that, defendant arranged for financing of the contract for a letter of credit to be issued for the contract. *Id*. at 729. Similarly, plaintiff's agent requested a slight modification of the contract to which defendant agreed. *Id*. at 729, 735.

Those communications are strikingly similar to the communications between Lauter and Nomanbhoy. It is undisputed that Lauter (1) assured Nomanbhoy in writing that "if you will pay 1.4 mil they will . . . cancel the Auction," (2) assured Nomanbhoy on the morning of June 19 that the auction would be canceled after the earnest money was received, and (3) was "preparing to tell bidders that there is no auction." (Nomanbhoy Affid., ¶¶ 14, 21, 22; Exhs. I, O.) Based upon Lauter's communications and assurances, Nomanbhoy wire transferred the $210,000 earnest money to RLA, satisfying the only pre-auction condition. RLA received and kept it. (Nomanbhoy Affid., ¶ 21.)

Thus, in addition to the signed, initialed and returned June 18 RESC, the emails between Lauter and Nomanbhoy also satisfy the writing requirement of the Illinois Statute of Frauds.

The McDonald's Defendants' Other Actions<br>Also Evidence A Written Contract

A writing sufficient to satisfy the Statute of Frauds need not itself be a valid contract, but only evidence of one. *Crawley v. Hathaway*, 721 N.E. 2d at 1211; *Cloud Corporation v. Hasbro, Inc., supra*, 314 F. 3d at 295, discussing the UCC Statute of Frauds. See also *Do It Best Corp.*,

*supra*, at *10.  Moreover, the intent of the parties to make a contract refers to a party's outward expression rather than some secret and internalized thoughts.  *World Championship Wrestling*, 13 F. Supp. 2d at 734; *Cohen Development Company v. JMJ Properties, supra*, 317 F. 3d at 735.

Communications from Neumann and Meyer – both what was said and not said – are written evidence of the RESC between the parties.  First, after receiving Nomanbhoy's email stating that "the contract is acceptable," Neumann did not retort that the June 18 RESC was withdrawn or no longer operative.  (Even if he had said that, it would not have made any legal difference, as Neumann could not unilaterally revoke the RESC after Nomanbhoy and Lauter had formed the contract.  *In re Carter*, 312 B.R. 356 (Bkrtcy. N.D. Ill. 2004).)  Rather, Neumann also confirmed that RLA was to be the escrow agent and stated that the initial earnest money "must be wired and received by Rick Levin or the auction will go forward."  (Nomanbhoy Affid., ¶ 20; Exh. N.)  Neumann's clear signal was that the June 18 RESC was the operating contract and that the auction would be canceled as long as the earnest money arrived before the 1:00 p.m. CT auction.  Based upon Neumann's implied assurances also, Nomanbhoy wire transferred the earnest money the next morning.

Meyer also did not rebuff Nomanbhoy's "accepted" contract, with her prior email again only stating that the earnest money was needed "or [we] will have to go forward with the Auction." (Nomanbhoy Affid., ¶ 18; Exh. K.)  Coupled with Lauter's verbal assurances to Nomanbhoy on the morning of June 19 (Nomanbhoy Affid., ¶ 21.), all of the McDonald's representatives repeatedly signaled to Nomanbhoy in writing and otherwise that Nomanbhoy and McDonald's had a bulk-sale contract to buy the Five Subject Properties.  Thus, there is ample evidence separate from the signed and exchanged June 18 RESC and the Lauter/Nomanbhoy emails that there was a contract between the parties.  For this reason also, the affirmative defense of the Statute of Frauds fails.

McDonald's Unclean Hands Bar This Defense

The purpose of the Statute of Frauds is to prevent fraud, not facilitate it. Courts will refuse to apply the Statute of Frauds if the result will be to perpetuate a fraud. *Crawley v. Hathaway, supra*, 721 N.E. 2d at 1212. NFLP submits that applying the Statute of Frauds here would enable McDonald's to deceive NFLP, to misrepresent with repeated assurances that McDonald's had a contract with NFLP, and to deceptively induce NFLP to pay $210,000 to McDonald's agent. Coupled with McDonald's bad faith negotiations in upping the contract price $200,000 after making an initial agreement to sell at $1.2 million, the equities weigh strongly in NFLP's favor, and unclean hands bar McDonald's from even asserting the Statute of Frauds.

**The June 18 RESC Did Not Fail For Lack Of Essential Terms**

Whether viewed as a general principle of contract law, or as an aspect of the Illinois Statute of Frauds, the parties' negotiations here contained all of the essential terms in order to have a binding contract. To form a valid contract, there need only be mutual assent on the essential terms and conditions, not all terms exactly. *Trustmark Insurance Company v. General & Cologne Life Re Of America*, 424 F. 3d 542, 549 (7th Cir. 2005); *AGA Shareholders, LLC v. CSK Auto Inc.*, 467 F. Supp. 2d 834, 844 (N.D. Ill. 2006) (Gottschall, J.) ("there must be mutual assent . . . to the essential terms," and "a contract is not rendered unenforceable merely because certain terms are missing or are left to be agreed upon."); *World Championship Wrestling, supra*, 13 F. 2d at 734. Even the McDonald's Defendants concede that the Statute of Frauds only requires that the writings contain "the *essential* and agreed terms and conditions of the sale." (Ans., p. 17; emphasis added.)

The cases cited by McDonald's are not factually on point here. First, most of their cases did not involve real estate transfers. *Hicks Road Corp. v. Marathon Oil Co.*, 1994 WL 327361 (N.D.

Ill. 1994), involved a service agreement with a "material" change to the completion date of the services that was never negotiated and prejudiced Marathon. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F. 2d 429 (7th Cir 1993), was the purchase of a company, and, in any event, the Seventh Circuit noted that an initial exchange of letters by the parties did create a preliminary agreement. 987 F. 2d at 430, n. 1. In *Finnin v. Lindsay, Inc.*, 366 Ill. App. 3d 546, 852 N.E. 2d 446 (3rd Dist. 2006), the offeree changed the price term and fully deleted a related agreement. And its real estate cases are readily distinguishable because the missing contractual elements in them were undisputably major. In *Midwest Manufacturing Holding, LLC v. Donnelly Corp.*, 1998 WL 59500 *5 (N.D. Ill. 1998), there was no firm price or property description. In *Whitelaw v. Brady*, 3 Ill. 2d 583, 121 N.E. 2d 785 (1954), the commencement date of performance was missing in the proposal and unilaterally inserted by the buyer.

Here, in contrast, there were no gaps in the final contract terms. Lauter continuously kept negotiations alive, and the contract aspects that McDonald's hangs on were most inconsequential. After Neumann signed and sent to Nomanbhoy the signed RESC on the morning of June 18, Lauter and Nomanbhoy addressed only a few lingering issues. Neumann had changed the terms of the restrictive covenant, a significant term. But Nomanbhoy quickly accepted that revision, so that difference was resolved. (Nomanbhoy Affid., ¶ 9; Exh. D.) In exchange, Nomanbhoy initially reduced his offer, but he and Lauter then shortly settled on $1.2 million. Later, the agreed price was $1.4 million after McDonald's, in bad faith, unilaterally upped the price $200,000. Nomanbhoy accepted that price term too. (Nomanbhoy Affid., ¶¶ 9-11, 13-15; Exhs. D-F, H-J.)

At that point, therefore, the purchaser and seller were clearly identified, the property was clearly described, the price was set (McDonald's has never contended otherwise on those three

aspects), and other essential terms and conditions of the sale were agreed upon. *Callahan v. Miller, supra*, 17 Ill. 2d at 599.

The only remaining details were the type of survey McDonald's had to provide, the rate of interest on the earnest money if the closing was delayed, and to whom NFLP should send the earnest money. The change of the escrowee from Chicago Title Insurance Company to RLA was proposed by Lauter, not Nomanbhoy, so that was not a counter-offer by Nomanbhoy. (Nomanbhoy Affid., ¶ 11.) Lauter and McDonald's do not dispute that they initiated that change. Also, this Court opined at the TRO hearing on July 30 that the change of the escrowee was not an essential or material term of the contract such that its change to RLA meant there was no meeting of the minds. In any event, McDonald's confirmed, in other writings later that day, that RLA was the proper escrowee. (Nomanbhoy Affid., ¶ 18; Exh. K.)

The issues of survey and penalty interest were no more material than the issue of who the escrowee would be. Nomanbhoy viewed them as "minor" (Nomanbhoy Affid., ¶ 16.), and they are. In any event, Lauter again counter-offered with the terms of the RESC sent by Neumann on the morning of June 18, and Nomanbhoy accepted that at 7:17 p.m. PT via his email that "the contract is acceptable." (Nomanbhoy Affid., ¶¶ 16, 19; Exh. L.) Accordingly, the minor details of the survey and penalty interest were also tied down in the final exchanges between Lauter and Nomanbhoy on June 18.

Clearly, then, under fundamental contract law, the parties early agreed on all of the essential terms and conditions of the sale, and even later agreed on all minor aspects. Because there was a meeting of the minds on the existing and revived June 18 RESC, this Court can find that the contract did not fail for want of essential terms.

**NFLP Has Met The Other Tests For Injunctive Relief**

NFLP Will Suffer Irreparable Harm And
Has No Adequate Remedy At Law

McDonald's does not dispute NFLP's points that the Five Subject Properties are unique and that NFLP may lose their future development opportunities. (NFLP Memo, pp. 6-7.) McDonald's instead contends that *Oxequip Health Industries, Inc. v. Canalmar, Inc.*, 94 Ill. App. 3d 955, 958 (1st Dist. 1981), totally undermines NFLP's argument.

NFLP submits that *Oxequip* is not good law, particularly where, as here, two of the properties lie outside Illinois, and NFLP and this Court may never get jurisdiction over the buyers of those parcels in order to implement the statutory remedy. Moreover, *lis pendens* is not actually a "remedy," but merely a notice provision. *Bighorn Capital, Inc. v. 1000 SMA, LLC*, 2005 U.S. Dist. LEXIS 27862 (N.D. Ill. 2005) (Opp. Exhibit 24.). Nor is it a "remedy at law," as any order issued upon those subsequent purchasers to convey back to NFLP would itself be equitable relief.

The Equities Weigh Strongly In NFLP's Favor

NFLP risks losing unique and valuable real estate and its development potential. Yet, McDonald's argues that those valuable substantive rights are outweighed by the need to preserve McDonald's holy "process" of deal-making. (Opp., pp. 13-14.)

Notably, McDonald's does not defend – or even discuss – its bad-faith negotiations here when it upped the purchase price $200,000 after a deal was made for $1.2 million. Obviously, its contracting "process" is not as sanctified as McDonald's suggests.

In any event, these properties are the only five that Nomanbhoy has at stake here, whereas they are merely five of "countless contracts" for McDonald's. (*Id*. at 13.) Balanced that way, too,

the equities are strongly in NFLP's favor.

## Additional Bond Is Not Necessary

The bond test is McDonald's exposure to loss, not the other purchasers' disrupted interests. (Opp., p. 15.)  Here, NFLP has agreed to pay $1.4 million, and will still do so under the June 18 RESC terms, for the Five Subject Properties.  Thus, McDonald's will actually profit if those five sales to the other buyers for $1.26 million (Lauter Affid., ¶ 40.) fall through.  No loss, no bond.

## Conclusion

For the foregoing reasons, Plaintiff Nomanbhoy Family Limited Partnership, requests that this Court enter a preliminary injunction or, alternatively, further extend the Temporary Restraining Order restraining and enjoining the McDonald's Defendants and their officers, agents, employees or nominees from selling, transferring, conveying, hypothecating, or in any way diluting title in and to, the Five Subject Properties, or, at minimum, the Indiana property, without additional Rule 65(c) security.

NOMANBHOY FAMILY LIMITED PARTNERSHIP, Plaintiff


By _____s/ Stuart M. Widman_____
        One Of Its Attorneys

Stuart M. Widman
Miller Shakman & Beem LLP
180 North LaSalle Street, Suite 3600
Chicago, Illinois   60601
312-263-3700
Attorney No. 3010104