UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 08 C 3787 ) ) Judge Joan B. Gottschall |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) Magistrate Judge Jeffrey Cole ) ) ) |
| Defendants. | ) ) |

**ORDER**

Plaintiff Nomanbhoy Family Limited Partnership ("Nomanbhoy") has filed suit against defendants McDonald's Corp., McDonald's USA, LLC, Rick Levin & Associates, Inc., and Rick Levin (collectively "McDonald's") alleging breach of contract and promissory estoppel. Presently before the court is Nomanbhoy's motion for extension of the court's temporary restraining order of August 15, 2008 or, alternatively, a preliminary injunction. For the reasons set forth below, Nomanbhoy's motion for extension of the temporary restraining order is granted; the temporary restraining order will expire on August 25, 2008. The court further orders that the earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's be posted with the court registry as a bond. The case is referred to Magistrate Judge Cole for a report and recommendation on Nomanbhoy's motion for a preliminary injunction.

## I. BACKGROUND

This case arises out of an alleged contract between Nomanbhoy and McDonald's to purchase five plots of real estate owned by McDonald's in Illinois, Wisconsin and Indiana. On June 12, 2008, negotiations began between Nomanbhoy and McDonald's with an offer by Nomanbhoy to purchase the five plots for $2 million. This initial offer was not accepted by McDonald's and negotiations continued with offers and counteroffers by both sides. Events reached a head on June 18, 2008, the day prior to an auction at which the properties were to be sold if a final contract between Nomanbhoy and McDonald's had not yet been executed. On the morning of that date, Bruce Neumann ("Neumann") Senior Counsel of McDonald's Central Division, sent a revised proposal entitled "Real Estate Contract — Version 2 with Exhibits A & B" (the June 18 a.m. Proposal") in response to Nomanbhoy's third written offer of the previous day. The June 18 a.m. Proposal accepted some of the terms proposed by Nomanbhoy, notably the purchase price of $1.4 million, but also set forth terms that were different from Nomanbhoy's offer, including the amount of earnest money, the identity of the escrow agent, the interest rate of the seller's penalty default and the terms of a broadened restrictive covenant concerning the properties at issue.[1]

Furthermore, Paragraph 14 of the June 18 a.m. proposal stated *inter alia* that Nomanbhoy's execution and delivery of the June 18 a.m. Proposal was an irrevocable offer to purchase and was not binding upon McDonald's until executed by McDonald's or by its authorized agent. The June 18 a.m. Proposal also set forth that Nomanbhoy agreed that the offer was irrevocable until 5:00 p.m. Chicago (Central Daylight or

---

[1] The restrictive covenant stated, in relevant part: "For a period of 20 years from the date of the deed, the Property may not be used for and Purchaser and any successor will not lease/sell to any tenant/buyer whose primary purpose is the sale of hamburgers, chicken and/or coffee."

2

"CDT") time on Wednesday, June 18, 2008.

Nomanbhoy and McDonald's continued to negotiate into the evening of June 18. Although the parties disagree as to the precise nature of the negotiations, it is undisputed that Nomanbhoy did not return a signed copy of the June 18 a.m. Proposal before 5 pm CDT. Furthermore, Shabbir Nomanbhoy, Nomanbhoy's principal, has averred that he continued to press throughout the day for a selling price of $1.2 million. Nomanbhoy Aff. ¶¶ 13-14. Nevertheless, Nomanbhoy claims that the parties reached an agreement on the terms of the June 18 a.m. Proposal in the evening. *Id.* ¶ 19. However, at 8:02 p.m CDT, Nomanbhoy sent an email to Ira Lauter ("Lauter") an agent for defendant Rick Levin Associates ("RLA"), requesting that Lauter revise the June 18 a.m. Proposal for "interest rate, escrow agent, survey and dates." Nomanbhoy Aff. Ex. J. McDonald's disputes that a meeting of the minds was ever reached that evening and that negotiations continued between the two parties.

At 9:03 a.m. on June 19, 2008, the day of the auction, Neumann sent to Nomanbhoy, via email, a revised contract (the "June 19 a.m. Proposal"). Accompanying the June 19 a.m. Proposal was a message from Neumann, stating:

> Attached is the revised contract.
>
> The purchase price is $1.4 Mil
> Penalty if we do not close is 2% per month of the earnest money
> We provide surveys.
> If we do not have the earnest money prior to the auction (or if the auction otherwise occurs) the contract is null and void (I have inserted this language to make it clear that we must have the $ prior to the auction and if the $ comes in so late such that we do not know that the $ has arrived and the auction occurs, the contract is void.) I can not be in a situation where I have sold a site to two parties.
>
> Shabbir:
> Please initial on each page next to each of my (BAN) initials (including

3

>    the bottom corner of each page), send the contract back to us
>    wire the earnest money and inform us of the confirmation number.
>
>    Thanks
>    Bruce

McDonald's Resp. Ex. 12.

At approximately 10:30 a.m., however, Lauter alleges that he was contacted by Nomanbhoy via telephone, stating that he wished to revise Paragraph 14 (which addressed sale of the properties at auction if the earnest money was not timely received) of the June 19 a.m. Proposal. Lauter Aff. ¶ 36. At 11:30 CDT, Neumann emailed Nomanbhoy, stating:

>    Ira expressed your desire to revise paragraph 14 of the [June 19 a.m. Proposal] and that alternatively you were "accepting" the contract from yesterday [the June 18 a.m. Proposal]
>
>    I want to make sure that I am very clear and that you understand McDonald's position.
>
>    The only offer/contract open to you for acceptance is the offer/contract set fort [sic] below and previously forwarded to you this morning. All prior contracts/offers have been rejected and are not valid.
>    You must have the earnest money delivered to Rick Levin's account this morning. Our discussions with you are occurring only hours prior to the scheduled auction …. If the earnest money comes in so late that we do not know that we have it, we must have the right to move forward with the auction and all offers/contracts with you are automatically terminated. If we were to receive your earnest money after the auction had commenced, it would be promptly returned to you.
>
>    It is currently 11:30 Central time. The auction is scheduled for 1:00 today. If you have wired the earnest money, you must provide us with the confirmation number immediately.

McDonald's Resp. Ex. 14.

Nomanbhoy avers that the wire transfer of the earnest money to the appropriate account of RLA occurred at 12:12 p.m. CDT; that he received conformation of the

4

transfer at 12: 15 p.m. CDT; and that he called Lauter to confirm the transfer at approximately 12:15 pm CDT.  Nomanbhoy Aff. ¶ 21.  However, Nomanbhoy adduces no evidence showing confirmation of the wire transfer at that time.  Lauter, on the other hand, avers that he called Nomanbhoy and that Nomanbhoy would or could neither sign the contract nor confirm transfer of the money.  Lauter Aff. ¶ 38.  At 12: 05 P.M. Lauter emailed Nomanbhoy, informing him that as of that time, McDonald's had not received either the contract or wire.  McDonald's Resp. Ex. 15.  At 12:52 p.m., eight minutes before the auction was to begin, Lauter emailed Nomanbhoy stating that defendant Rick Levin ("Levin") of RLA was contacting the bank to confirm the wire and was also preparing to tell the bidders that the auction was off, and asking him to send the contract to all parties listed on the email as soon as possible.  McDonald's Resp. Ex. 16.  Shortly thereafter, the property was sold at auction.

At 4:30 p.m. CDT, Nomanbhoy emailed Neumann, attaching a signed copy of the June 18 a.m. Proposal.  He repeated his concerns about Paragraph 14, although he believed that these were not moot.  McDonald's Resp. Ex. 17.  Neumann responded at 5:53 p.m. CDT, informing Nomanbhoy that the auction had proceeded on schedule and that Nomanbhoy had no contract or any other agreement with McDonald's.  McDonald's Resp. Ex. 18.  This lawsuit ensued.  Presently before the court is Nomanbhoy's motion for extension of the court's temporary restraining order of August 15, 2008 or, alternatively, a preliminary injunction enjoining McDonald's from proceeding with the closing on the five subject properties with the auction winners..

## II. ANALYSIS

The standards for a temporary restraining order ("TRO") are the same as those for a

preliminary injunction. *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001). To succeed on a motion for a TRO, a plaintiff must demonstrate: (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that plaintiff will suffer irreparable injury if the TRO is not issued. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the court is satisfied that these three conditions have been met, it must then consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court must consider the public interest in denying or granting the injunction. *Id.* The court then weighs all of these factors, "sitting as would a chancellor in equity." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). The resultant "sliding scale" approach is not mathematical in nature; rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.*

Because real property is always considered unique, there is little dispute that Nomanbhoy will lack an adequate remedy at law and suffer irreparable injury if the closing on the five subject properties proceeds with the successful auction bidders. *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("A piece of property is always considered unique, and its loss is always an irreparable injury"). Therefore, the first part of the analysis necessarily focuses on whether Nomanbhoy has some likelihood of success on the merits of his case. To demonstrate this, Nomanbhoy need not show that he would more than likely prevail, but only that his

likelihood of success is "better than negligible." *Ty*, 237 F.3d at 897.

With respect to the instant case, the court is particularly struck by both parties' curious failure to adduce any sort of proof that the wire transfer of the money was (or was not) performed and confirmed prior to the auction. Nomanbhoy avers that the money was transferred in time and that he confirmed with Lauter that the transfer had occurred. However, Nomanbhoy adduces no other evidence to support his affidavit. Lauter avers that he did not receive the *contract* prior to commencement of the auction, but does not state whether he received confirmation of wire transfer of the earnest money. His emails state only that "[Levin] is contacting the bank to confirm the wire," suggesting that he had at least received some indication from Nomanbhoy that the transfer had occurred.

The court finds this to be important. Neumann was emphatically clear to Nomanbhoy that the validity of the contract and the cancellation of the auction depended entirely on confirmation of the wire transfer:

> You must have the earnest money delivered to Rick Levin's account this morning. Our discussions with you are occurring only hours prior to the scheduled auction …. If the earnest money comes in so late that we do not know that we have it, we must have the right to move forward with the auction and all offers/contracts with you are automatically terminated.
>
> …
>
> It is currently 11:30 Central time. The auction is scheduled for 1:00 today. If you have wired the earnest money, you must provide us with the confirmation number immediately.

McDonald's Resp. Ex. 14. No mention is made in Neumann's communication that the June 19 a.m. proposal needed to be returned prior to the auction's start, only the wire transfer of the earnest money. Yet neither party has adduced any evidence, other than their affidavits, to show precisely when the transfer occurred. If Nomanbhoy timely

7

transferred the money, then he filled the requirements of performance specified by Neumann and the auction should not have gone forward or, failing that, the auction sales should have been declared void. If he failed, then the contract was void, as specified by Neumann. Given the possibility that the money transfer occurred in a timely fashion before the commencement of the auction, and that fact has somehow fallen into the interstices of McDonald's argument, the court finds that the auction and Neumann's disavowal of the contract on the evening of June 19, 2008 might well have been improper. Therefore, Nomanbhoy's likelihood of success on the merits is somewhat better than negligible, and the initial balancing analysis tips in favor of granting extension of the temporary retraining order.

      Having found that the likelihood of success analysis favors Nomanbhoy, the court must next looks to consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck*, 14 F.3d at 314. If the TRO is not extended, the sale of at least one of the properties to an auction buyer at issue could conceivably be closed.[2] Nomanbhoy would therefore suffer irreparable harm by having lost the opportunity to buy a unique property. McDonald's potential irreparable harm is considerably less; extension of the TRO (or issuance of a preliminary injunction) would postpone the closings on the five properties. McDonald's might possibly stand to suffer a monetary loss if the TRO is extended or a preliminary injunction granted, however, Nomanbhoy's irreparable injury in being denied the opportunity to buy the properties is certainly the greater harm. Therefore, this balancing of the harms analysis also favors the

---

[2] McDonald's has represented to the court that closing on four of the five properties has been postponed until October 6, 2008. However, as of the date of this order's issue, McDonald's has been unable to confirm that closing on the fifth property has been postponed.

8

granting of Nomanbhoy's motion.

Finally, the court looks to the public interest in deciding whether to grant or deny this motion. The court sees the public interests in this case as evenly balanced. On the one hand, the public has an interest in the enforcement of valid contracts conducted at arm's length. On the other, there is a counterbalancing interest in the existence of open and competitive markets and in voiding contracts that are invalid. *See Mintel Intern. Group, Ltd. v. Neergheen*, No. 08-CV-3939, 2008 WL 2782818, at *6 (N.D. Ill. July 16, 2008). The court therefore sees these two public interests as balanced, favoring neither party.

To summarize, the court finds that Nomanbhoy has demonstrated that it will suffer an irreparable injury and will have no adequate remedy at law if the TRO is not extended. Furthermore, Nomanbhoy has demonstrated that it has a better than negligible likelihood of success on the merits and will suffer the greater harm if its motion is denied. Finally, the court finds that the competing public interests are roughly in equipoise. Balancing all of these factors, and sitting as would a chancellor in equity, the court grants Nomanbhoy's motion for an extension of the TRO. The court further orders that the earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's (and allegedly still in its custody) be posted with the court as a bond. The case is referred to Magistrate Judge Cole for a report and recommendation on Nomanbhoy's motion for a preliminary injunction.

### III. CONCLUSION

For the reasons set forth above, Nomanbhoy's motion for a 10-day extension of the TRO is granted. The TRO will expire on August 25, 2008. The court orders that the

earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's be posted with the court as a bond. The case is referred to Magistrate Judge Cole for a report and recommendation on Nomanbhoy's motion for a preliminary injunction

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 15, 2008