IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 3787 |
| v. | ) ) | Hon. Joan B. Gottschall |
| | ) | Mag. Judge Jeffrey Cole |
| McDONALD's CORPORATION, McDONALD's USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) ) ) | |
| Defendants. | ) ) | |

**MOTION FOR LEAVE TO FILE *INSTANTER* SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S AUGUST 15, 2008 ORDER**

McDonald's Corporation and McDonald's USA, LLC (collectively "McDonald's"), by their counsel, respectfully move this Court for leave to file *instanter* a supplemental brief in response to the Court's August 15, 2008 Order ("Order" Dkt. 33), which Order transferred consideration of plaintiff's motion for preliminary injunction to this Court for a report and recommendation. (A copy of McDonald's Supplemental Brief is attached hereto as Exhibit A.) In support of this motion, McDonald's states as follows:

1.    As set forth in the Court's Order, if plaintiff did not abide by McDonald's instructions in a June 19, 2008 e-mail, which set forth the requirements of performance that would determine whether McDonald's would sell five real estate parcels to plaintiff, this Court should recommend denial of plaintiff's motion for preliminary injunction.

2.    McDonald's Supplemental Brief makes clear that plaintiff did not fill all of the requirements. Accordingly, plaintiff's motion should be denied for these and additional reasons set forth in McDonald's Opposition Brief (Dkt. 26) and proposed Sur-Reply in Support of its Opposition (Dkt. 29, Ex. 1.)

3.    McDonald's does not make this motion for the purpose of delaying the proceedings, and its supplemental brief will cause plaintiff no prejudice.

WHEREFORE, McDonald's respectfully asks that this Court grant it leave to file *instanter* the supplemental brief attached as Exhibit A to this motion.

August 27, 2008                        Respectfully submitted,

                                       McDONALD'S CORPORATION and
                                       McDONALD'S USA, LLC

                                       By:    s/ Karina H. DeHayes
                                              One of Their Attorneys

Karina H. DeHayes
Brian C. Haussmann
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
(312) 762-9450

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 3787 |
| v. | ) ) | Hon. Joan B. Gottschall |
| | ) | Mag. Judge Jeffrey Cole |
| McDONALD's CORPORATION, McDONALD's USA, LLC, RICK LEVIN & ASSOCIATES, INC., and RICK LEVIN, | ) ) ) ) | |
| Defendants. | ) ) | |

## McDONALD'S SUPPLEMENTAL BRIEF
## IN RESPONSE TO THE COURT'S AUGUST 15, 2008 ORDER

McDonald's Corporation and McDonald's USA, LLC (collectively "McDonald's") submits this supplemental brief in response to Judge Gottschall's August 15, 2008 Order ("Order" Dkt. 33, attached hereto as Exhibit 1), which Order transferred consideration of plaintiff's motion for preliminary injunction to this Court for a report and recommendation.

## I.    INTRODUCTION

Through this action, plaintiff attempts to force McDonald's to sell to it five real estate parcels that McDonald's has committed to sell to five other buyers. The five buyers collectively have paid approximately $127,600 in escrow for the properties. They have each indicated a willingness to close on the properties on October 6, 2008. (*See* Supplemental Affidavit of Bruce Neumann ("Neumann Supp. Aff."), ¶¶ 14 and 15, attached hereto as Exhibit 2.)

The Order suggests that if plaintiff did not abide by McDonald's "emphatically clear" instructions in its June 19, 2008 e-mail to plaintiff related to buying the properties, this Court should deny plaintiff's motion to preliminarily enjoin the scheduled closings for those parcels with the five other buyers. (Order at 7-8.) One of the instructions was that plaintiff timely wire funds prior to the 1:00 p.m. June 19 auction to sell the parcels. (*Id.* at 7.) A second instruction was that plaintiff place an "initial on each page" of the revised contract that McDonald's sent to plaintiff on June 19 and "send the contract back to [McDonald's]." (Ex. 2, Neumann Supp. Aff.

¶ 9.) Based upon the undisputed Supplemental Affidavit attached hereto, plaintiff did not comply with these instructions. Accordingly, this Court should recommend a denial of plaintiff's motion for a preliminary injunction.

Additional bases warrant denial of plaintiff's motion. The Court's Order confirms that even if plaintiff wired the funds, plaintiff did not do so pursuant to the alleged contract that it attempts to enforce and attaches to its opening motion (Order at 3; *see* Dkt. 12, Nomanbhoy Affidavit Exhibit A), or any other valid contract.

## II.　　BACKGROUND

The only alleged contract plaintiff seeks to enforce is attached to the affidavit of plaintiff's representative, Shabbir Nomanbhoy ("Nomanbhoy Exhibit A"; Dkt. 12, Ex. A). Nomanbhoy Exhibit A is a variation of the June 18 a.m. Proposal. (*See infra* at fn 1.)

### June 18 a.m. Proposal

In the Order, the Court recognized that on June 18, 2008, at 9:47 a.m., Bruce Neumann of McDonald's sent via e-mail a document in response to a prior written offer submitted by plaintiff. (Order at 2.) Neumann's document was entitled "Real Estate Contract – Version 2 with Exhibit A & B" (the "June 18 a.m. Proposal"). The June 18 a.m. Proposal contained numerous terms, including a $1.4 million price term. (Order at 2.)

The Court further recognized that plaintiff did not agree to the June 18 a.m. Proposal. Instead, plaintiff, through its representative Nomanbhoy, "and McDonald's continued to negotiate into the evening of June 18," and Nomanbhoy "continued to press throughout the day for a selling price of $1.2 million." (Order at 3.) Plaintiff also failed to "return a signed copy of the June 18 a.m. Proposal before 5 pm CDT," as required by the June 18 a.m. Proposal. (*Id.*) Because plaintiff did not accept the terms in the June 18 a.m. Proposal and continued to make counteroffers to McDonald's, plaintiff rejected the June 18 a.m. Proposal pursuant to clear Illinois law on the mirror-image rule and contract formation. *See Whitelaw v. Brady*, 3 Ill. 2d 583, 589 (1954) (holding that in order for a valid acceptance of an offer to take place, the acceptance must be unequivocal and must match exactly the terms of the offer; otherwise, it is a rejection and counteroffer). The June 18 a.m. Proposal as sent by Neumann was off the table.

### The June 19 a.m. Proposal

In the Order, the Court also recognized that the following day, at 9:09 a.m. CDT on June 19, 2008, Neumann of McDonald's "sent to Nomanbhoy, via email, a revised contract (the "June

19 a.m. Proposal")" and that "accompanying the June 19 a.m. Proposal" was an e-mail message from Neumann, stating:

> 'Attached is the revised contract.
>
> The purchase price is $1.4 Mil
> Penalty if we do not close is 2% per month of the earnest money
> We provide surveys.
> If we do not have the earnest money prior to the auction (*or if the auction otherwise occurs*) the contract is null and void . . . . I can not be in a situation where I have sold a site to two parties.
>
> Shabbir:
> Please *initial on each page* next to each of my (BAN) initials (including the bottom corner of each page), *send the contract back to us* wire the earnest money and inform us of the confirmation number.'

(Order at 3, emphasis added; quoting McDonald's Opposition ("Opp.") Ex. 12.)  Rather than initialing each page of the June 19 a.m. Proposal and sending the contract back to McDonald's, the Court's Order recognizes that plaintiff sought instead to negotiate paragraph 14 of the June 19 a.m. Proposal.  (Order at 4.)[1]

### The June 19 E-mail Instructions from Neumann

The Court's Order next quotes a June 19, 11:30 a.m. CDT e-mail from Neumann of McDonald's to Nomanbhoy.  (Opp. Ex. 14.)  (Order at 7.)  The Court concludes that in this e-mail, Neumann of McDonald's provided instructions to plaintiff that were "emphatically clear," and that plaintiff's inability to "fill[] the requirements specified by Neumann" would render "void" any contract.  (Order at 7-8.)  As set forth below, plaintiff did not fill all the requirements specified by Neumann.

---

[1]  The differences between the June 19 a.m. Proposal, the June 18 a.m. Proposal and Nomanbhoy Exhibit A are as follows:  Unlike the June 18 a.m. Proposal and Nomanbhoy Exhibit A, the June 19 a.m. Proposal set forth a different restrictive covenant, penalty term, and survey term.  Most importantly, the June 19 a.m. Proposal indicated that the terms of the June 19 a.m. Proposal would be void if McDonald's would, for any reason, proceed to auction.  (*See* Opp. Ex. 12 cover e-mail and attached June 19 a.m. Proposal at ¶ 14.)  The difference between the June 18 a.m. Proposal, which plaintiff rejected through its counteroffers throughout the day on June 18, and Nomanbhoy Exhibit A is that Nomanbhoy Exhibit A contains Nomanbhoy's initials on the bottom-right hand corner of the document.  Nomanbhoy Exhibit A, however, was sent by plaintiff to McDonald's on June 19, 2008, at 4:30 p.m. CDT (Order at 5), which was *after* plaintiff rejected it on June 18, *after* McDonald's made clear that the June 18 a.m. Proposal had been rejected by plaintiff and revoked by McDonald's, and *after* the auction occurred on June 19.

### III.    ARGUMENT

**A.    THIS COURT SHOULD RECOMMEND A DENIAL OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION BECAUSE PLAINTIFF FAILED TO "FILL[] THE REQUIREMENTS OF PERFORMANCE SPECIFIED BY NEUMANN."**

The June 19, 11:30 a.m. CDT e-mail chain from Neumann set forth that plaintiff was to abide by two instructions from McDonald's: (1) timely send the wired funds so that they would be received prior to the auction, and (2) send an initialed copy of the June 19 a.m. Proposal. Plaintiff did not comply with these requirements.

Specifically, the e-mail chain that began with the 11:30 a.m. CDT e-mail states:

> "Ira expressed your desire to revise paragraph 14 of the contract and alternatively that you were "accepting" the contract from yesterday…**The only offer/contract open to you for acceptance is the offer/contract set fort[h] below and previously forwarded to you this morning.  All prior offers/contracts have been rejected and are not valid.**
>
> **You must have the earnest money delivered to Rick Levin's account this morning. . . .**

and the e-mail chain further continues:

> Shabbir:
> Please <u>initial on each page</u> next to each of my (BAN) initials (including the bottom corner of each page),
> <u>send the contract back to us </u>wire the earnest money and inform us of the confirmation number.

(A copy of the entire e-mail chain is attached hereto as Supplemental Brief Exhibit 3; bold emphasis in original; underscored emphasis added.)[2]

As Neumann explains in his Supplemental Affidavit, the contract that McDonald's specifically requested that plaintiff send back to McDonald's was the June 19 a.m. Proposal. (Ex. 2, Neumann Supp. Aff. ¶ 9.)  McDonald's receipt of an executed contract became even more crucial as McDonald's suspicions grew the morning of June 19 leading up to the auction because:

---

[2]  The e-mail in McDonald's Opposition Exhibit 14, on which the Court focuses in its August 15, 2008 Order, is a true and accurate paper copy of an e-mail that is part of a longer e-mail chain. The entire e-mail chain from Neumann included additional, explicit instructions.  A true and complete copy of the entire e-mail chain from McDonald's electronic data archive is attached to McDonald's Supplemental Brief as Exhibit 3. (*See* Neumann Supp. Aff. ¶ 7.)

- plaintiff was refusing to send a signed copy of McDonald's June 19 a.m. Proposal despite numerous requests to do so; and

- after receiving the June 19 a.m. Proposal from McDonald's, and within an hour or two before the auction commenced, plaintiff still was making its own counteroffers by requesting a revision of a key term in paragraph 14.

Specifically, McDonald's was concerned by plaintiff's refusal to sign the June 19 a.m. Proposal because it believed that plaintiff, having never signed it, would seek to renegotiate the terms after McDonald's canceled the auction. (Ex. 2, Neumann Supp. Aff. ¶ 11.) McDonald's grew increasingly suspicious of plaintiff's refusal when McDonald's broker/auctioneer Rick Levin & Associates, Inc. ("RLA") indicated that Nomanbhoy appeared to be in a location from which to send an executed contract to McDonald's prior to the auction, but Nomanbhoy nonetheless refused to do so. (*See* McDonald's Opp. Ex. 1, Meyer Aff. ¶¶ 34-35; Opp. Ex. 3, Lauter Aff. ¶ 38.) Even with receipt of the wired funds, McDonald's did not and could not know which counteroffer plaintiff was accepting or making.[3]

McDonald's requirement that plaintiff deliver an initialed, revised contract also was confirmed in e-mails and telephone conversations prior and subsequent to the auction from both McDonald's and its broker/auctioneer RLA. (*See* McDonald's Opp. Exs. 11, 12, 15 and 16; *see also* Opp. Ex. 1, Meyer Aff. at ¶ 22; Opp. Ex. 2, Neumann Aff. at ¶ 23; Opp. Ex. 3, Lauter Aff. at ¶¶ 23 and 38; *see also* McDonald's Opp. Br. at 5, Dkt. 26.)

As a result, despite McDonald's being informed prior to the auction that its broker's bank apparently received plaintiff's funds, McDonald's did not receive – even to this day – the initialed June 19 a.m. Proposal that it specifically requested. Indeed, Nomanbhoy confirmed in his affidavit that he rejected and refused to initial the June 19 a.m. Proposal. (Nomanbhoy Aff. ¶¶ 24-25.) Plaintiff's failure to "fill[] the requirements of performance specified by Neumann" (*i.e.,* receipt of an initialed copy of the June 19 a.m. Proposal) is dispositive. (Order at 7-8.) Plaintiff did not abide by all the e-mail instructions provided to it by Bruce Neumann of McDonald's on June 19 and, consequently, any proposed "contract" or counteroffer related to those e-mails was void. (Order at 8.)

---

[3] Given plaintiff's lawsuit, which now seeks to enforce an alleged June 18 agreement that this Court apparently acknowledges was rejected the day before, *see* Order at 3, McDonald's concern was legitimate.

**B.    THIS COURT SHOULD RECOMMEND DENIAL OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION FOR ALL THE INDEPENDENT REASONS SET FORTH IN MCDONALD'S OPPOSITION BRIEF AND PROPOSED SUR-REPLY.**

As set forth in McDonald's Opposition (Dkt. 26) and in its Motion for Leave to File a Sur-Reply, Exhibit 1 (Dkt. 29):

- Plaintiff rejected the June 18 a.m. Proposal (*see* Nomanbhoy Aff. ¶¶ 6, 7, 9, 10, 14); and instead plaintiff made counteroffers on June 18 by negotiating terms and demanding a different sales price (*see also* Order at 2-3);

- The plaintiff could not revive the June 18 a.m. Proposal by its later acceptance and even if it could, any such alleged "contract" fails to meet the signature requirement in the Statute of Frauds. (McDonald's Opp. at 11, Dkt. 26; McDonald's proposed Sur-Reply at 2, Dkt. 29);

- Plaintiff rejected and refused to initial and send to McDonald's the June 19 a.m. Proposal. (Nomanbhoy Aff. ¶¶ 24-25).

Accordingly, no valid contract exists between McDonald's and plaintiff that requires the sale of the five parcels to plaintiff, and there are no writings sufficient to satisfy the Statute of Frauds. For these additional reasons, plaintiff has no likelihood of success on the merits.

## IV.    CONCLUSION

For all the reasons stated above and as set forth in McDonald's Opposition (Dkt. 26) and in its Motion for Leave to File a Sur-Reply, Exhibit 1 (Dkt. 29), this Court should recommend a denial of plaintiff's motion for a preliminary injunction and enter any further relief appropriate in the circumstances.

August 27, 2008

Respectfully submitted,

McDONALD'S CORPORATION and
McDONALD'S USA, LLC

By: ___ s/ Karina H. DeHayes ___
         One of Their Attorneys

Karina H. DeHayes
Brian C. Haussmann
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
(312) 762-9450

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 C 3787 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| McDONALD'S CORPORATION, | ) | |
| McDONALD'S USA, LLC, RICK | ) | Magistrate Judge Jeffrey Cole |
| LEVIN & ASSOCIATES, INC., and | ) | |
| RICK LEVIN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Nomanbhoy Family Limited Partnership ("Nomanbhoy") has filed suit against defendants McDonald's Corp., McDonald's USA, LLC, Rick Levin & Associates, Inc., and Rick Levin (collectively "McDonald's") alleging breach of contract and promissory estoppel. Presently before the court is Nomanbhoy's motion for extension of the court's temporary restraining order of August 15, 2008 or, alternatively, a preliminary injunction. For the reasons set forth below, Nomanbhoy's motion for extension of the temporary restraining order is granted; the temporary restraining order will expire on August 25, 2008. The court further orders that the earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's be posted with the court registry as a bond. The case is referred to Magistrate Judge Cole for a report and recommendation on Nomanbhoy's motion for a preliminary injunction.

1

## I. BACKGROUND

This case arises out of an alleged contract between Nomanbhoy and McDonald's to purchase five plots of real estate owned by McDonald's in Illinois, Wisconsin and Indiana. On June 12, 2008, negotiations began between Nomanbhoy and McDonald's with an offer by Nomanbhoy to purchase the five plots for $2 million. This initial offer was not accepted by McDonald's and negotiations continued with offers and counteroffers by both sides. Events reached a head on June 18, 2008, the day prior to an auction at which the properties were to be sold if a final contract between Nomanbhoy and McDonald's had not yet been executed. On the morning of that date, Bruce Neumann ("Neumann") Senior Counsel of McDonald's Central Division, sent a revised proposal entitled "Real Estate Contract — Version 2 with Exhibits A & B" (the June 18 a.m. Proposal") in response to Nomanbhoy's third written offer of the previous day. The June 18 a.m. Proposal accepted some of the terms proposed by Nomanbhoy, notably the purchase price of $1.4 million, but also set forth terms that were different from Nomanbhoy's offer, including the amount of earnest money, the identity of the escrow agent, the interest rate of the seller's penalty default and the terms of a broadened restrictive covenant concerning the properties at issue.[1]

Furthermore, Paragraph 14 of the June 18 a.m. proposal stated *inter alia* that Nomanbhoy's execution and delivery of the June 18 a.m. Proposal was an irrevocable offer to purchase and was not binding upon McDonald's until executed by McDonald's or by its authorized agent. The June 18 a.m. Proposal also set forth that Nomanbhoy agreed that the offer was irrevocable until 5:00 p.m. Chicago (Central Daylight or

---

[1] The restrictive covenant stated, in relevant part: "For a period of 20 years from the date of the deed, the Property may not be used for and Purchaser and any successor will not lease/sell to any tenant/buyer whose primary purpose is the sale of hamburgers, chicken and/or coffee."

"CDT") time on Wednesday, June 18, 2008.

Nomanbhoy and McDonald's continued to negotiate into the evening of June 18.
Although the parties disagree as to the precise nature of the negotiations, it is undisputed
that Nomanbhoy did not return a signed copy of the June 18 a.m. Proposal before 5 pm
CDT. Furthermore, Shabbir Nomanbhoy, Nomanbhoy's principal, has averred that he
continued to press throughout the day for a selling price of $1.2 million. Nomanbhoy
Aff. ¶¶ 13-14. Nevertheless, Nomanbhoy claims that the parties reached an agreement on
the terms of the June 18 a.m. Proposal in the evening. *Id.* ¶ 19. However, at 8:02 p.m
CDT, Nomanbhoy sent an email to Ira Lauter ("Lauter") an agent for defendant Rick
Levin Associates ("RLA"), requesting that Lauter revise the June 18 a.m. Proposal for
"interest rate, escrow agent, survey and dates." Nomanbhoy Aff. Ex. J. McDonald's
disputes that a meeting of the minds was ever reached that evening and that negotiations
continued between the two parties.

At 9:03 a.m. on June 19, 2008, the day of the auction, Neumann sent to
Nomanbhoy, via email, a revised contract (the "June 19 a.m. Proposal"). Accompanying
the June 19 a.m. Proposal was a message from Neumann, stating:

> Attached is the revised contract.
>
> The purchase price is $1.4 Mil
> Penalty if we do not close is 2% per month of the earnest money
> We provide surveys.
> If we do not have the earnest money prior to the auction (or if the auction
> otherwise occurs) the contract is null and void (I have inserted this
> language to make it clear that we must have the $ prior to the auction and
> if the $ comes in so late such that we do not know that the $ has arrived
> and the auction occurs, the contract is void.) I can not be in a situation
> where I have sold a site to two parties.
>
> Shabbir:
> Please initial on each page next to each of my (BAN) initials (including

3

the bottom corner of each page), send the contract back to us
wire the earnest money and inform us of the confirmation number.

Thanks
Bruce

McDonald's Resp. Ex. 12.

At approximately 10:30 a.m., however, Lauter alleges that he was contacted by

Nomanbhoy via telephone, stating that he wished to revise Paragraph 14 (which

addressed sale of the properties at auction if the earnest money was not timely received)

of the June 19 a.m. Proposal. Lauter Aff. ¶ 36. At 11:30 CDT, Neumann emailed

Nomanbhoy, stating:

> Ira expressed your desire to revise paragraph 14 of the [June 19 a.m.
> Proposal] and that alternatively you were "accepting" the contract from
> yesterday [the June 18 a.m. Proposal]
>
> I want to make sure that I am very clear and that you understand
> McDonald's position.
>
> The only offer/contract open to you for acceptance is the offer/contract set
> fort [sic] below and previously forwarded to you this morning. All prior
> contracts/offers have been rejected and are not valid.
> You must have the earnest money delivered to Rick Levin's account this
> morning. Our discussions with you are occurring only hours prior to the
> scheduled auction .... If the earnest money comes in so late that we do not
> know that we have it, we must have the right to move forward with the
> auction and all offers/contracts with you are automatically terminated. If
> we were to receive your earnest money after the auction had commenced,
> it would be promptly returned to you.
>
> It is currently 11:30 Central time. The auction is scheduled for 1:00 today.
> If you have wired the earnest money, you must provide us with the
> confirmation number immediately.

McDonald's Resp. Ex. 14.

Nomanbhoy avers that the wire transfer of the earnest money to the appropriate

account of RLA occurred at 12:12 p.m. CDT; that he received conformation of the

4

transfer at 12: 15 p.m. CDT; and that he called Lauter to confirm the transfer at approximately 12:15 pm CDT. Nomanbhoy Aff. ¶ 21. However, Nomanbhoy adduces no evidence showing confirmation of the wire transfer at that time. Lauter, on the other hand, avers that he called Nomanbhoy and that Nomanbhoy would or could neither sign the contract nor confirm transfer of the money. Lauter Aff. ¶ 38. At 12: 05 P.M. Lauter emailed Nomanbhoy, informing him that as of that time, McDonald's had not received either the contract or wire. McDonald's Resp. Ex. 15. At 12:52 p.m., eight minutes before the auction was to begin, Lauter emailed Nomanbhoy stating that defendant Rick Levin ("Levin") of RLA was contacting the bank to confirm the wire and was also preparing to tell the bidders that the auction was off, and asking him to send the contract to all parties listed on the email as soon as possible. McDonald's Resp. Ex. 16. Shortly thereafter, the property was sold at auction.

At 4:30 p.m. CDT, Nomanbhoy emailed Neumann, attaching a signed copy of the June 18 a.m. Proposal. He repeated his concerns about Paragraph 14, although he believed that these were not moot. McDonald's Resp. Ex. 17. Neumann responded at 5:53 p.m. CDT, informing Nomanbhoy that the auction had proceeded on schedule and that Nomanbhoy had no contract or any other agreement with McDonald's. McDonald's Resp. Ex. 18. This lawsuit ensued. Presently before the court is Nomanbhoy's motion for extension of the court's temporary restraining order of August 15, 2008 or, alternatively, a preliminary injunction enjoining McDonald's from proceeding with the closing on the five subject properties with the auction winners..

## II. ANALYSIS

The standards for a temporary restraining order ("TRO") are the same as those for a

preliminary injunction. *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001). To succeed on a motion for a TRO, a plaintiff must demonstrate: (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that plaintiff will suffer irreparable injury if the TRO is not issued. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the court is satisfied that these three conditions have been met, it must then consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court must consider the public interest in denying or granting the injunction. *Id.* The court then weighs all of these factors, "sitting as would a chancellor in equity." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). The resultant "sliding scale" approach is not mathematical in nature; rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.*

Because real property is always considered unique, there is little dispute that Nomanbhoy will lack an adequate remedy at law and suffer irreparable injury if the closing on the five subject properties proceeds with the successful auction bidders. *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("A piece of property is always considered unique, and its loss is always an irreparable injury"). Therefore, the first part of the analysis necessarily focuses on whether Nomanbhoy has some likelihood of success on the merits of his case. To demonstrate this, Nomanbhoy need not show that he would more than likely prevail, but only that his

6

likelihood of success is "better than negligible." *Ty*, 237 F.3d at 897.

With respect to the instant case, the court is particularly struck by both parties' curious failure to adduce any sort of proof that the wire transfer of the money was (or was not) performed and confirmed prior to the auction. Nomanbhoy avers that the money was transferred in time and that he confirmed with Lauter that the transfer had occurred. However, Nomanbhoy adduces no other evidence to support his affidavit. Lauter avers that he did not receive the *contract* prior to commencement of the auction, but does not state whether he received confirmation of wire transfer of the earnest money. His emails state only that "[Levin] is contacting the bank to confirm the wire," suggesting that he had at least received some indication from Nomanbhoy that the transfer had occurred.

The court finds this to be important. Neumann was emphatically clear to Nomanbhoy that the validity of the contract and the cancellation of the auction depended entirely on confirmation of the wire transfer:

> You must have the earnest money delivered to Rick Levin's account this morning. Our discussions with you are occurring only hours prior to the scheduled auction .... If the earnest money comes in so late that we do not know that we have it, we must have the right to move forward with the auction and all offers/contracts with you are automatically terminated.
>
> ...
>
> It is currently 11:30 Central time. The auction is scheduled for 1:00 today. If you have wired the earnest money, you must provide us with the confirmation number immediately.

McDonald's Resp. Ex. 14. No mention is made in Neumann's communication that the June 19 a.m. proposal needed to be returned prior to the auction's start, only the wire transfer of the earnest money. Yet neither party has adduced any evidence, other than their affidavits, to show precisely when the transfer occurred. If Nomanbhoy timely

transferred the money, then he filled the requirements of performance specified by Neumann and the auction should not have gone forward or, failing that, the auction sales should have been declared void. If he failed, then the contract was void, as specified by Neumann. Given the possibility that the money transfer occurred in a timely fashion before the commencement of the auction, and that fact has somehow fallen into the interstices of McDonald's argument, the court finds that the auction and Neumann's disavowal of the contract on the evening of June 19, 2008 might well have been improper. Therefore, Nomanbhoy's likelihood of success on the merits is somewhat better than negligible, and the initial balancing analysis tips in favor of granting extension of the temporary retraining order.

Having found that the likelihood of success analysis favors Nomanbhoy, the court must next looks to consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck*, 14 F.3d at 314. If the TRO is not extended, the sale of at least one of the properties to an auction buyer at issue could conceivably be closed.[2] Nomanbhoy would therefore suffer irreparable harm by having lost the opportunity to buy a unique property. McDonald's potential irreparable harm is considerably less; extension of the TRO (or issuance of a preliminary injunction) would postpone the closings on the five properties. McDonald's might possibly stand to suffer a monetary loss if the TRO is extended or a preliminary injunction granted, however, Nomanbhoy's irreparable injury in being denied the opportunity to buy the properties is certainly the greater harm. Therefore, this balancing of the harms analysis also favors the

---

[2] McDonald's has represented to the court that closing on four of the five properties has been postponed until October 6, 2008. However, as of the date of this order's issue, McDonald's has been unable to confirm that closing on the fifth property has been postponed.

8

granting of Nomanbhoy's motion.

Finally, the court looks to the public interest in deciding whether to grant or deny this motion. The court sees the public interests in this case as evenly balanced. On the one hand, the public has an interest in the enforcement of valid contracts conducted at arm's length. On the other, there is a counterbalancing interest in the existence of open and competitive markets and in voiding contracts that are invalid. *See Mintel Intern. Group, Ltd. v. Neergheen*, No. 08-CV-3939, 2008 WL 2782818, at *6 (N.D. Ill. July 16, 2008). The court therefore sees these two public interests as balanced, favoring neither party.

To summarize, the court finds that Nomanbhoy has demonstrated that it will suffer an irreparable injury and will have no adequate remedy at law if the TRO is not extended. Furthermore, Nomanbhoy has demonstrated that it has a better than negligible likelihood of success on the merits and will suffer the greater harm if its motion is denied. Finally, the court finds that the competing public interests are roughly in equipoise. Balancing all of these factors, and sitting as would a chancellor in equity, the court grants Nomanbhoy's motion for an extension of the TRO. The court further orders that the earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's (and allegedly still in its custody) be posted with the court as a bond. The case is referred to Magistrate Judge Cole for a report and recommendation on Nomanbhoy's motion for a preliminary injunction.

### III. CONCLUSION

For the reasons set forth above, Nomanbhoy's motion for a 10-day extension of the TRO is granted. The TRO will expire on August 25, 2008. The court orders that the

9

earnest money in the amount of $210,000 paid by Nomanbhoy to McDonald's be posted

with the court as a bond. The case is referred to Magistrate Judge Cole for a report and

recommendation on Nomanbhoy's motion for a preliminary injunction

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED:  August 15, 2008

10

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOMANBHOY FAMILY LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 CV 3787 |
| | ) | |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | Mag. Judge Jeffrey Cole |
| McDONALD's CORPORATION, | ) | |
| McDONALD's USA, LLC, RICK LEVIN & | ) | |
| ASSOCIATES, INC., and RICK LEVIN, | ) | |
| | ) | |
| Defendants. | ) | |

## SUPPLEMENTAL AFFIDAVIT OF BRUCE NEUMANN

I, Bruce Neumann, having been first duly sworn under oath, state as follows:

1.     I am a resident of the State of Illinois and am over eighteen (18) years of age.  I make this affidavit based on my own personal knowledge and, if called upon to do so, could testify competently to the matters described herein.

2.     I make this affidavit on behalf of McDonald's Corporation and McDonald's USA, LLC (collectively, "McDonald's") and in support of McDonald's Opposition to Plaintiff's Motion for a Preliminary Injunction ("McDonald's Opposition" or "Opp.") and its Supplemental Brief In Response to the Court's August 15, 2008 Order ("Supp. Br."). This affidavit supplements my previous affidavit dated August 8, 2008, submitted as Exhibit 2 in support of McDonald's Opposition.

### Introduction

3.     I currently hold the position of Senior Counsel of McDonald's Corporation in the Central Division.  I have held that position for approximately eight (8) years.

4.     I was one of the persons involved, on behalf of McDonald's, in negotiating and authorizing the negotiation of the terms acceptable to McDonald's regarding the sale of the five

parcels of real estate referenced in this litigation. Those five parcels are located at the following addresses: 5057 Wentworth, Chicago, Illinois; 10245 Roosevelt Road, Westchester, Illinois; 130 South Virginia Street, Crystal Lake, Illinois; 6574 North 76th Street, Milwaukee, Wisconsin; and 5377 Broadway, Merrillville, Indiana (collectively "the five parcels").

### McDonald's Explicitly Requests That Plaintiff
### Return an Initialed Copy of the June 19 a.m. Proposal

5.      On the morning of June 19, 2008, at approximately 9:09 a.m. CDT/ 7:09 a.m. PT, and as the parties contemplated, I sent to plaintiff's representative, Shabbir Nomanbhoy ("Nomanbhoy"), for execution a written proposal for the sale of the five parcels (the "June 19 a.m. Proposal"). The June 19 a.m. Proposal was the only counteroffer McDonald's was providing to plaintiff for acceptance that day. (The June 19 a.m. Proposal and my 9:09 a.m. cover e-mail is attached to McDonald's Opposition as Exhibit 12.)

6.      On June 19, 2008, at 11:30 a.m. CDT/9:30 a.m. PT, I again e-mailed Nomanbhoy stating:

> "Ira expressed your desire to revise paragraph 14 of the contract and alternatively that you were "accepting" the contract from yesterday...**The only offer/contract open to you for acceptance is the offer/contract set fort[h] below and previously forwarded to you this morning. All prior offers/contracts have been rejected and are not valid.**
>
> **You must have the earnest money delivered to Rick Levin's account this morning. . . .**

(Opp. Exhibit 14.) (Emphasis in original.) The references in the quoted e-mail above are as follows:

- "Paragraph 14 of the contract" refers to the June 19 a.m. Proposal that I sent to plaintiff on the morning of June 19, 2008 at 9:09 a.m. CDT. (Opp. Ex. 12.)

- "[T]he contract from yesterday" refers to the June 18 a.m. Proposal that I sent to plaintiff on the morning of June 18, 2008 (Opp. Ex. 7), but which counteroffer plaintiff rejected (Opp. Ex. 8).

2

- "The only offer/contract open to you for acceptance is the offer/contract set fort[h] below and previously forwarded to you this morning" is a reiteration to plaintiff that the only counteroffer McDonald's was providing to plaintiff was the June 19 a.m. Proposal. (Opp. Ex. 12.)

7.    The e-mail in Opposition Exhibit 14, on which the Court focuses in its August 15, 2008 Order, is a true and accurate paper copy of an e-mail that is part of a longer e-mail chain. The longer e-mail chain included additional, explicit instructions. A true and complete copy of the entire e-mail chain from McDonald's electronic data archive is attached to McDonald's Supplemental Brief as Exhibit 3. This e-mail was sent at or about the time indicated in the e-mail itself.

8.    As set forth in McDonald's Supplemental Brief Exhibit 3, the e-mail to plaintiff included an additional express instruction that Nomanbhoy must initial the June 19 a.m. Proposal and return it to McDonald's.

9.    Specifically, the remainder of the June 19, 2008, 11:30 a.m. CDT e-mail chain states:

Shabbir:

Please initial on each page next to each of my (BAN) initials (including the bottom corner of each page),

send *the contract* back to us

wire the earnest money and inform us of the confirmation number.

(Supplemental Brief Exhibit 3; emphasis added.) The e-mail chain also attached a PDF copy of the June 19 a.m. Proposal, which is "the contract" to which I refer in this portion of the e-mail chain. One of the provisions in paragraph 14 of "the contract," *i.e.*, the June 19 a.m. Proposal, set forth: In the event Seller has not received the Earnest Money before the commencement of the auction of the Properties on June 19, 2008, *or if the auction*

3

*otherwise occurs*, this Contract shall be null and void and of no further force and effect."
(Supp. Br. Ex. 3; emphasis added.)

10.    All of the instructions in the entire e-mail chain (Supp. Br. Ex. 3) were intended to advise plaintiff that McDonald's required that Nomanbhoy: (1) return an initialed version of the June 19 a.m. Proposal to McDonald's prior to the auction, and (2) wire the earnest money prior to the auction.

11.    McDonald's receipt of an initialed June 19 a.m. Proposal from Nomanbhoy before the auction was important to McDonald's. I was concerned that if Nomanbhoy did not initial and return the June 19 a.m. Proposal before the auction, he might seek to make a counteroffer and renegotiate its terms after McDonald's had canceled the auction and foregone the opportunity to sell the parcels to other purchasers.

12.    Nomanbhoy never complied with my explicit instruction that he initial and deliver the June 19 a.m. Proposal to McDonald's -- either before the auction or even after the auction.

13.    Thereafter, on June 19, 2008, at approximately 1:00 p.m. CDT, McDonald's sold the five parcels at a public auction to five individual purchasers.

14.    The total purchase price for the five parcels approximates $1.276 million. Each of the five purchasers has indicated his or her desire to proceed to close on the parcels on October 6, 2008.

15.    The five individual purchasers deposited earnest money in escrow for each of their respective parcels. The total earnest money paid on the five parcels approximates $127,600. McDonald's has not returned the earnest money to the five purchasers nor have the purchasers requested it.

16.     On the other hand, on or about June 20, 2008, and after the public auction, I recommended to Ira Lauter of Rick Levin & Associates, which held plaintiff's earnest money in escrow, to return the earnest money deposit to plaintiff.

FURTHER AFFIANT SAYETH NOT.

_Bruce Neumann_

BRUCE NEUMANN

SUBSCRIBED AND SWORN TO
before me this 27th day of August, 2008.

_Erica M Ruiz_
Notary Public

OFFICIAL SEAL
ERICA M RUIZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/30/10

# EXHIBIT 3



| | |
|---|---|
| **Bruce Neumann/mcd/us** | To "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com> |
| 06/19/2008 11:30 AM | cc "Ira lauter" <Ira@ricklevin.com>, Mary Meyer/mcd/us@MCDUS, Doris Murray-Norris/mcd/us@MCDUS |
| | bcc Bruce Neumann/mcd/us |
| | Subject Fw: Revised Contract |

Shabbir:

Ira expressed your desire to revise paragraph 14 of the contract and alternatively that you were "accepting" the contract from yesterday.

I want to make sure that I am very clear and that you understand McDonald's position.

The only offer/contract open to you for acceptance is the offer/contract set fort below and previously forwarded to you this morning. All prior offers/contracts have been rejected and are not valid.

You must have the earnest money delivered to Rick Levin's account this morning. Our discussions with you are occurring only hours prior to the scheduled auction. I can not put McDonald's or Rick Levin in a situation where you continue to claim that the earnest money has been wired, we have not received it and are then forced to decide whether to cancel the auction with the hope that the earnest money will arrive or move forward with the auction and risk "selling" the site to two parties. If the earnest money comes in so late that we do not know that we have it, we must have the right to move forward with the auction and all offers/contracts with you are automatically terminated. If we were to receive your earnest money after the auction had commenced, it would be promptly returned to you.

It is currently 11:30 Central time. The auction is scheduled for 1:00 today. If you have wired the earnest money, you must provide us with the confirmation number immediately.

Bruce Neumann


*******************************************************************
*Bruce A. Neumann*
*Director - Senior Counsel*
*Corporate Strategy*
*Central Division*
*McDonald's Corporation*
*2915 Jorie Boulevard – Dept 282*
*Oak Brook, IL 60523*
*Email:  bruce.neumann@us.mcd.com*
*(630) 623-7556 Direct Dial*
*(630) 623-8064 Facsimile*
*******************************************************************


----- Forwarded by Bruce Neumann/mcd/us on 06/19/2008 11:07 AM -----



| | |
|---|---|
| **Bruce Neumann/mcd/us** | To "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com> |
| 06/19/2008 09:09 AM | cc Ira@ricklevin.com |
| | Subject Fw: Revised Contract |



**Bruce Neumann/mcd/us**
06/19/2008 09:03 AM

To    "Ira lauter" <ira@ricklevin.com>,
      shabbir.namanbhoy@gmail.com
cc    Mary Meyer/mcd/us@MCDUS, Doris
      Murray-Norris/mcd/us@MCDUS
Subject   Revised Contract

Attached is the revised contract.

The purchase price is $1.4 Mil
Penalty if we do not close is 2% per month of the earnest money
We provide surveys.
If we do not have the earnest money prior to the auction (or if the auction otherwise occurs), the contract is
null and void.  (I have inserted this language to make it clear that we must have the $ prior to the auction
and if the $ comes in so late such that we do not know that the $ has arrived and the action occurs, the
contract is void.)  I can not be in a situation where I have sold a site to two parties.

Shabbir:
Please initial on each page next to each of my (BAN) initials (including the bottom corner of each
page),
send the contract back to us
wire the earnest money and inform us of the confirmation number.

Thanks
Bruce



CORPLEGAL-#493297-v1-Real_Estate_Contract_-_Chicago_Auction_-_June_19__2008.PDF

*****************************************************
*Bruce A. Neumann*
*Director - Senior Counsel*
*Corporate Strategy*
*Central Division*
*McDonald's Corporation*
*2915 Jorie Boulevard – Dept 282*
*Oak Brook, IL 60523*
*Email:  bruce.neumann@us.mcd.com*
*(630) 623-7556 Direct Dial*
*(630) 623-8064 Facsimile*
*****************************************************

## REAL ESTATE SALES CONTRACT — *VERSION 2*
### *WITH EXHIBIT A & B 2*

1. **Parties.**

   **Seller:**    McDonald's Corporation or its nominee
               One McDonald's Plaza
               Oak Brook, Illinois 60523
               Tel: 630.836.4982
               Fax: 630.836.4804

   **Purchaser:**   *NOMANBHOY FAMILY LIMITED PARTNERSHIP*
               *(OR TRUST, OR IRA, ACCOUNTS OF NOMANBHOY FAMILY)*
               *11254 MT CREST PLACE*
               *CUPERTINO, CA 95014*
               *Tel  408 996 - 8786    call 408 507 - 7863*
               *Email S.MASBIR, NOMANBHOY @ GMAIL.COM*

2. **Purchase Price**
   2.1. High Bid Price                                        *BULK SALE OFFER*
   2.2. Buyer's Premium (3% of 2.1)                           *FOR 5 PROPERTIES*    $
   2.3. Purchase Price (2.1 + 2.2)                                                  $ ~~1,400,000.00~~
   2.4. Total Earnest Money Required (15% of 2.3)            *BAN*    $ ~~140,000.00~~    $210,000.00 4/17   *BAN*
   2.5. Initial Earnest Money Deposit                                $ $210,000.00
   2.6. Additional Earnest Money Required (2.4- 2.5)                 $ -0-
   2.7. Balance of Purchase Price Due at Closing (2.3- 2.4)          $ ~~1,260,000.00~~    $1,190,000.00  *BAN*

3. **Agreement to Sell and Purchase.** Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller, at the price and on the terms set forth herein, the real estate consisting of that parcel of land identified on Rider 1 attached to this Contract (the "Property) and more particularly described on Exhibit 'A' attached hereto.

4. **All Cash Transaction.** This is an all-cash sale and purchase; and is NOT contingent upon Purchaser obtaining financing even though Purchaser may apply to a lending institution of Purchaser's choice for a mortgage loan. Purchaser understands and agrees that neither their receipt of a commitment from such a lending institution, their acceptance of such a commitment, nor their satisfaction of any condition set forth in such a commitment shall in any way be conditions of Purchaser's obligations under this Contract. Seller makes no representation or warranty as to Purchaser's ability to obtain financing.

5. **Earnest Money.** Purchaser ~~has~~ deposited *WILL UPON ACCEPTANCE* the initial Earnest Money set forth in Paragraph 2.5 and receipt is hereby acknowledged. The Additional Earnest Money Required set forth in Paragraph 2.6 shall be paid by cash or cashier's check, payable to the order of the Escrow Agent ~~(as set forth on Rider 1 attached to this Real Estate Sales Contract)~~ and received by Escrow Agent on or before noon on Thursday, June 26, 2008, at the offices of Escrow Agent. The Additional Earnest Money Required may be paid by personal check only if paid on the date of the auction at the time this Contract is executed. All earnest money shall be held by Escrow Agent for the benefit of the parties. Purchaser acknowledges that TIME IS OF THE ESSENCE with respect to the payment of any additional earnest money and the closing of this sale. Upon Seller's execution of this Contract, Rick Levin & Associates, Inc. or Rick Levin & Associates, Inc., in conjunction with Rick Levin & Associates, Inc., licensed Indiana auctioneer, as applicable ("Auctioneer") shall deposit the Earnest Money with the Escrow Agent for the mutual benefit of Purchaser and Seller.

   *Chicago Title Insurance Company*
   *Rick Levin & Associates, Inc.*
   *BAN*

6. **The "Closing".** The purchase and sale of the Property shall be closed (the "Closing") on ~~Friday, August 8, 2008,~~ or on such other date as agreed to by the parties *Thursday, July 31, 2008* Closing shall take place at an office of Chicago Title Company or such other title company as agreed to between Seller and Purchaser (the "Title Company") at such location as approved by Seller. Purchaser may use the proceeds of a money lender's escrow to pay the balance of the Purchase Price, provided that the terms of the money lender's escrow are not inconsistent with the terms of this Contract or the Escrow Agreement. Purchaser shall deposit, by certified funds, wire transfer or a bank cashiers check made payable to Title Company, all funds necessary to close the transaction contemplated by this Contract and shall promptly deliver and execute all required documents.

   "If due to Seller's default hereunder, Seller fails to close on or before July 31, 2008, Seller shall pay to Purchaser a penalty of two (2%) percent per ~~annum~~ on the total earnest money deposit, prorated to the earlier of the actual closing date, or the termination of this contract. *Month   BAN*
   *1B14*

Rx Date/Time      JUN-17-2008(TUE) 01:50        4089962786                    P. 002
04/11/2008  05:07  4089962786         NOMANBHOY8                    PAGE  02

7.   Delivery of Deed.  On the Closing Date, Seller shall convey or cause to be conveyed to Purchaser by recordable Limited or Special Warranty or Trustee's Deed, title to the Property subject only to the following matters ("Permitted Exceptions"):

    7.1.   general real estate taxes for the years 2007 and 2008 and subsequent years;

    7.2.   covenants, conditions and restrictions of record (including without limitation such easements and restrictions as may be recorded after the date hereof which Seller determines are necessary or appropriate);

    7.3.   certain mutually beneficial restrictions and obligations with respect to the proper use, conduct and maintenance of the Property and other property (Purchaser hereby authorizes Seller to record any such restrictions and obligations as covenants affecting the Property and other property)X  AFTER REVIEW CAGREEMENT BY PURCHASER

    7.4.   private and/or public utility easements, roads and highways, if any, whether or not of record;

    7.5.   all matters which a current, accurate survey of the Property would disclose;

    7.6.   applicable zoning and building lines and ordinances;

    7.7.   in the event Seller or any entity related to Seller is the owner of or otherwise has an interest in any adjacent property, a reservation to Seller or its nominee of the right and privilege of Seller, its lessees, franchisees, successors and assigns to use and enjoy the benefit of all existing private utilities, drainage areas and access ways of any kind, whatsoever, if any;

    7.8.   ~~Purchaser agrees to accept in Seller's deed to Purchaser a covenant prohibiting the Property from being used for residual purposes for a period of 20 years from the date of the deed. Purchaser agrees that the restriction shall be a covenant running with the land and be binding upon Purchaser, its heirs, administrators, successors and assigns.~~  Purchaser agrees to accept in Seller's deed to Purchaser the Restrictive Covenant set forth on Exhibit B.  SEE ATTACHED RESTRICTIVE COVENANT EXHIBIT B=2

    7.9.   acts done or suffered by Purchaser or by any party claiming by, through or under Purchaser;

    7.10.  party wall rights, if any; and

    7.11.  all installments of special assessments heretofore levied falling due after date of closing.

8.   Title/Survey.  At least five days prior to Closing, Seller shall show to Purchaser or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance issued by the Title Company bearing date on or subsequent to the date of the acceptance of this Contract, in the amount of the Purchase Price subject to no other exceptions than those listed in Paragraph 7 and to general exceptions contained in said commitment. Every Commitment for Title Insurance furnished by Seller hereunder shall be conclusive evidence of title as therein shown. If evidence of title discloses other exceptions, Seller shall have thirty (30) days from Seller's receipt of evidence of title to cure such exceptions and notify Purchaser accordingly, and as to those exceptions which may be removed at closing by payment of money, Seller may have same removed at closing by using the proceeds of sale in payment thereof. Seller has to the extent delivered a copy of any survey of the property in Seller's possession to Purchaser.  If Seller is unable to have such defects cured or the extent waived within 30 days, Purchaser may, as its sole remedy, terminate this Contract within 10 days thereafter. In no event shall Seller have Seller has a copy any obligation to commence litigation or to expend money to cure or remove any title objections. Seller and Purchaser acknowledge and of such surveys agree that Seller shall not be obligated to provide any new or updated survey to Purchaser.  in its possession,

9.   Payments at Closing.  Purchaser shall pay all recording charges, all money lender's charges (including money lender's escrow fees), municipal transaction tax stamps, if applicable, escrow fees and any and all title insurance charges.

10.  Possession.  Purchaser shall be entitled to occupancy and possession of the Property from and after the Closing date provided final payment of the Purchase Price has been made and the Closing has been fully consummated. Prior to Closing, Seller shall have sole control and exclusive possession of the Property.

11.  Prorations.  At closing, Purchaser shall receive, to the extent that they have not been paid, a credit for real estate taxes for 2007 and 2008. In the event the actual amount of the tax bill is unknown, such credit shall be based on 105% of the most recent ascertainable general real estate tax bill for the Property.  General real estate taxes shall be prorated to the date of closing.  If the real estate tax bill includes additional property owned by Seller, at Closing Purchaser shall give Seller a credit for taxes from the date of Closing through the remainder of the tax year and the parties shall complete a tax division on the Property such that it shall be separately assessed. Prior to such separate assessment, Seller and Purchaser shall each pay their pro rata share of the tax bill based upon the square footage of each parcel. All prorations are final.  All other items customarily prorated shall be prorated as of the date of closing.

12.  Intentionally Deleted

Rx Date/Time    JUN-17-2008( JE) 01:50           4089962786                   P.003
04/11/2008  05:07   4089962786        NOMANBHOYS                        PAGE  03

13. **Commission/Broker-Agency Disclosure.** Seller shall cause to be paid a broker's commission to Auctioneer at closing, as provided in the Exclusive Agreement For Auctioneering Services between the Seller and Auctioneer. The provisions of this paragraph shall survive the closing.   Purchaser represents and warrants to Seller that no auctioneer or broker, other than Auctioneer and _____ NONE _____ ("Participating Broker") was involved in showing, submitting or selling the Property to Purchaser. Purchaser agrees to indemnify and hold Seller, Auctioneer and Participating Broker, if any, harmless and, defend them from any claim relating to Purchaser's purchase of the Property asserted against the Seller or Auctioneer by any broker other than as set forth in this Paragraph 13. The provisions of this Paragraph shall survive the closing.  Purchaser acknowledges that Auctioneer and its licensed associates represent the Seller as Seller's agent in the sale of this Property.

14. **Irrevocable Offer.** Purchaser's execution and delivery of this Contract to Seller is an irrevocable offer to purchase the Property made to Seller and shall not be binding upon Seller until execution by Seller, or Seller's duly authorized agent.  Purchaser agrees that this offer shall remain irrevocable until 5:00 p.m. Chicago time on ~~Monday, June 23,~~ 2008. Notification of Seller's acceptance may be given pursuant to the notice provision in this Contract or by telephone. Seller's, or a duly authorized agent of Seller's, failure to notify Purchaser on a timely basis that Seller rejects Purchaser's offer shall not constitute acceptance or rejection of Purchaser's offer, but Purchaser's offer shall then become revocable by Purchaser.  If Seller rejects Purchaser's offer or Purchaser's offer is effectively revoked, all deposits made by Purchaser shall be promptly returned to Purchaser. In the event Seller has not received the Earnest Money before the commencement of the auction of the Properties on June 19, 2008, or if the auction otherwise does not occur, this Contract shall be null and void and of no further force or effect.

*[handwritten: 2:00 p.m. BRN    Thursday June 19th BRN]*

15. **Default.**

   15.1.   **Purchaser's Default.** At Seller's option, Purchaser shall be in default under the terms of this Contract if, in addition to any other default specified herein, Purchaser shall:

        15.1.1. fail to close pursuant to the terms hereof;

        15.1.2. fail to timely make any payment required of Purchaser hereunder;

        15.1.3. reserved;

        15.1.4. fail to appear at the time and place designated by Seller, as provided herein, to close the transaction; or

        15.1.5. fail to make Closing deposits at the times required thereunder.

        15.1.6. If Seller declares Purchaser in default pursuant to the terms herein, or if Purchaser fails or refuses to carry out any other obligation of Purchaser under the terms of this Contract and any supplemental agreements made a part hereof, or Purchaser defaults under any provision hereof, then, at Seller's option, this Contract is terminated, and, upon notice to Purchaser, the earnest money shall be forfeited.  Seller may also elect to assert against Purchaser any other remedy available, at law or in equity.

16. **Demand For Earnest Money.**  Purchaser and Seller hereby agree that if Seller makes a demand upon Auctioneer stating that Seller has thereby elected to forfeit Purchaser's earnest money, and demanding that Auctioneer remit to Seller any earnest money deposited by Purchaser with Auctioneer, pursuant to Paragraph 15.1.6, whereupon Auctioneer shall serve notice upon both parties as to same by certified mail, return receipt requested.  Purchaser shall have seven (7) days from the date Auctioneer deposits the notice in the U. S. mail with sufficient postage prepaid to (a) cure the default; or (b) object in writing to Auctioneer of the intended disposition of earnest money.  The mailing of a notice by certified mail, return receipt requested, shall be sufficient service when the notice is mailed.  If Purchaser fails to cure the default or Auctioneer does not receive Purchaser's written objection within said seven (7) day period, then Auctioneer is hereby authorized by Purchaser and Seller to remit same to Seller (reduced by any monies due Auctioneer from Seller, if any), and Purchaser's right under this Contract shall be forfeited, and the Contract shall be terminated without further action by either party or Auctioneer.  Seller is then free to sell the Property to any other party.

17. **Interpleader.**  If either party objects to the intended disposition in writing within the aforementioned seven (7) day grace period, then the parties hereto agree that Auctioneer may deposit earnest money, less costs, with the Clerk of the Circuit Court of Cook County by filing an action in the nature of interpleader.  The parties agree that Auctioneer may be reimbursed from the earnest money for all costs, including reasonable attorney's fees, relating to the filing of the interpleader and do hereby agree to indemnify, defend and hold Auctioneer harmless from any and all claims and demands, including the payment of reasonable attorney's fees, costs and expenses arising out of such default claims and demands.

3

*[handwritten: BRN]*

18. Warranty And Disclaimer Of Warranties. **PURCHASER REPRESENTS THAT EITHER PURCHASER OR A DULY AUTHORIZED AGENT OF PURCHASER HAS INSPECTED, OR WAIVES THE RIGHT TO INSPECT, THE PROPERTY AND VERIFIED THE FACTS AND INFORMATION CONTAINED IN ANY MATERIALS PROVIDED TO PURCHASER PRIOR TO EXECUTING THIS CONTRACT.  PURCHASER WARRANTS THAT PURCHASER IS PURCHASING THE PROPERTY, ALL IMPROVEMENTS, FIXTURE, EQUIPMENT AND PERSONAL PROPERTY, THEREOF ON AN "AS-IS, WHERE-IS" BASIS, WITH ALL FAULTS AND WITH NO WARRANTIES OF ANY KIND, EXPRESS OF IMPLIED, EITHER ORAL OR WRITTEN, EXCEPT AS EXPRESSLY STATED IN THIS CONTRACT, WHETHER OF HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, CONDITION OF IMPROVEMENTS, ENVIRONMENTAL CONDITION OR OTHERWISE MADE BY SELLER, AUCTIONEER OR ANY AGENT OF EITHER OF THEM, INCLUDING, BUT NOT LIMITED TO, INFORMATION CONTAINED IN THE SALES BROCHURE, ADVERTISING OR SUPPLEMENTAL BROCHURES.  NEITHER SELLER, AUCTIONEER, NOR ANY OF THEIR AGENTS ASSUME ANY LIABILITY FOR INACCURACIES, ERRORS OR OMISSIONS CONTAINED IN ANY MATERIALS PROVIDED TO PURCHASER.**

**PURCHASER'S INITIALS:**

By executing this Contract, Purchaser expressly represents and agrees that Purchaser is not relying upon any representative warranty or statement by Seller, Auctioneer or its or their sales representatives which differs from the disclosures made in this Contract. Purchaser acknowledges that Purchaser has not relied upon any sales plans, selling brochures, advertisements, representations, warranties, statements or estimates of any nature whatsoever, whether written or oral, made by Seller, Auctioneer or others, including, but not limited to, any relating to the description of physical condition of the Property, or the dimensions of the Property or any other physical dimensions thereof, the estimated real estate taxes of the Property, the right to any income tax deduction for any real estate taxes or mortgage interest paid by Purchaser, or any other data, except as may be specifically represented herein. Purchaser has relied on their own examination and investigation thereof. No person has been authorized to make any representation on behalf of Seller. Purchaser agrees (a) to purchase the Property without offset of any claim against, or liability to, Seller or its agents, whether or not any layout or dimension of the Property or any part thereof, is accurate or correct, and (b) that Purchaser shall not be relieved of any of Purchaser's obligations hereunder by reason of any minor inaccuracy or error. The provisions of this paragraph shall survive the Closing.

*SELLER AGREES THAT NO MATERIAL DIFFERENCES EXIST FROM RICK LEVIN WEBSITE INFORMATION*

**PURCHASER'S INITIALS:**

19. Notices. All notices herein required shall be in writing and signed by either party, and shall be served on the other party at the addresses set forth in Paragraph 1. The mailing of a notice by registered or certified mail, return receipt requested with sufficient postage prepaid, shall be sufficient service when the notice is mailed. Notices may also be served by a nationally recognized air courier, or personal delivery. Notices sent by air courier shall be deemed delivered on the date of receipt. Either party may change its address for notice purposes by giving notice to that effect in the manner set forth herein, provided such change of address shall not be deemed received until actual receipt thereof by the addressee. Any notices required herein may be sent by and to each party's respective attorney.

20. Attorney Review. PURCHASER REPRESENTS THAT PURCHASER HAS BEEN ADVISED BY THE SELLER AND AUCTIONEER TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS CONTRACT. PURCHSER FURTHER ACKNOWLEDGES THAT HE HAS READ AND UNDERSTANDS EACH AND EVERY PART OF THIS CONTRACT.

21. Property Condition. The parties hereto acknowledge that Auctioneer is not obligated to and has not made any independent investigation of the condition of the Property including, but not limited to, any environmental matters with respect thereto (collectively the "Physical Condition"). The parties hereto further acknowledge that all investigations, reports and information with respect to the Physical Condition, if any, have been prepared by or for the Seller and have been furnished by Auctioneer to Purchaser on behalf of Seller. Seller makes no representation as to the truth or accuracy of any such investigations, reports and/or information.

22. Statutory Compliance. Purchaser and Seller hereby agree to make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended. Purchaser and Seller agree to make all certifications and do all things necessary to comply with Section 1445 of the Internal Revenue Code at or before the time of Closing.

23. Stamp Taxes. Seller shall furnish a completed declaration signed by the Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by the Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax.

4



24. Use of Pronouns. Wherever appropriate, the singular includes the plural and the masculine includes the feminine or the neuter. The term "Purchaser" shall be interpreted as "Purchasers" if more than one person are purchasing the Property, and their obligations shall be joint and several.

25. No Assignment. Purchaser shall not directly or indirectly assign or transfer his rights under this Contract without prior written approval of Seller which may be granted or withheld in the sole and absolute discretion of Seller. Seller may assign this Contract without the consent of Purchaser, subject, however, to Purchaser's rights hereunder. Any attempted assignment or transfer by Purchaser without Seller's prior written consent shall be deemed null and void and shall be considered an event of default by Purchaser subject to the provisions of Paragraph 16.2 of this Contract.

26. Headings; Exhibits. The paragraph headings used herein are for the reader's convenience only and they shall not be used to interpret the meaning of the terms set forth herein. Exhibits attached hereto are incorporated as a part of this Contract.

27. Governing Law. The parties agree that any litigation or dispute concerning the enforcement of this Contract shall be brought in the State of Illinois, the jurisdiction shall be the county in which the Property is located, and that Illinois law shall govern its interpretation.

28. Complete Agreement; Severability. This Contract sets forth the entire understanding between the parties relating to the transactions described herein, there being no terms, conditions, warranties or representations other than those contained herein. This Contract may be amended only in an instrument signed by both parties hereto. The parties intend that faxed signatures and that a faxed Contract containing the signatures (original or faxed) of all parties is binding on the parties. At the request of either party, any faxed document subject to this paragraph shall be re-executed by both parties in an original form. Neither party shall raise the use of a facsimile machine as a defense to this Contract and shall forever waive such defense. If any provision of this Contract is invalid or unenforceable as against any party under certain circumstances, the remainder of this Contract and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Contract, except as otherwise herein provided shall be valid and enforced to the fullest extent permitted by law.

29. Invalidity. The invalidity of any covenant, grant, condition or provision of this Contract shall not impair or affect in any manner the validity, enforceability or effect of the remainder of the Contract.

30. Purchaser's Status. Purchaser represents and warrants there is nothing in Purchaser's status which could or might preclude or prevent Purchaser from consummating this transaction as herein set forth. Purchaser also agrees that he or she shall not cause any labor or material to be incorporated or delivered to the Property prior to Closing.

31. Binding Agreement. The terms and provisions of this contract shall be binding upon the parties hereto and their heirs, administrators, executors, successors, and permitted assigns.

32. Request for Escrow. At the request of Seller or Purchaser, evidenced by written notice to the other party at any time prior to the date for delivery of deed hereunder, this sale shall be closed through an escrow with the Title Company, in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then furnished and in use by said company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of purchase price and delivery of deed shall be made through the escrow and this Contract and the earnest money shall be deposited in the escrow and Auctioneer shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be paid by the party requesting it.

33. Other Documents. Seller agrees to furnish an affidavit of title subject only to those items set forth herein, and an ALTA statement if required by Purchaser's mortgagee, and transfer tax declarations.

34. Existing Mortgage. Seller shall have the right to pay off any existing mortgage(s) out of the proceeds of this sale.

35. Indemnity. Purchaser covenants to indemnify, defend and hold Seller harmless against any and all losses, claims, damages, liabilities, costs (including reasonable attorney's fees and court costs), and causes of action including, without limitation, those arising from mechanics liens, injuries to person or damage to property, including the Property, suffered or incurred by Seller directly or indirectly, as a result of, the entry onto the Property by Purchaser, Purchaser's agents, contractors, employees, and licensees.

38. Anti-Terrorism Representation and Warranty. Seller and Purchaser each represent and warrant that neither they nor the officers and directors controlling Purchaser are acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that they are not engaged in the transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation. Each party hereby agrees to defend, indemnify, and hold harmless the other party from and against any and all claims, damages, losses, risks, liabilities and expenses (including reasonable attorney's fees and costs) arising from or related to any breach of the foregoing representation and warranty.

**THIS SPACE INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS.**

IN WITNESS WHEREOF, the parties have executed this Contract on the dates set forth below their signatures.

SELLER:

McDonald's Corporation

BY: _Bruce Neumann_
TITLE: _Senior Counsel_
DATE: _June 16, 2008_

PURCHASER: NOMANBHOY FAMILY LIMITED
                        PARTNERSHIP

Signature _Nomanbhoy_
                _by its President_
                SHABBIR NOMANBHOY

Signature

DATE: _June 16, 08_

SELLER'S ATTORNEY:
Bruce Neumann
McDonald's Corporation
1 McDonald's Plaza, Dept 087
Oak Brook, Illinois 60523
Tel: 630.623.7556
Fax 630.623.8064

PURCHASER'S ATTORNEY:
_To be determined_

AUCTIONEER:
Rick Levin & Associates, Inc. or Rick Levin &
Associates, Inc., in conjunction with Rick Levin,
licensed Indiana auctioneer
1467 North Elston Avenue, 2nd Floor
Chicago, IL 60622
Telephone: 773.252.4500 x223
Facsimile:  773.252.4520

EXHIBITS:

Exhibit A: Legal Description

7

BRN

EXHIBIT A -1

LIST OF PROPERTIES  ~Legal Description~ — ALL FORMER McDONALDS RESTAURANTS

| # | ADDRESS | BRIEF DESCRIPTION FROM RICH LEVIN WEBSITE |
|---|---------|-------------------------------------------|
| 1. | 5057 WENTWORTH CHICAGO, IL | VACANT LAND — 1.108 ACRES — Value of Property |
| 2. | 10245 ROOSEVELT RD WESTCHESTER, IL | LAND — 29,951 SF  BUILDING — 2,100 SF (UNOCCUPIED) |
| 3. | 130 S. VIRGINIA ST CRYSTAL LAKE, IL | VACANT LAND — 26,000 SF |
| 4. | 6574 N. 76th ST MILWAUKEE, WIS | VACANT LAND — 22,526 SF |
| 5. | 5377 BROADWAY MERRILVILLE, IN | VACANT LAND — 1.55 ACRES (2 PARCELS) |

8

6057 S. Wentworth, Chicago

LC 012-1061   FILE NO. 8591

THAT PART OF THE NORTHEAST 1/4 OF SECTION 9, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDAN, COMMENCING AT THE INTERSECTION OF THE EAST LINE OF WENTWORTH AVENUE AND THE NORTH LINE OF 51ST STREET IN SAID CITY, THE POINT OF BEGINNING; THENCE NORTH ALONG SAID EAST LINE OF WENTWORTH AVENUE, 220 FEET TO A POINT; THENCE EAST AT A RIGHT ANGLE TO THE LAST DESCRIBED COURSE, 220 FEET TO A POINT THENCE SOUTH AT A RIGHT ANGLE TO THE LAST DESCRIBED COURSE, 220 FEET TO A POINT INTERSECTION WITH THE NORTH LINE OF 51ST STREET; THENCE WEST ALONG SAID NORTH LINE OF 51st STREET, 220 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS."

Exhibit A-2

9

*westchester*

**EXHIBIT A -2.**

LOTS 1, 2, 3, AND LOT 4 (EXCEPT THE WEST 2.20 FEET THEREOF) LOT 48 AND THE VACATED ALLEY ADJACENT THERETO AND LOTS 49 AND 50 ALL IN GEORGE F. NIXON AND COMPANY'S WESTCHESTER IN THE WEST HALF OT HE NORTH WEST QUARTER OF SECTION 21, TOWNSHIP 39 NORTH, RNAGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, IN THE VILLAGE OF WESTCHESTER, COOK COUNTY, ILLINOIS.

C:\Documents and Settings\TMccarthy\Local Settings\Temporary Internet Files\OLK301\Contract (final 06 30 05).doc
EXHIBIT A

10

130 S. Virginia Street

## EXHIBIT A -4

### LEGAL DESCRIPTION

The Easterly 170.0 feet (as measured along the lot lines) of Lot 3, in Lakeacres, a subdivision of part of the North Half of Section 6, Township 43 North, Range 8, East of the Third Principal Meridian, according to Plat thereof recorded February 26, 1954, as Document #275689 in McHenry County, Illinois.

LESS AND EXCEPT:

That part of the Easterly 170 feet (as measured along the property lines) of Lot 3 in Lakeacres, a subdivision of part of the North Half of Section 6, Township 43 North, Range 8 East of the Third Principal Meridian, according to the Plat thereof recorded February 26, 1954 as Document No. 275689, in Book 11 of Plats, page 100, described as follows:

Beginning at the most northerly corner, of Lot 3; thence on an assumed bearing of South 54 degrees 14 minutes 25 seconds West along the Northerly line of said Lot 3, a distance of 7.18 feet to a point; thence South 15 degrees 19 minutes 37 seconds East, a distance of 143.70 feet to a point on a 585.50 foot radius curve, the center of the circle bears North 74 degrees 40 minutes 23 seconds East from said point; thence Southeasterly along said curve 6.29 feet, central angle 00 degrees 36 minutes 57 seconds, to a point on the Southerly line of said Lot 3; thence North 54 degrees 14 minutes 25 seconds East, a distance of 6.90 feet to the Southwesterly line of Virginia Street; thence North 15 degrees 14 minutes 14 seconds West along said Westerly line, a distance of 150.10 feet to the point of beginning, in McHenry County, Illinois.

Parcel #19-06-204-036

Contract

EXHIBIT A - 4

_11_

BRN

4574 N. 76th Street, Milwaukee

Exhibit A-5

That part of Lots One (1), Two (2), Ten (10) and Eleven (11) in Block Seventy-three (73) in Menomonee River Hills East, being a Subdivision of a part of the South East One-quarter (1/4) of Section Twenty-two (22), Township Eight (8) North, Range Twenty-one (21) East, in the City of Milwaukee, Milwaukee County, Wisconsin, which is bounded and described as follows:   Commencing at the Northwest corner of said Block 73; thence South 00° 23' 50" West 150.00 feet to a point; thence South 89° 36' 10" East 150.00 feet to a point; thence North 00° 23' 50" East 150.35 feet to a point on the South line of West Acacia Street; thence West 30.81 feet along the South line of West Acacia Street, being the arc of a curve whose center lies to the North whose radius is 1360.78 feet and whose chord bears South 89° 44' 55" West 30.81 feet to a point; thence North 89° 36' 10" West along the South line of West Acacia Street 119.19 feet to the point of beginning.

**EXHIBIT A -5**
L/C: 48-0035
Parcel Type: MS

RPN

5377 Broadway, memillville

Exhibit A-6.

Part of the Northwest Quarter of Section 3, Township 35 North, Range 8 West of the 2nd P.M. in Lake County, Indiana, described as beginning at a point on the West line of said Northwest Quarter of Section 3 which is 548.6 feet South of the Northwest corner of said Northwest Quarter of Section 3; thence South 89 degrees 21' East a distance of 50 feet to the point or place of beginning of this legal description; thence continuing South 89 degrees 21' East a distance of 162 feet; thence South and parallel to the West line of said Northwest Quarter of Section 3 a distance of 144.7 feet; thence West a distance of 162 feet; thence North 144.7 feet to the point or place of beginning.

PARCEL II

Part of the Northwest Quarter of Section 3, Township 35 North, Range 8 West of the Second Principal Meridian, in Lake County, Indiana, being more particularly described as follows:

Beginning at a point on the centerline of Broadway 373.60 feet South of the Northwest corner of said Northwest quarter of Section 3; thence South 89 degrees 21 minutes East, 166 feet; thence South 175 feet; thence North 89 degrees 21 minutes West 166 feet to a point on the centerline of Broadway; thence North along the centerline of Broadway 175 feet to the point of beginning, subject to the rights of the public and the State of Indiana, in he Westerly 50 feet lying within the right of way of Broadway for road purposes.

EXHIBIT A-6
L/C: 13-0013
Parcel Type: MS

13

BAD

## Exhibit B

## Restrictive Covenant

For a period of 20 years from the date of the deed, the Property may not be used for and Purchaser will not lease/sell to any regional and/or national restaurant chain or user whose primary purpose is the sale of hamburgers, chicken and/or coffee.

In addition, the following restaurants operating under the listed trade names, or operating under any successor trade names, are prohibited:

| | |
|---|---|
| Apolo Burgers | Astro Burgers |
| Atlanta Burgers | A & W |
| Backyard Burgers | Burger Chef |
| Burger King | Burger Street |
| Carl's Jr. | Caribou Coffee |
| Checkers | Cheeburger, Cheeburger |
| Chick-Fil-A | Church's Chicken |
| Crown Burgers | Crystal Burgers |
| Culvers | Dunkin Donuts |
| Friendly's | Hardee's |
| Harold's Chicken | In N Out Burgers |
| Jack-in-the-Box | Jamba Juice |
| KFC | Popeye's Chicken |
| Rally's | Sonic |
| Starbuck's | Steak 'N' Shake |
| Tim Horton's | Whataburger |
| Wendy's | Whitecastle |

# Relay Report

| | |
|---|---|
| Your document: addressed to: | Fw: Revised Contract<br>ira@ricklevin.com |
| has the following delivery status: | Your message was successfully relayed by dmmc01.ch1.ummall.com at 06/19/2008 10:30:13 to the remote mail system smtp2.INTERNAL.MCD.ATL-MESSAGING.EQUANT.NET. Outbound support for confirmations is not configured. |

What should you do?

This message is an Informational Delivery Status Notification and does not require any further action.

- Your message was routed to a server which does not accept responsibility for generating Delivery Status Notifications upon successful delivery. You may assume that the message was successfully delivered if no failure message is received. Do not expect a delivery confirmation notice.

**Routing path**

CHI-MCD-DM01/MA/US/MCD, CHI-MCD-DH01/HU/US/MCD, CHI-MCD-DH01/HU/US/MCD, CHI-MCD-DM01/MA/US/MCD

| | |
|---|---|
| To: | "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com> |
| cc: | "Ira lauter" <ira@ricklevin.com>, Mary Meyer/mcd/us@MCDUS, Doris Murray-Norris/mcd/us@MCDUS |
| Date: | 06/19/2008 11:30:40 AM |
| Subject: | Fw: Revised Contract |

# Relay Report

| | |
|---|---|
| Your document: addressed to: | Fw: Revised Contract<br>shabbir.nomanbhoy@gmail.com |
| has the following delivery status: | Your message was successfully relayed by dmmc01.ch1.ummail.com at 06/19/2008 10:30:16 to the remote mail system smtp1.INTERNAL.MCD.ATL-MESSAGING.EQUANT.NET. Outbound support for confirmations is not configured. |

What should you do?

This message is an informational Delivery Status Notification and does not require any further action.

- Your message was routed to a server which does not accept responsibility for generating Delivery Status Notifications upon successful delivery. You may assume that the message was successfully delivered if no failure message is received. Do not expect a delivery confirmation notice.

Routing path

CHI-MCD-DM01/MA/US/MCD, CHI-MCD-DH01/HU/US/MCD, CHI-MCD-DH01/HU/US/MCD, CHI-MCD-DM01/MA/US/MCD

| | |
|---|---|
| To: | "Shabbir Nomanbhoy" <shabbir.nomanbhoy@gmail.com> |
| cc: | "Ira lauter" <ira@ricklevin.com>, Mary Meyer/mcd/us@MCDUS, Doris Murray-Norris/mcd/us@MCDUS |
| Date: | 06/19/2008 11:30:40 AM |
| Subject: | Fw: Revised Contract |